UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
=========================================X

HANNA BOUVENG,

      Plaintiff,

          -against-

NYG CAPITAL LLC d/b/a NEW YORK GLOBAL
GROUP, NYG CAPITAL LLC d/b/a FNL MEDIA
LLC, and BENJAMIN WEY,

      Defendants.
-----------------------------------------------------------X

**COMPLAINT**

**PLAINTIFF DEMANDS A
TRIAL BY JURY**

Plaintiff **HANNA BOUVENG**, by her attorneys **MORELLI ALTERS RATNER LLP**, complaining of the Defendants herein, upon information and belief respectfully alleges as follows:

1.     Plaintiff **HANNA BOUVENG** is a 24-year-old woman, a citizen of Sweden, visiting the United States on a J1-Visa. She presently temporarily resides with friends in the City, County and State of New York.

2.     Commencing on or about October 1, 2013 until her wrongful termination on or about April 22, 2014, Plaintiff **HANNA BOUVENG** was employed in Manhattan as Director of Corporate Communications by Defendant **NYG CAPITAL LLC** doing business as **NEW YORK GLOBAL GROUP**.

3.     At all times hereinafter mentioned, Defendant **NEW YORK GLOBAL GROUP** was and remains a leading U.S. and Asia-based strategic market entry advisory, venture capital and private equity investment group on Wall Street that services clients (including Fortune 500 companies and governments) worldwide. Defendant **NYG CAPITAL LLC** is a company organized and existing under and by virtue of the laws of the State of New York, with its principal place of

business in the City, County and State of New York.

4.      With access to approximately $1 billion in investment capital, Defendant **NEW YORK GLOBAL GROUP** has led or participated in more than 250 projects worldwide.   Defendant **NYG CAPITAL LLC** d/b/a **NEW YORK GLOBAL GROUP** (hereinafter, referred collectively to as "**NYGG**") employs approximately 110 people globally, including approximately 51 people throughout the United States, approximately seven of whom work in its Manhattan headquarters. Defendant **NYGG**'s annual revenues exceed $25 million.

5.      At all times hereinafter mentioned, Defendant **NYG CAPITAL LLC** d/b/a **FNL MEDIA LLC** ("**FNL MEDIA**") was and remains a division of and/or the wholly-owned subsidiary of Defendant **NYGG**.   Defendant **FNL MEDIA LLC** is a company organized and existing under and by virtue of the laws of the State of New York, with its principal place of business in the City, County and State of New York.

6.      Defendant **FNL MEDIA** is the publisher of TheBlot Magazine, a digital publication. TheBlot Magazine claims it "brings traditional journalism to the modern day with bright, witty, opionated content."   TheBlot Magazine further explains:   "Our name pays homage to that ubiquitous mark found splattered on the desks of old-world authors, a symbol that evokes the power of the written word."   TheBlot Magazine has at least six employees.   Throughout Plaintiff's employment, Defendant **FNL MEDIA LLC** shared offices with Defendant **NYGG**.

7.      Commencing approximately 2002 through the present, Defendant **BENJAMIN WEY** (f/k/a Benjamin Wei) was and remains Chief Executive Officer of Defendant **NYGG**, the highest-ranking executive, manager, supervisor and employee of Defendant **NYGG**.   Throughout Plaintiff's employment, Defendant **BENJAMIN WEY** was also Publisher of TheBlot Magaine. Defendant CEO **BENJAMIN WEY**'s office is located in Manhattan as is his residence.

8.     Throughout Plaintiff's employment, Defendant **BENJAMIN WEY** routinely boasted: "I'm a very, very powerful man" and "I'm one of the top dogs on Wall Street!"  **WEY**, who is approximately in his mid-'40s, is married to lawyer Michaela Wey (a some-time employee at **NYGG** and its digital publication, TheBlot Magazine) and the father of three children.   He is also a virulent sexual harasser and stalker.

9.     Throughout Plaintiff's employment with Defendant **NYGG**, James N. Baxter, Esq. was Executive Chairman and General Counsel of Defendant **NYGG**, an executive, manager, supervisor and employee of Defendant **NYGG**.   Throughout Plaintiff's employment with Defendant **NYGG**, James N. Baxter, Esq. was also General Counsel for **FNL MEDIA.** Executive Chairman and General Counsel James Baxter's office is located in Manhattan. Defendants

10.     Throughout Plaintiff's employment with Defendant **NYGG**, from approximately October 1, 2013 until on or about April 22, 2014, Plaintiff **HANNA BOUVENG** reported directly to Executive Chairman and General Counsel James Baxter.   James Baxter reported and continues to report directly to CEO **BENJAMIN WEY**.   Defendant **NYG CAPITAL LLC** d/b/a **NEW YORK GLOBAL GROUP** and Defendant **NYG CAPITAL LLC** d/b/a **FNL MEDIA LLC** shall hereinafter be referred collectively to as "**NYGG.**"

11.     At all times material to this Complaint, the individual officers, directors, executives, managers, supervisors, employees and/or agents mentioned herein, acted within the scope of their duties as officers, directors, executives, managers, supervisors, employees and/or agents of Defendant **NYGG**.

12.     Jurisdiction of the subject matter of this action is established in this Court under Title 28 of the United States Code, Section 1332 (diversity) and the amount in controversy exceeds the

jurisdictional requisite.   This is the proper venue for this action in that unlawful acts alleged herein were committed within this Court's jurisdiction.

## GENERAL ALLEGATIONS OF GENDER DISCRIMINATION, *QUID PRO QUO* SEXUAL HARASSMENT, A SEXUALLY HOSTILE WORK ENVIRONMENT, AND RETALIATION

13.     This lawsuit arises out of an ongoing wrongful scheme by Defendants **BENJAMIN WEY** and **NYGG** to discriminate against Plaintiff **HANNA BOUVENG** during her employment with Defendant because of her gender.

14.     This discrimination includes Defendants systematic subjection of Plaintiff to disgusting and degrading *quid pro quo* sexual harassment, creating a sexually hostile work environment that was so inappropriate and outrageous that any member of society would take offense, in violation of New York State Human Rights Law and New York City Human Rights Law.

15.     During her employment with Defendant **NYGG**, Plaintiff **HANNA BOUVENG** was subjected to the flagrantly lewd, vulgar and repulsive sexual advances of the highest-ranking supervisor and manager at **NYGG**, Defendant Chief Executive Officer **BENJAMIN WEY**. Unfortunately, Plaintiff was repeatedly and consistently subjected to unsolicited sexual propositions and sexual commands, as well as sexual gropings, molestations, assault and battery, as well as stalking.

16.     Unfortunately, within **NYGG**, a permissive and encouraging environment for gender discrimination and sexual harassment reigns among executives, officers, managers, supervisors, employees and agents of the company because employees fear the wrath of the company's sociopathic leader, Defendant CEO **BENJAMIN WEY**.

17.    This discrimination further includes Defendant **NYGG**'s systematic subjection of Plaintiff **HANNA BOUVENG** to retaliation for her refusal to submit further to the sexual advances of the highest-ranking manager and supervisor at **NYGG**, Chief Executive Officer **BENJAMIN WEY**, culminating in her unlawful termination, in violation of New York State Human Rights Law and New York City Human Rights Law.

## PLAINTIFF'S BACKGROUND AND EMPLOYMENT

18.    In approximately March 2012, Plaintiff **HANNA BOUVENG** earned her B.S. in Media and Communications from Halmstad University in Sweden.   During the course of her undergraduate studies, Ms. **BOUVENG** spent a semester abroad studying at Jan May Hong Kong Baptist University and working in Hong Kong.   Plaintiff is fluent in Swedish, English and Norwegian, and understands basic German and French.

19.    From approximately November 2011 through December 2012, Plaintiff **HANNA BOUVENG** worked as a Product Manager responsible for advertising sales, negotiations and marketing at Pecto AS in Oslo, Norway.   At the conclusion of her employment in December 2012, Sales Manager Liv Ragnhild Heier wrote:

> Because of her great sales results, Hanna was chosen to work on a new project involving DNB, Norway's largest bank.   She solved the challenge excellent (*sic*) and signed many important clients.
> …
> Hanna is a positive, ambitious, responsible and effective young lady, and we are very satisfied with the work she has done.   Her sales results have been among the best in her sales group, and she has taken new opportunities and challenges very well.
>
> I give Hanna my strongest recommendations and best wishes for the future.

20.     In approximately January 2013, Plaintiff **HANNA BOUVENG** came to the United States
to pursue her dream of living, working and studying in New York City.   Plaintiff enrolled in
classes at Berkeley College and worked as a volunteer intern in marketing at Upton Realty Group
in Manhattan.

21.     In approximately early July 2013, Defendant **BENJAMIN WEY** invited Plaintiff
**HANNA BOUVENG** to lunch at Capital Grille off Wall Street to discuss internship/employment
opportunities in New York.   Because Defendant **BENJAMIN WEY** is 50% owner of Swedish
coffee chain FIKA's stores in Manhattan, Plaintiff assumed **WEY** was going to discuss
opportunities at FIKA with her.   During the course of this lunch, however, Defendant
**BENJAMIN WEY** abruptly told Plaintiff:   "What I really want is a girlfriend I can show New
York and the world to."   Plaintiff responded quickly and unequivocally that she was <u>not</u> interested
in a boyfriend, but was looking for a position with a company where she could develop and
improve her marketing and communications skills.   Defendant **BENJAMIN WEY** was
non-responsive and the lunch ended

22.     However the following day in approximately early July 2013, Defendant **BENJAMIN
WEY** telephoned Plaintiff **HANNA BOUVENG** and recruited her to work as a paid intern at
**NYGG** reporting to Executive Chairman and General Counsel James Baxter.   Because Plaintiff
had made it clear that she was only interested in a professional relationship, and because
Defendant **BENJAMIN WEY** had nevertheless offered her the position after learning that was the
case, and because she believed working at **NYGG** would be a good professional learning
experience, Plaintiff **HANNA BOUVENG** accepted the job.

23.     On or about July 16, 2013, **NYGG**'s Executive Chairman and General Counsel James
Baxter filed J1-Visa paperwork with the United States Department of State reflecting **NYGG**'s

hiring of Plaintiff as a paid intern with **NYGG** commencing on or about October 1, 2013 through

on or about February 1, 2015.

24.     On or about October 1, 2013, Plaintiff **HANNA BOUVENG** commenced working at

Defendant **NYGG** as Director of Corporate Communications.    Plaintiff was paid approximately

$2000 monthly and reported directly to Executive Chairman and General Counsel James Baxter,

Esq.

25.     Commencing approximately October 1, 2013 until she was fired on or about April 22,

2014, Plaintiff **HANNA BOUVENG** excelled at her job as Director of Corporate

Communications at **NYGG**.    Indeed, on repeated occasions, Plaintiff's immediate supervisor

James Baxter praised Plaintiff's job performance.    So did Defendant CEO **BENJAMIN WEY**.

26.     During her employment, Plaintiff **HANNA BOUVENG** was entrusted with the

responsibility of representing Defendant **NYGG** at meetings with top executives of corporations

Defendant **BENJAMIN WEY** wanted **NYGG** to do business with.    Moreover, Plaintiff **HANNA**

**BOUVENG** was given the responsibility of meeting alone with prospective **NYGG** clients in

Europe.

27.     In approximately late November 2013, Plaintiff **HANNA BOUVENG** flew to

Copenhagen on behalf of Defendant **NYGG** and met alone twice with Nordica Life insurance

company Owner Allan Klotz, his Partner Dovi Steinbeck, and Djurgarden Invest CEO Roger

Axmon during negotiations where **NYGG** attempted to acquire Nordica.

28.     In approximately mid-March 2013, Plaintiff **HANNA BOUVENG** flew to Stockholm and

represented **NYGG** at meetings with Emine Lundqvist, Esq. and Magdalena Huber, Esq. of

Setterwalls Law Firm, as well as Marianne Ramel, Esq., Mats Borgstrom, Esq. and Peter Ihrfeldt,

Esq. of DLA Nordic, to discuss **NYGG**'s infrastructure.    Plaintiff also represented **NYGG** at a

meeting with Asa Bringholm and an associate from Forsman & Bodenfors (a marketing agency) to discuss **NYGG** branding and marketing strategy.

29.     Unfortunately, during her employment, Plaintiff **HANNA BOUVENG** was also subjected to virulent gender discrimination, *quid pro quo* sexual harassment, a sexually hostile work environment, and retaliation, as well as sexual assault, battery and the intentional infliction of emotional distress, and continues to be subjected to retaliation, including harassment and defamation.

## PLAINTIFF'S SPECIFIC ALLEGATIONS

30.     Approximately two weeks after she started at **NYGG**, in approximately mid-October 2013, Defendant CEO **BENJAMIN WEY** told Plaintiff **HANNA BOUVENG** that her attire was inappropriate for the Wall Street workplace.   Plaintiff, who dressed conservatively (she typically wore a pair of dark slacks, high-collared top, and suit jacket) was perplexed.   Nevertheless, Defendant CEO **BENJAMIN WEY** insisted on buying Plaintiff tight skirts, form-fitting dresses, and low-cut shirts, and further insisted that she wear those clothes to work, maintaining:   "You won't have a career on Wall Street unless you dress for success."   Plaintiff was surprised but initially appreciative.

31.     Commencing approximately mid-October 2013 through late October 2013, Defendant CEO **BENJAMIN WEY** was increasingly complimentary regarding Plaintiff **HANNA BOUVENG**'s appearance.   Initially, Plaintiff **HANNA BOUVENG** thought the Chinese-born **BENJAMIN WEY**'s compliments were the consequence of cultural differences.   However, as time wore on, she became increasingly uncomfortable with his unwanted attention.

32.     Throughout her employment from October 2013 through on or about April 22, 2014, approximately weekly, Defendant **BENJAMIN WEY** placed his arm around Plaintiff **HANNA**

**BOUVENG**'s waist and kissed her on the cheek in the office.   Plaintiff found this embarrassing.

33.      In approximately late October 2013, Plaintiff **HANNA BOUVENG** accompanied

Defendant CEO **BENJAMIN WEY** on a business trip to Washington D.C. where they met and

dined with **NYGG** lobbyist Adam Olsen.   During the course of dinner and drinks, after **WEY** left

the table for the restroom, Mr. Olsen told Plaintiff **HANNA BOUVENG**:   "Hanna, Benjamin is

crazy about you!"   Olsen then added:   "He and his wife are in a bad way.   They don't have sex."

Plaintiff felt awkward, and refused to discuss the topic further.

34.      Throughout the Fall of 2013, Defendant CEO **BENJAMIN WEY** insisted on purchasing

tight clothes for Plaintiff **HANNA BOUVENG** to wear to the office.   When she resisted or

refused the gifts, Defendant CEO **BENJAMIN WEY** became hostile and irate, yelling:   "You

don't think a resourceful, powerful guy like me can take care of you?"   However, when she

acquiesced, Defendant CEO **BENJAMIN WEY** made snide, derogatory remarks to Plaintiff, such

as:   "Hanna likes nice things" and **"**Hanna likes to shop!"   **WEY**'s behavior was manipulative

and abusive.

35.      Commencing approximately October 2013 through on or about April 22, 2014, initially

approximately two nights weekly, Defendant CEO **BENJAMIN WEY** insisted Plaintiff **HANNA**

**BOUVENG** accompany him out to dinner, purportedly to discuss business.   At first these dinners

included business associates from China and from various investment banks in New York such as

Credit Suisse, and Plaintiff thought of these dinners as an exciting way to learn more about

working on Wall Street.   Unfortunately, as time progressed, Defendant CEO **BENJAMIN WEY**

increasingly insisted Plaintiff **HANNA BOUVENG** spend most if not all her evenings with him,

both during the work week and on weekends, regardless of whether other business associates

accompanied them.   Defendant **BENJAMIN WEY** also insisted Plaintiff accompany him to

brunch, lunch, coffee and other outings.   Plaintiff felt increasingly annoyed, harassed, and trapped.

36.     Commencing approximately November 2013 until her termination on or about April 22, 2014, Defendant CEO **BENJAMIN WEY** behaved in an increasingly lecherous manner toward Plaintiff **HANNA BOUVENG**.   For instance, Plaintiff repeatedly caught Defendant CEO **BENJAMIN WEY** ogling at her in the office.

37.     Moreover, commencing approximately November 2013 until her termination on or about April 22, 2014, approximately daily, Defendant CEO **BENJAMIN WEY** made inappropriate remarks concerning Plaintiff **HANNA BOUVENG**'s appearance, including: "You look beautiful;" "You're gorgeous;" "You have a beautiful body;" "Hanna's so tall and thin;" and "Hanna doesn't need to go to Crunch (gym) because her body is so fit anyway."   Plaintiff found the CEO's behavior and comments embarrassing, particularly when Defendant CEO **BENJAMIN WEY** made these remarks around her colleagues.

38.     Commencing approximately November 2013 through the remainder of her employment, Defendant **BENJAMIN WEY** became increasingly physical toward Plaintiff **HANNA BOUVENG**.   For instance, whenever he approached, approximately multiple times daily, Defendant CEO **BENJAMIN WEY** placed his arm around her waist and drew Plaintiff toward him.   Plaintiff resisted and did not reciprocate his advances, but nothing changed.

39.     Commencing approximately November 2013 through on or about April 22, 2014, approximately daily, Defendant CEO **BENJAMIN WEY** complained to Plaintiff **HANNA BOUVENG** concerning his unhappy marriage to Michaela Wey, whining:   "I'm not happy at home;" "We sleep in different bedrooms;" "I have not kissed anyone in ten years;" and "I'm romantic but my wife is cold and harsh."   Moreover, Defendant CEO **BENJAMIN WEY**

repeatedly compared Plaintiff to his wife, remarking: "Michaela is not nearly as good a marketer as you are!" These comments made Plaintiff feel very uncomfortable.

40. Commencing approximately November 2013 through the remainder of her employment, approximately daily, Defendant **BENJAMIN WEY** made increasingly amorous, consistently bizarre pronouncements to Plaintiff **HANNA BOUVENG**, such as: "I am driven by passion. If it's not there I walk away;" "I am a passionate guy;" "I want to see you all the time;" "If I don't see you every day, I feel there is something missing!;" "I want to hang out with you;" "In two years you are going to want the world. If you stick with me, I'll give you everything;" and "If I didn't feel this for you, I wouldn't keep you here." Eventually, these comments included his constant badgering: "I want to kiss you;" and "I want to make love to you." Plaintiff did not share **WEY**'s "passion," and did her best to brush off and ignore his declarations. She did not respond to his ravings.

41. On repeated occasions commencing in the Fall of 2013, Defendant CEO **BENJAMIN WEY** invited Plaintiff **HANNA BOUVENG** and various industry colleagues to social/ networking gatherings at his penthouse at the Ritz Carlton Battery Park. **WEY** often asked Plaintiff **HANNA BOUVENG** to arrive early in order to set up and prepare for the events. Defendant's wife was never present during these gatherings.

42. On repeated occasions commencing approximately November 2013 when Plaintiff arrived early for the gatherings at Defendant CEO **BENJAMIN WEY**'s penthouse, **WEY** told Plaintiff **HANNA BOUVENG**: "I want to leave my wife for you;" "I'll leave Michaela for you if you just say so;" and "I want to change my life for you. I want a divorce." Plaintiff repeatedly told Defendant she was not interested in having a romantic and/or sexual relationship with him.

43. On repeated occasions in approximately Fall 2013, Defendant CEO **BENJAMIN WEY**

informed Plaintiff **HANNA BOUVENG** that FIKA Co-Owner Lars Akerlund and FIKA Director

of Strategy Lena Khoury did not like Plaintiff.   At the same time, Defendant CEO **BENJAMIN**

**WEY** assured Plaintiff **HANNA BOUVENG** that he would "protect" her against all the people

out to get her in the corporate world.   Defendant repeatedly emphasized that Plaintiff could only

advance her career by sticking close to him and following his tutelage.   Plaintiff felt humiliated,

confused, and concerned about her reputation.

44.     In approximately early November 2013, Defendant CEO **BENJAMIN WEY** asked

Plaintiff **HANNA BOUVENG** to meet with Eriksen Translations CEO Vigdis Eriksen regarding a

possible collaboration between Eriksen and Defendant **NYGG**.   Ms. Eriksen had previously

rejected **WEY**s proposal, and Defendant **BENJAMIN WEY** asked Plaintiff to persuade Ms.

Eriksen that he was "her only chance to survive."

45.     In approximately early November 2013, Plaintiff **HANNA BOUVENG** met with Eriksen

Translations CEO Vigdis Eriksen over breakfast at 2 West Restaurant, the restaurant at Defendant

CEO **BENJAMIN WEY**'s residence in the Ritz Carlton Battery Park Hotel.   Defendant

**BENJAMIN WEY** joined them approximately one hour later.   Following the meeting,

Defendant **BENJAMIN WEY** asked Plaintiff **HANNA BOUVENG** to accompany him upstairs

to his penthouse.

46.     Once there, Defendant **BENJAMIN WEY** sat next to Plaintiff **HANNA BOUVENG** on

the couch, presumably to discuss the meeting with Eriksen Translations, but then began telling

Plaintiff, "You're so beautiful" and "I love blue eyes" and "I love girls with blue eyes" and "I used

to love girls with blonde hair and blue eyes but now I love brunettes with blue eyes."   As he said

this, Defendant **BENJAMIN WEY** put his arm around Plaintiff's shoulders and tried to kiss her

on the mouth.   When Plaintiff turned her head, **WEY** kissed Plaintiff's neck.   Plaintiff abruptly

pulled away and said: "No."   When Defendant **BENJAMIN WEY** then said he wanted a

girlfriend, Plaintiff responded that she was really focusing on her career, that she wanted to gain

professional experience, and that she was not interested in being anyone's girlfriend.

Nevertheless, Defendant **BENJAMIN WEY** lunged toward Plaintiff **HANNA BOUVENG** and

kissed her on the neck again.

47.     Immediately thereafter**,** in approximately early November 2013, Plaintiff **HANNA**

**BOUVENG** stood up and told the CEO she had to go back to the office.   Defendant **BENJAMIN**

**WEY** balked, commanding: "No, it can wait!"   Plaintiff remained standing, the CEO said "O.K.,

let's go," and grabbed Plaintiff's hand and walked her toward the door.   Before reaching the door,

however, Defendant **BENJAMIN WEY** suddenly pulled Plaintiff **HANNA BOUVENG** into a

bedroom, then towards him, grabbed and embraced her with both arms, and kissed her

passionately on the neck.   Plaintiff **HANNA BOUVENG** pushed the CEO off, cried, "Hey, Ben

stop!   I don't want to do this," and stormed toward the door.   The two then returned to the office.

Plaintiff was repulsed.

48.     On or about November 5, 2013, Defendant CEO **BENJAMIN WEY** summoned Plaintiff

**HANNA BOUVENG** to his office and asked how many hotel rooms he should book for their

business trip to Boston the following day.   Plaintiff was alarmed and felt extremely

uncomfortable.

49.     On or about November 6, 2013, after Defendant **BENJAMIN WEY** finished his speaking

engagement at Babson College, Plaintiff **HANNA BOUVENG** and the CEO returned to the

Boston Harbor Hotel and had dinner at the hotel's restaurant.   **WEY** ordered a bottle of

champagne.   During dinner, Defendant CEO **BENJAMIN WEY** discussed Plaintiff's bright

future with the company, complimented how far she had come, and praised the number of

meetings she had initiated with prominent family friends.   At the same time, **WEY** repeatedly reached under the table and touched Plaintiff's thigh.   Plaintiff was non-responsive to his sexual overtures.

50.     Following dinner, Plaintiff **HANNA BOUVENG**, who was inebriated, discovered that Defendant had only booked one hotel room with a king bed.   Once they entered the room, Defendant CEO **BENJAMIN WEY** kissed Plaintiff's neck and face.   Plaintiff did not kiss him back.   Despite Plaintiff's resistance, Defendant pushed her on the bed and undressed her, and attempted to have sexual intercourse with her.   Plaintiff told him: "Stop."   When Plaintiff saw that he did not have a condom, she continued to tell him to "Stop," and pushed against him. Defendant begged her to have sex with him without a condom, insisting he was "clean."   Plaintiff continued to say, "Stop," and told the CEO she did not want to have unprotected sex.   Defendant finally stopped.   Plaintiff, who was extremely upset, put on a large t-shirt and tights, turned her back to him, refused to speak to him further, and pretended to fall asleep.   Defendant did not assault her again during their stay.

51.     Commencing approximately November 2013, Defendant CEO **BENJAMIN WEY** repeatedly urged Plaintiff **HANNA BOUVENG** to move out from the apartment she shared with friends to her own place in lower Manhattan.   Plaintiff resisted, explaining that she enjoyed living with her friends and that any rate she could not afford to live alone.   However the CEO was insistent, claiming that doing so would be "good for her career" and give her "the confidence you need to get ahead."   He further pronounced:   "Your friends aren't going anywhere.   They're never going to have a career on Wall Street.   You're the only one who will!"   Defendant CEO **BENJAMIN WEY** then promised that **NYGG** would help Plaintiff find an apartment.

52.     In approximately late November 2013, Defendant CEO **BENJAMIN WEY** showed

Plaintiff **HANNA BOUVENG** an apartment he found at 25 Broad Street, a short walk from Defendant **NYGG**'s offices.   Defendant told Plaintiff that **NYGG** would help her pay the additional costs of living alone at the apartment as part of her compensation, and that he would act as her guarantor.   Assuming that meant Defendant **NYGG** was giving her a raise, Plaintiff agreed, and on or about December 1, 2013 moved into the apartment.

53.     Commencing approximately the first week of December 2013 through January 2014, Plaintiff **HANNA BOUVENG** repeatedly asked Defendant CEO **BENJAMIN WEY** for the raise from **NYGG** he had promised so she could afford her apartment.   (While she had netted $800 per month when she shared an apartment with roommates, she now only netted $500 monthly.)   In response, **WEY** told Plaintiff:  "It's my money and your money anyway.   You can always ask me for it."   Plaintiff did not want to be in the position of asking **WEY** for cash every time her rent was due.   However, the CEO refused to give her the raise he had promised.

54.     During approximately the first week of December 2013, Defendant CEO **BENJAMIN WEY** invited himself over to Plaintiff **HANNA BOUVENG**'s new apartment after work, claiming that he wanted to see the apartment and have a cup of tea.   Once there, Defendant **BENJAMIN WEY** sat down on the couch next to Plaintiff **HANNA BOUVENG** and commanded:  "Come closer.   Why don't you sit next to me?"   When Plaintiff complied, Defendant reached over and began massaging her shoulders and then kissing her neck.   Plaintiff **HANNA BOUVENG** once again told the CEO:  "No, I really don't want this."   Defendant left.

55.     The following day at work, during approximately the first week of December 2013, Defendant **BENJAMIN WEY** glared at and refused to speak to Plaintiff **HANNA BOUVENG**.   Defendant continued this behavior until approximately mid-December 2013.   Plaintiff worried that she was going to be fired, lose her apartment, and lose her J1 Visa.

56.     In approximately mid-December 2013, Plaintiff **HANNA BOUVENG** accompanied CEO Defendant **BENJAMIN WEY** and Executive Chairman James Baxter on a business trip to China.

57.     Approximately six days later, on or about December 16, 2013, Defendant **BENJAMIN WEY** and Plaintiff **HANNA BOUVENG** flew on a business trip to Dubai to meet with a government economic council minister and the owner of Dubai's third-largest construction company.   When they arrived at the Atlantis Hotel, Plaintiff **HANNA BOUVENG** discovered once again that Defendant CEO **BENJAMIN WEY** had only booked one hotel room (under his Chinese name Tianbing Wei) for the two of them to share.   Once again, the hotel room only had one bed.

58.     On or about the night of December 16, 2013 in the Atlantis Hotel room, while Defendant was in the bathroom, Plaintiff **HANNA BOUVENG** put on a t-shirt and underwear, got into bed, and pretended she was asleep.   Minutes later, Defendant CEO **BENJAMIN WEY** climbed into the bed naked, repeatedly called out Plaintiff's name, and pawed at her, but Plaintiff was non-responsive.   Eventually the CEO left her alone.   The following morning Defendant complained bitterly:  "How could you be so tired?"

59.     On or about December 17, 2013, during the second night of their business trip to Dubai in the Atlantis Hotel, Plaintiff **HANNA BOUVENG** once again got into bed before the CEO, dressed in a t-shirt and underwear, turned her back toward his side of bed, and feigned sleep. Defendant CEO **BENJAMIN WEY** subsequently got into the bed naked, hugged Plaintiff from behind, and pressed his erection against her.   However, Plaintiff pulled away and snapped:  "No, I'm tired."  Defendant stopped.

60.     Commencing when they returned to the office on or about December 18, 2013 until he left for vacation the following week, Defendant **BENJAMIN WEY** was petulant and gave Plaintiff

HANNA BOUVENG "the silent treatment." Plaintiff once again worried that she was going to be fired because she rejected the CEO's sexual advances.

61.     In approximately late December 2013, Defendant **BENJAMIN WEY** returned from vacation and behaved toward Plaintiff **HANNA BOUVENG** as if nothing had happened. Instead, Defendant asked her to dinner after work to discuss further business matters and her year-end bonus.   During dinner at Bobo in the West Village, Defendant presented Plaintiff **HANNA BOUVENG** with a $2000 Prada bag as her year-end bonus from **NYGG**.   Plaintiff informed the CEO that she would have preferred a cash bonus.   During the dinner, Defendant **BENJAMIN WEY** also plied Plaintiff with drinks, and she became intoxicated.

62.     Following dinner in approximately late December 2013, Defendant CEO **BENJAMIN WEY** insisted that he accompany the inebriated Plaintiff **HANNA BOUVENG** to her apartment. Once inside her apartment, Defendant **BENJAMIN WEY** showed Plaintiff he had brought a box of condoms.   Plaintiff felt trapped.   Defendant CEO **BENJAMIN WEY** then forced Plaintiff to have sexual intercourse with him.   Plaintiff was alarmed, disgusted, and devastated.

63.     Thereafter, commencing approximately late December 2013 through her termination on or about April 22, 2014, approximately daily, Defendant CEO **BENJAMIN WEY** asked Plaintiff **HANNA BOUVENG** to go out to dinner with him.   When Plaintiff declined, Defendant pouted and complained: "You never have time for me!"

64.     Commencing approximately late December 2013 through her termination on or about April 22, 2014, approximately daily, Defendant CEO **BENJAMIN WEY** asked Plaintiff **HANNA BOUVENG** to have sex with him.   Plaintiff repeatedly refused.

65.     On approximately three occasions thereafter from approximately January through early February 2014, Defendant CEO **BENJAMIN WEY** plied Plaintiff **HANNA BOUVENG** with

alcohol and, once she was intoxicated, forced her to have sexual intercourse with him.   After the last episode in approximately early February 2014, Plaintiff **HANNA BOUVENG** remained steadfast in her refusal to succumb to the CEO's sexual advances, regardless of the consequences.

66.     In direct retaliation for the same, Defendant **BENJAMIN WEY** became angry and repeatedly threatened not only to fire Plaintiff **HANNA BOUVENG**, but to ensure that her reputation on Wall Street was ruined so that she would never work there again.   Defendant further threatened to see that her J-1 Visa was pulled and she was kicked out of the United States.

67.     Moreover, commencing approximately February 2014 through the present, Defendant **BENJAMIN WEY** began stalking Plaintiff **HANNA BOUVENG** and her friends, and engaged in a bizarre and frightening pattern of retaliation and harassment.

68.     On or about Saturday night, February 1, 2014, Plaintiff **HANNA BOUVENG** and some friends attended a Super Bowl party at Pier 11 in Manhattan.   During the course of the evening, Defendant CEO **BENJAMIN WEY** repeatedly texted Plaintiff.   Plaintiff refused to respond.

69.     The following morning, on or about Sunday February 2, 2014 at approximately 9:00 a.m., Plaintiff **HANNA BOUVENG** was awakened at her apartment by Defendant CEO **BENJAMIN WEY**, who was banging loudly on her door.   When Plaintiff opened the door, Defendant **BENJAMIN WEY** claimed he was worried about Plaintiff.   Plaintiff **HANNA BOUVENG** told Defendant in no uncertain terms that she could not have a sexual relationship with him. Thereafter, Defendant **BENJAMIN WEY** became increasingly aggressive in his behavior toward her.

70.     On or about February 15, 2014, Defendant CEO **BENJAMIN WEY** emailed Executive Chairman James Baxter (and cc'd Plaintiff) that while he foresaw Plaintiff **HANNA BOUVENG** as a marketing executive for Nordica in the U.S. and Europe, she required extensive training first,

and asked Mr. Baxter to train Plaintiff exhaustively so she was qualified by March.   **WEY** added

in pertinent part:

> Some personnel and executive decisions shall be made pending
> the outcome of this training to see to what extent, if any, she is
> capable of adding value….
>
> We are racing against time to build up the team.   Those that qualify
> will stay and join the new business.   Those not, will be placed in
> more appropriate roles.

Neither Defendant **BENJAMIN WEY** nor anyone else at **NYGG** had previously questioned

Plaintiff **HANNA BOUVENG**'s skillset.   Plaintiff felt intimidated.

71.     Three days later, on or about February 18, 2014, Defendant CEO **BENJAMIN WEY**

emailed Executive Chairman James (and cc'd Plaintiff **HANNA BOUVENG**) another retaliatory

missive:

> We need to urgently decide to what extent Hanna can be
> trained to the point that she can comfortably and professionally
> present the financial services and products, and to what level that
> she can be entrusted….
>
> It is a very tall order.   I think she has the potential to achieve it….
>
> I do wish to see major improvement when I get back.   She is smart
> and humble and willing to learn.   And most importantly, both you
> and I trust her as a colleague.   She is kind and loyal….
>
> We have no time to lose.   Please stay on top of this.   I need to see
> results or we have to use more experienced people and assign her to
> a more suitable role.

Mr. Baxter responded that he would certainly conduct the "intensive and extensive training" **WEY**

had requested, but remarked that "it is a very high goal and possibly unattainable in such a short

time."

72.     On or about February 18, 2014, Defendant CEO **BENJAMIN WEY** emailed Plaintiff

**HANNA BOUVENG** the following retaliatory missive:

> Frankly, I have provided you with a valuable training experience
> that we have never provided to others – one on one, <u>designed just
> for you and devoted just to you</u>, as you will be experiencing
> next week with the senior Wall Street expert Jim.   We will learn
> to what extent and how quickly you can transform from a less
> focused, less effective, less valuable, free-spirited communications
> type to an effective and sophisticated financial product marketing
> executive.   Hope you realize that we have spent significant
> financial resources and time resources to help you grow quickly
> professionally.
>
> I don't think you should travel anywhere with me or on behalf of the
> firm until you are ready.   Networking is important, however
> networking with the right crowd, with the right level of professional
> knowledge is powerful.   Fun girls are a dime a dozen and many of
> them such as Nina will perhaps end up with not accomplishing much
> in life, going back to her home.   Is that what you want?   You are
> way above that.   You have a real platform and a great lifestyle that
> many girls or guys will only envy to replace you or be in your position.
>
> I have put my trust in you and hope you will live up to your full
> potential, and not disappoint me or yourself.   Don't take my backing
> or support for granted.   This is either a priority or nothing.

Plaintiff **HANNA BOUVENG** felt threatened and compromised.

73.     On repeated occasions commencing approximately mid-February 2014 until her

termination on or about April 22, 2014, in direct retaliation for her constant refusal to have sexual

relations with him, Defendant CEO **BENJAMIN WEY** emailed **NYGG** Executive Chairman

James Baxter and Plaintiff's father in Sweden complaining that Plaintiff was "too unsophisticated"

to continue working at **NYGG**, and suggesting that if Plaintiff did not increase her knowledge

base, they would have to look for other staff.   Plaintiff was devastated.

74.     In approximately March 2014, following a gathering at Defendant **BENJAMIN WEY**'s

penthouse when his wife was away, Defendant CEO **BENJAMIN WEY** insisted on showing

Plaintiff his wife's closet and collection of designer bags, including a $66,000 Birkin bag he had

bought his wife in Japan.   In so doing, **WEY** commented:   "One day this could all be yours!"

Defendant **BENJAMIN WEY** then asked Plaintiff to spend the night with him.   Plaintiff

**HANNA BOUVENG** refused and went home.

75.   In approximately late March 2014, after Plaintiff **HANNA BOUVENG** had repeatedly

declined Defendant **BENJAMIN WEY**'s propositions, Defendant **BENJAMIN WEY** yelled at

her:   "You have a sense of entitlement, you only want, want, want!   You only see me as a

checkbook!   You have to create your own career, then you can do whatever you want!"   When

Plaintiff continued to refuse, Defendant **BENJAMIN WEY** screamed:   "I'm the guy for you!

I'm the only one who can help you with this!   You'll never find anyone who can help you like I

can!   I've got a lot of resources!   I'M THE TOP DOG ON WALL STREET!"   Plaintiff was

frightened.

76.   On several occasions during approximately March 2014, Plaintiff **HANNA BOUVENG**

was approached at the office by colleagues from Defendant **BENJAMIN WEY**'s on-line digital

publication "TheBlot Magazine," Editor-in-Chief Alicia Lu and Graphic Designer Yoni Weiss,

and asked:   "What's Ben doing to you?   We see him grabbing you all the time!" and "Has he ever

tried anything with you?"   Plaintiff was mortified.

77.   In approximately mid-April 2014, Defendant **NYGG** sent Plaintiff **HANNA BOUVENG**

for a brief training stint at Cambridge Alliance Capital, a company closely associated with **NYGG**

and **BENJAMIN WEY**.   During the course of a discussion with Partner Talman Harris regarding

her training program at Cambridge Alliance Capital, Mr. Harris abruptly said:   "I believe Ben

wants the best for you.   Ben loves you."   Plaintiff felt humiliated and upset.

78.     Around the same time, in approximately mid-April 2014, Defendant CEO **BENJAMIN WEY** referenced their "relationship," and told Plaintiff **HANNA BOUVENG**:  "By December first, if you don't know what you want to do, you'll be out of an apartment and a job!"

79.     Approximately a few days later, in approximately mid-April 2014, Defendant CEO **BENJAMIN WEY** told Plaintiff **HANNA BOUVENG** that if they did not have "an intimate relationship" by August 1, 2014, there was nothing else he could do for her, and he would have to let the apartment go to the new employees at **NYGG**.

80.     In approximately mid-April 2014, Plaintiff's immediate supervisor **NYGG** Executive Chairman James Baxter told Plaintiff **HANNA BOUVENG**:  "It's unrealistic for Ben to have expectations that someone at your level would have the skills of someone who's been in banking for 30 years."  At the same time, Mr. Baxter assured Plaintiff she was doing an "excellent" job.

81.     On or about April 17, 2014, during her training at Cambridge Alliance Capital, Defendant CEO **BENJAMIN WEY** asked Plaintiff **HANNA BOUVENG** to meet him at Andaz for a quick beverage to discuss various business matters at the office.   During this conversation, Defendant **BENJAMIN WEY** claimed that his wife Michaela Wey had dined with FIKA Director of Strategy Lena Khoury and discussed Plaintiff.  **WEY** further claimed that when his wife said "Business in Europe is excellent and Hanna is doing an excellent job," Ms. Khoury responded: "Lars [Akerlund, FIKA Co-Owner] and I don't like Hanna.   How can a high-class guy like Ben hang out with a gold-digger like Hanna?"  The CEO further explained:  "They think you're a princess who feels entitled to everything and won't lift a finger to do anything."  Defendant CEO **BENJAMIN WEY** then added:  "I'm the only guy out there for you.   I'm the only one you can trust, I'm the only one who can help you get ahead in the business world."  Plaintiff felt distressed and humiliated.

82.     In approximately mid-April 2014, approximately two weeks before she was fired, Executive Chairman James Baxter told Plaintiff **HANNA BOUVENG**:   "It's so great to step into the office because no matter how early I come in, you're always here before me with a smile on your face, ready to work!"

83.     On or about April 21, 2014, **NYGG** Executive Chairman James Baxter told Plaintiff **HANNA BOUVENG**: "Ben is bi-polar.   He needs medication."   Mr. Baxter added:   "It's very hard to be legal counsel for a control freak."   The Executive Chairman then told Plaintiff **HANNA BOUVENG**: "You've been wonderful" and assured her he would give her a glowing job recommendation.

84.     The following day, on or about April 22, 2014, in direct retaliation for her refusal to further submit to his sexual advances, Defendant CEO **BENJAMIN WEY** and Defendant **NYGG** fired Plaintiff **HANNA BOUVENG**.

85.     On or about April 22, 2014 at approximately 1:15 p.m., Defendant CEO **BENJAMIN WEY** showed up at Plaintiff **HANNA BOUVENG**'s apartment, banged on the door shouting "Hanna," and, when she did not answer, used a key he obtained from the doorman and entered the apartment.   Plaintiff was not home: she was at work undergoing training at Cambridge Alliance Capital.   Her friend James, who had been sleeping on the couch, panicked and ran into the bedroom.   Defendant CEO **BENJAMIN WEY** stormed into the bedroom and went ballistic when he discovered James, shouting:   "Who are you?   What are you doing here?   Are you Hanna's boyfriend?   Did you fuck her?"   Defendant CEO **BENJAMIN WEY** then said he owned the premises and told James he needed to leave immediately.   James complied.

86.     Shortly thereafter on or about April 22, 2014, Defendant CEO **BENJAMIN WEY** summoned Plaintiff **HANNA BOUVENG** from Cambridge Alliance Capital at 99 Wall Street to

meet him outside.   Defendant then confronted Plaintiff in a sinister manner, asking: "Did you have a good time yesterday?"   Plaintiff responded affirmatively.   Defendant then told her he was just at her apartment and found a "Black man" there.   Plaintiff said: "Yes, that's my friend James."   Defendant then shouted at Plaintiff: "You fucking bitch!   You're a liar.   I want you out of the apartment today!"

87.   Thereafter, on or about April 22, 2014, Defendant CEO **BENJAMIN WEY** called Cambridge Alliance Capital and instructed a secretary to bring Plaintiff's things downstairs. Defendant then told Plaintiff coldly:   "I'm terminating your employment and no longer sponsoring your visa."

88.   Thereafter, on or about April 22, 2014, Defendant escorted Plaintiff **HANNA BOUVENG** to her building, and asked the Building Manager to accompany them to Plaintiff's apartment.   The apartment was empty, and the embarrassed Building Manager was allowed to leave.   However, Defendant refused to leave the premises until Plaintiff packed her things and left.

89.   On or about April 22, 2014, Plaintiff **HANNA BOUVENG**'s friend Chemme "Doe," a Swedish student studying at Berkeley College in New York, came over to help Plaintiff pack. Defendant CEO **BENJAMIN WEY** pulled Chemme aside, told her how "betrayed" he felt, and offered Chemme a job and to sponsor her J-1 Visa when she finished her studies.

90.   On or about April 22, 2014, as Plaintiff **HANNA BOUVENG** and Chemme left the apartment, Defendant CEO **BENJAMIN WEY** screamed at the top of his lungs: "You can tell that Black guy James to go fuck himself!" and slammed the door in their face.

91.   Thereafter, Defendant CEO **BENJAMIN WEY** launched into a pattern of increasingly erratic and disturbing behavior, contacting Plaintiff **HANNA BOUVENG** as well as her family and friends, informing them that she was associating and sleeping with "a Black man" and

"dangerous criminal," and referencing a "sex scandal."   Defendant CEO **BENJAMIN WEY**

further informed Plaintiff's family and friends that she was terminated for cause due to her

"alcohol abuse."   Defendant CEO **BENJAMIN WEY**'s statements, including emails and text

messages, constitute defamation as well as harassment and retaliation.

92.      On or about April 22, 2014 at 5:04 p.m., Defendant **BENJAMIN WEY** emailed Plaintiff

**HANNA BOUVENG** and her father, reporting that "[t]he tough decision was made today to

terminate Hanna's affiliation with our firm" and claiming in pertinent part:

> Hanna parities (*sic*) like crazy in New York.   It appears that late
> night partying is her priorities (*sic*) in life.   Work is not.   You are a
> dedicated father and I hope you can help her.   Unless her partying can
> be controlled, she has no career interest.

93.      On or about April 23, 2014, Defendant **BENJAMIN WEY** emailed Plaintiff **HANNA**

**BOUVENG**, cc'ing **NYGG** Executive Chairman and General Counsel James Baxter, and

demanded that she immediately update her LinkedIn page regarding the end of her affiliation with

**NYGG**, which he characterized as "perhaps your single and best opportunity in life."   Plaintiff

complied.

94.      On or about April 23, 2014, Defendant **BENJAMIN WEY** emailed Plaintiff **HANNA**

**BOUVENG** and her father a second time, reported that he had a detective do a "quick

investigation" regarding Plaintiff and James, and declared:   "Hanna is wasting her life away and

she put (*sic*) her life in serious danger."   **WEY** concluded ominously:   "She is smart and had

great potential.   I wanted her to be successful and we supported her in every possible way.   She is

not going to end well."

95.      On or about April 23, 2014, Defendant **BENJAMIN WEY** emailed Plaintiff **HANNA**

**BOUVENG** and her father a third ominous note**,** providing in pertinent part:

> I have provided you a once-in-a-lifetime opportunity.  I
> believe I have done you well.  Let's stay friendly and I
> can help you.  Whereever (*sic*) you are in NYC, stay safe.
> We have a few friends in law enforcement.  If you are in
> crisis, keep my number handy.

Both Plaintiff and her father were alarmed by Defendant **BENJAMIN WEY**'s thinly-veiled

threats.

96.     On or about April 26, 2014, Defendant **BENJAMIN WEY** emailed Plaintiff **HANNA**

**BOUVENG** and her father in pertinent part:

> What if that dirty and drunk club promoter "James" had
> infectious disease when he was found in your bed totally
> naked when the building manager and I found him?  Do
> you really know him well?  Do you know his background?
> Do you really know how many other girls like you he has
> slept with or stayed over with?  Then why did you take him
> home?
>
> And you did not even tell me?  You were supposed to protect
> me from harm at all times?  Remember?
>
> You have treated me worst (*sic*) than a customer.

97.     On or about April 28, 2014 at 6:28 a.m., Defendant **BENJAMIN WEY** emailed Plaintiff

**HANNA BOUVENG** and her father and stated that the "official position" Defendant **NYGG**

would take if anyone, including the U.S. State Department, inquired regarding Plaintiff's

employment status was that she was terminated "for cause."  **WEY** concluded threateningly:

"This is my last email to you and we wish you the best of luck.  At this point, luck is perhaps the

only thing left for Hanna."  Unfortunately, **WEY** lied:  his emails and text messages continued.

98.     On or about April 28, 2014 at approximately 5:30 p.m., Defendant **BENJAMIN WEY**

telephoned Plaintiff **HANNA BOUVENG** on her cell phone using an "unknown" telephone

number, complained that she had "cheated" on him, and begged her to meet with him alone,

preferably for dinner, at Per Se or any other restaurant or place she desired.   Plaintiff refused.

99.     On or about April 28, 2014 at approximately 9:44 p.m., under the guise of **NYGG**'s "Legal

and Regulatory Compliance Department," Defendant **BENJAMIN WEY** emailed a list of **NYGG**

business contacts, including Plaintiff **HANNA BOUVENG**'s friend Chemme, that Plaintiff's

employment and visa sponsorship were terminated "for cause," due to "dishonest acts, possible

illegal drug use or lies that could expose us to potential violations of laws and regulations."   This

email was defamatory.

100.    On or about April 28, 2014, Defendant **BENJAMIN WEY** emailed Plaintiff **HANNA**

**BOUVENG**'s 20-year-old brother in pertinent part:

> Your sister is a very talented person; smart and strong.   That
> was the reason we hired her.   Somehow she has been partying
> like crazy in New York with the wrong people, and brought
> risks to our business.   We suspect this club promoter male
> friend of hers, the one she was dating, may be also involved in
> drugs.   The man has many girls and I worry Hanna may get
> AIDS or other diseases from the man.   Hanna has no medical
> insurance in New York.   Risk, risk, and high risk.   That's all
> Take care.

Plaintiff's brother was scared for his sister's wellbeing.

101.    On or about April 28, 2014, Defendant **BENJAMIN WEY** asked Peter Byrnes, owner of

Lugh Studio, Inc., to hire Plaintiff **HANNA BOUVENG** as Product Manager to develop a website

for **NYGG.**

102.    On or about April 29, 2014 at approximately 5:15 p.m., Defendant **BENJAMIN WEY** left

a voicemail message on Plaintiff's phone asking her out to dinner and begging her to meet with

him.   Plaintiff did not respond.

103.    On or about April 29, 2014 at approximately 5:20 p.m., Defendant **BENJAMIN WEY**

sent Plaintiff **HANNA BOUVENG,** her father Nils Sundqvist, and their family friend Lars

Forseth, CEO of Manpower Sweden, Inc. (an employee staffing agency in Sweden), an email with

the subject line, "Hanna Bouveng was terminated and her alcohol abuses caught on video."   The

email provided in pertinent part:

> After extensive investigations by former police detectives, I firmly
> believe Hanna is in serious trouble here in New York.   If you still
> want to save her, you should recognize the fact that you should get
> her back to Sweden.   Her employment with our firm was terminated
> on February (*sic*) 22 due to lies and unprofessional conducts.

> We have CCTV videos of Hanna living and partying with her black
> man night club promoter boyfriend, James ….   They have an
> intimate and sexual relationship, together with Hanna's girlfriend
> in NYC, another Swedish girl named Chemme .….

> .…

> Background:   Hanna lives a double life in New York: In the daytime
> she was an assistant to us, at night she became an alcoholic and party
> animal.   Her boyfriend James is the provider of Hanna's partying and
> alcohol, in return, he got sex from Hanna and other club girls. .…

> It's important the media and newspapers are not aware of the drug,
> alcohol and sex scandal that could kill Hanna's aunt Helena Bouveng's
> political career.   New York media loves these types of sensational
> stories – a black man night club promoter having sex with Swedish
> girls in exchange for alcohol and illegal drugs.   A reporter from the
> New York Post, a tabloid, is poking around this story.

> Let me know if we need to do anything to help.   Hanna has been a
> very disappointing experience as our intern.   Our firm has a zero
> tolerance policy for alcohol abuse, illegal drugs and violations of
> professional conducts (*sic*.)   Only you can save her.   Get her home
> to Sweden and start her life afresh.   I wish you all the best.

Contrary to **WEY**'s assertions, Plaintiff **HANNA BOUVENG** was not an alcoholic, not a "party

animal," not doing illegal drugs, not in a sexual relationship with her friend Chemme, and not fired

for any professional misconduct.   **WEY**'s statements were libelous.   Instead, Plaintiff **HANNA**

**BOUVENG** was fired in direct retaliation for her refusal to further succumb to her boss' ongoing

sexual advances.

104.   Shortly thereafter, on or about the evening of April 29, 2014, Plaintiff **HANNA**

**BOUVENG**'s lawyers emailed Defendant **BENJAMIN WEY** demanding, among other things,

that he cease and desist his harassment of Plaintiff.   He did not stop.

105.   On or about April 30, 2014 at 12:48 a.m., Defendant **BENJAMIN WEY** emailed Plaintiff

**HANNA BOUVENG**, her father and her friend Chemme another rant with the subject line "Are

you looking at yourself in the mirror?"   The email read in pertinent part:

> I am really not interested or certainly not afraid of a 'fight'
> with you.   You are still a child, thinking like a 15 year old
> teenager.   Your employment was terminated by us on April
> 22, which you will have to leave the U.S. around May 22….
>
> Are you looking in the mirror?   Late night partying and
> excessive alcohol will kill your youth.   Have you looked at
> your face lately?   More wrinkles everywhere, particularly the
> forehead, isn't it?   Wait another two years they will get worse.
> Alcohol abuse and lack of sleep due to your regular late night
> partying will turn a young face into a witch.   Someday you will
> regret your actions occurring today.
>
> Hanna, I could never understand how a talented young lady like
> Hanna would date a …night club promoter that kisses or fucks
> hundreds of other girls.   How many other girls does your friend
> [James] sleep with?   Do you know?   Wake up Hanna, was it
> better sex or better alcohol that kept you blind, or were you looking
> for someone to lean on for "love"?....
>
> …
>
> … Do you want a guy like that?   Does he give you better sex or
> more alcohol?

...

Hanna and Chemme: Let me share with you about the American way of court proceedings.  In a lawsuit, all of Hanna's dirty laundry will come out to become public information, the same dirty laundry will come out for Chemme's and [James'] drugs, prostitution, lies, sex, night clubs, alcohol, violence... Particularly for Chemme, a college student.  You think your university may like that your dirty laundry? (*sic*)  Are you ready to deal with massive public negativity?  We are.  Also, a lawsuit would easily cost you more than $100,000, are you ready to pay for that?  We have been in plenty of lawsuits.  Nothing scares me.  We have the facts.

...

Hanna, is alcohol and partying worth throwing your promising life away?  Are you one of 200+ girls that James is having sex and drinking alcohol and kissing every month?  You were nobody for James and you were an important member of our firm....

106.    On or about May 2, 2014, Defendant **BENJAMIN WEY** sent Plaintiff **HANNA BOUVENG** a "friend request" on Facebook.   When Plaintiff was non-responsive, Defendant **WEY** sent "friend requests" to several of Plaintiff's friends that he had never met.

107.    On or about May 3, 2014, Defendant **BENJAMIN WEY** emailed two of Plaintiff **HANNA BOUVENG**'s family friends (both of whom are from prominent families in Europe) an email with the subject line:  "Hanna Bouveng was terminated by us."  **WEY**'s email falsely provided in pertinent part: "Hanna was terminated for cause" due to "dishonest acts," including "alcohol abuse" and leading a "double life" as a "partying animal at night." **WEY** concluded, "Hanna's promising career on Wall Street with our firm was destroyed due to such irresponsible behavior" and added that she was "now wasted on alcohol."   In so doing, Defendant **BENJAMIN WEY** again defamed Plaintiff's reputation and character.

108.    On or about May 4, 2014, Defendant **BENJAMIN WEY** emailed Plaintiff **HANNA**

**BOUVENG**, referencing "how GREAT and TALENTED… SMART AND BRILLIANT" she was, how she was "so talented in summarizing a complex matter," and stating that he would like to help find her professional relationships with Swedish companies working in the United States, would like to invite her to a "business lunch," and was wondering if she was interested in accompanying him on "a deal trip" to Hawaii.  **WEY** also wrote:  "The past between us is all behind us.  That's how I feel about you."

109.    On or about May 5, 2014 at approximately 5:41 p.m., Defendant **BENJAMIN WEY** texted Plaintiff **HANNA BOUVENG** a photo of himself, Plaintiff and Princess Madeleine of Sweden with the message:  "Photo: This was the Hanna I appreciated: Promising, loyal to me, wishing to achieve the very best, associating with only the very best people.  You still can!!  I am here to help.  You don't have to struggle.  Life is too short."  Defendant **BENJAMIN WEY**'s texts, phone calls, blog posts and emails have not stopped.

110.    On or about May 16, 2014, Defendant **BENJAMIN WEY** summoned the entire office at **NYGG** to a meeting where he announced that he wanted TheBlot Magazine to publish a series of seven-eight articles about "Swedish girls" that come to New York to "do drugs, dink, and party all the time" and how that effected their jobs.  Defendant **BENJAMIN WEY** further announced that he had hired a former FBI agent to investigate the illegal drug activities of young Swedish girls in New York or, as he phrased it, "crazy drug-addicted Swedigh party girls that need to be fired because they party all the time."

111.    As a consequence of this *quid pro quo* sexual harassment, sexually hostile work environment, gender discrimination and retaliation that culminated in her termination, as well as this sexual assault, battery, intentional infliction of emotional distress, harassment, stalking and defamation, Plaintiff **HANNA BOUVENG** has suffered and continues to suffer severe emotional

distress, including depression, anxiety, panic attacks, nightmares, sleep disturbance, crying jags, and upset.   Moreover, Plaintiff has suffered significant economic loss and damage to her reputation.

112.    The allegations set forth above and below are incorporated by reference as if fully set forth herein.

**AS AND FOR A FIRST CAUSE OF ACTION**
**NYSHRL - *QUID PRO QUO* SEXUAL HARASSMENT**

113.    Plaintiff **HANNA BOUVENG** repeats and realleges each and every allegation contained in paragraphs 1 through 112 inclusive, with the same force and effect as though more fully set forth at length herein.

114.    The aforesaid acts of intentional sexual harassment perpetrated by Defendant CEO **BENJAMIN WEY**, an officer, director, supervisor, manager, and/or employee of Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, and the aforesaid acts of retaliation by Defendant CEO **BENJAMIN WEY** and Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** for Plaintiff's failure to comply with Defendant CEO **BENJAMIN WEY**'s sexual advances and his sexually inappropriate conduct, violated Plaintiff's rights as provided under New York State Human Rights Law - Executive Law Section 290 et. seq.

115.    As a consequence of Defendants' *quid pro quo* sexual harassment, including the retaliation against Plaintiff for refusing to further succumb to her supervisor's sexual advances, during Plaintiff's employment with Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** has sustained and continues to sustain conscious pain and suffering, physical injury,

great mental distress, shock, fright and humiliation.   In addition, Plaintiff has incurred and continues to incur monetary loss as she was subjected to adverse employment actions, including the termination of her employment.

116.   As a consequence of the foregoing misconduct of Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** is entitled to damages under 15 N.Y. Exec. Law Section 297(4)(c) in the amount of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS.

## AS AND FOR A SECOND CAUSE OF ACTION
## NYCHRL - *QUID PRO QUO* SEXUAL HARASSMENT

117.   Plaintiff **HANNA BOUVENG** repeats and realleges each and every allegation contained in paragraphs 1 through 112 inclusive, with the same force and effect as though more fully set forth at length herein.

118.   The aforesaid acts of intentional sexual harassment perpetrated by Plaintiff's Supervisor, Defendant CEO **BENJAMIN WEY**, an officer, director, supervisor, manager, and/or employee of Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, and the aforesaid acts of retaliation by CEO **BENJAMIN WEY** and Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** for Plaintiff's failure to comply with Defendant CEO **BENJAMIN WEY**'s sexual advances and his sexually inappropriate conduct, violated Plaintiff's rights as provided under New York City Human Rights Law Title 8 ("NYCHRL"), et. seq.

119.   As a consequence of Defendants' *quid pro quo* sexual harassment, including the retaliation against Plaintiff for refusing to further succumb to her supervisor's sexual advances,

during Plaintiff's employment with Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** has sustained and continues to sustain conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation.   In addition, Plaintiff has incurred and continues to incur monetary loss as she was subjected to adverse employment actions, including the termination of her employment.

120.    As a consequence of the foregoing misconduct of Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** is entitled to compensatory damages and punitive damages in the sum prescribed by NYC Human Rights Law Title 8, et. seq., i.e., compensatory damages of TWENTY-FIVE MILLION ($25,000,000.00 ) DOLLARS and punitive damages of FIFTY MILLION ($50,000,000.00) DOLLARS, as well as attorneys' fees.

## AS AND FOR A THIRD CAUSE OF ACTION
## NYSHRL - SEXUALLY HOSTILE WORK ENVIRONMENT

121.    Plaintiff **HANNA BOUVENG** repeats and realleges each and every allegation contained in paragraphs 1 through 112 inclusive, with the same force and effect as though more fully set forth at length herein.

122.    The sexually hostile work environment for women created, perpetuated, encouraged, and maintained by Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, its officers, directors, supervisors, managers and/or employees, violated Plaintiff's rights as provided under New York State Human Rights Law - Executive Law Section 290 et. seq.

123.    As a consequence of the sexually hostile work environment created, perpetuated

and condoned by Defendants during Plaintiff's employment with Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** has sustained and continues to sustain physical injury, conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation. In addition, Plaintiff has incurred and continues to incur monetary loss as she was subjected to adverse employment actions, including the termination of her employment.

124.    As a consequence of the foregoing misconduct of Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** is entitled to damages under 15 N.Y. Exec. Law Section 297(4)(c) in the amount of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS.

## AS AND FOR A FOURTH CAUSE OF ACTION
## NYCHRL - SEXUALLY HOSTILE WORK ENVIRONMENT

125.    Plaintiff **HANNA BOUVENG** repeats and realleges each and every allegation contained in paragraphs 1 through 112 inclusive, with the same force and effect as though more fully set forth at length herein.

126.    The sexually hostile work environment for women created, perpetuated, encouraged, and maintained by Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, its officers, directors, supervisors, managers and/or employees, violated Plaintiff's rights as provided under New York City Human Rights Law Title 8 ("NYCHRL"), et. seq.

127.    As a consequence of the sexually hostile work environment created, perpetuated and condoned by Defendants during Plaintiff's employment with Defendant **NYG CAPITAL**

**LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** has sustained and continues to sustain physical injury, conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation. In addition, Plaintiff has incurred and continues to incur monetary loss as she was subjected to adverse employment actions, including the termination of her employment.

128.    As a consequence of the foregoing misconduct of Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** is entitled to damages in the sum prescribed by NYC Human Rights Law Title 8, <u>et. seq.</u>, i.e., compensatory damages of TWENTY-FIVE MILLION ($25,000,000.00 ) DOLLARS and punitive damages of FIFTY MILLION ($50,000,000.00) DOLLARS, as well as attorneys' fees.

**AS AND FOR AN FIFTH CAUSE OF ACTION**
**NYSHRL - GENDER DISCRIMINATION**

129.    Plaintiff **HANNA BOUVENG** repeats and realleges each and every allegation contained in paragraphs 1 through 112 inclusive, with the same force and effect as though more fully set forth at length herein.

130.    As a consequence of Defendants **BENJAMIN WEY**'s and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP**'s and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**'s gender discrimination, Plaintiff **HANNA BOUVENG** has been and continues to be deprived of equal treatment, including: equal pay for commensurate work; equal opportunities for promotion, advancement, increased compensation, and continued employment; and equal standards of conduct, because of her gender.

131.    The aforesaid discriminatory acts by Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL**

**MEDIA LLC**, its officers, directors, supervisors, managers and/or employees, perpetrated against Plaintiff because of her gender, violated Plaintiff **HANNA BOUVENG**'s rights as provided under The New York State Human Rights Law, Article 15 of the New York Executive Law ("NYSHRL"), 15 N.Y. Exec. Law Section 290, et. seq.

132.    As a consequence of Defendants' gender discrimination during Plaintiff's employment with Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** has sustained and continues to sustain physical injury, conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation.   In addition, Plaintiff has incurred and continues to incur economic loss.

133.    As a consequence of the foregoing misconduct of Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** is entitled to damages under 15 N.Y. Exec. Law Section 297(4)(c) in the amount of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS.

### AS AND FOR A SIXTH CAUSE OF ACTION
### NYCHRL - GENDER DISCRIMINATION

134.    Plaintiff **HANNA BOUVENG** repeats and realleges each and every allegation contained in paragraphs 1 through 112 inclusive, with the same force and effect as though more fully set forth at length herein.

135.    As a consequence of Defendants **BENJAMIN WEY**'s and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP**'s and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**'s gender discrimination, Plaintiff **HANNA**

**BOUVENG** has been and continues to be deprived of equal treatment, including: equal pay for commensurate work; equal opportunities for promotion, advancement, increased compensation, and continued employment; and equal standards of conduct, because of her gender.

136.    The aforesaid discriminatory acts by Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, its officers, directors, supervisors, managers and/or employees, perpetrated against Plaintiff because of her gender, violated Plaintiff **HANNA BOUVENG**'s rights as provided under New York City Human Rights Law Title 8 ("NYCHRL"), et. seq.

137.    As a consequence of Defendants' gender discrimination during Plaintiff's employment with Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** has sustained and continues to sustain physical injury, conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation.   In addition, Plaintiff has incurred and continues to incur economic loss.

138.    As a consequence of the foregoing misconduct of Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** is entitled to compensatory damages and punitive damages in the sum prescribed by NYC Human Rights Law Title 8, et. seq., i.e., compensatory damages of TWENTY-FIVE MILLION ($25,000,000.00 ) DOLLARS and punitive damages of FIFTY MILLION ($50,000,000.00) DOLLARS, as well as attorneys' fees.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### NYSHRL - RETALIATION

139.    Plaintiff **HANNA BOUVENG** repeats and realleges each and every allegation contained

in paragraphs 1 through 112 inclusive, with the same force and effect as though more fully set forth at length herein.

140.    The aforesaid acts of intentional retaliation against Plaintiff by Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, its officers, directors, supervisors, managers and/or employees, violated Plaintiff **HANNA BOUVENG**'s rights as provided under New York State Human Rights Law - Executive Law Section 290 et. seq.

141.    As a consequence of Defendant's retaliation against Plaintiff **HANNA BOUVENG** during her employment with Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff has sustained and continues to sustain conscious pain and suffering, great mental distress and humiliation, has incurred and continues to incur monetary loss, and has been subjected to adverse employment actions, including the termination of her employment.

142.    As a consequence of the foregoing misconduct of Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** is entitled to damages under 15 N.Y. Exec. Law Section 297(4)(c) in the amount of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS.


## AS AND FOR AN EIGHTH CAUSE OF ACTION
## NYCHRL -RETALIATION

143.    Plaintiff **HANNA BOUVENG** repeats and realleges each and every allegation contained in paragraphs 1 through 112 inclusive, with the same force and effect as though more fully set forth at length herein.

144.    The aforesaid acts of intentional retaliation against Plaintiff by Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, its officers, directors, supervisors, managers and/or employees, violated Plaintiff **HANNA BOUVENG**'s rights as provided under New York City Human Rights Law Title 8 ("NYCHRL"), et. seq.

145.    As a consequence of Defendants' retaliation against Plaintiff **HANNA BOUVENG** while she was an employee of Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** and after her termination, Plaintiff has sustained and continues to sustain conscious pain and suffering, great mental distress and humiliation, has incurred and continues to incur monetary loss, and has been subjected to adverse employment actions, including the termination of her employment.

146.    As a consequence of the foregoing misconduct of Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** has been damaged and is entitled to compensatory damages and punitive damages in the sum prescribed by NYC Human Rights Law Title 8, et. seq., i.e., compensatory damages of TWENTY-FIVE MILLION ($25,000,000.00 ) DOLLARS and punitive damages of FIFTY MILLION ($50,000,000.00) DOLLARS, as well as attorneys' fees.

## AS AND FOR A NINTH CAUSE OF ACTION
## ASSAULT

147.    Plaintiff **HANNA BOUVENG** repeats and realleges each and every allegation contained in paragraphs 1 through 112 inclusive, with the same force and effect as though more fully set forth at length herein.

148.    Defendant CEO **BENJAMIN WEY**, in perpetrating the above described conduct,

placed Plaintiff **HANNA BOUVENG** in apprehension and fear of unwanted, unwarranted, unsolicited physical touching of her person by him in a manner that was harmful and offensive to Plaintiff **HANNA BOUVENG** and would be harmful and offensive to any reasonable person.

149.    In so doing, Defendant CEO **BENJAMIN WEY** acted within the course and scope of his duties as the CEO, i.e., the highest-ranking officer, executive, manager, supervisor and employee of Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC.** Accordingly, Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** is responsible for Defendant CEO **BENJAMIN WEY**'s misconduct under the theory of respondeat superior.

150.    As a consequence of the conduct of Defendant CEO **BENJAMIN WEY** and Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC,** Plaintiff **HANNA BOUVENG** has incurred physical and psychological trauma and damage, has suffered great humiliation, loss of esteem, mental anguish and suffering, and has sustained damage in the sum of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS compensatory damages and punitive damages in the amount of FIFTY MILLION ($50,000,000.00) DOLLARS.

## AS AND FOR A TENTH CAUSE OF ACTION
## BATTERY

151.    Plaintiff **HANNA BOUVENG** repeats and realleges each and every allegation contained in paragraphs 1 through 112 inclusive, with the same force and effect as though more fully set forth at length herein.

152.    Defendant CEO **BENJAMIN WEY**, in perpetrating the above-described non-consensual assaults, including his kissing, fondling, grabbing, pulling, groping, molesting and/or forcing

sexual relations upon Plaintiff **HANNA BOUVENG**, did, without consent, touch Plaintiff

**HANNA BOUVENG** in a manner that was both harmful and offensive to Plaintiff **HANNA**

**BOUVENG** and in a manner that any reasonable person would similarly find harmful and

offensive.

153.    In so doing, Defendant CEO **BENJAMIN WEY** acted within the course and scope of

his duties as duties as the CEO, i.e., the highest-ranking officer, executive, manager, supervisor

and employee of Defendant   **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP**

and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC.**   Accordingly, Defendant **NYG**

**CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL**

**MEDIA LLC** is responsible for Defendant CEO **BENJAMIN WEY**'s misconduct under the

theory of respondeat superior.

154.    As a consequence of the conduct of Defendant CEO **BENJAMIN WEY** and Defendant

**NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC**

**d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** has incurred physical and

psychological trauma and damage, has suffered great humiliation, loss of esteem, mental anguish

and suffering, and has sustained damage in the sum of TWENTY-FIVE MILLION

($25,000,000.00) DOLLARS compensatory damages and punitive damages in the amount of

FIFTY MILLION ($50,000,000.00) DOLLARS.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

155.    Plaintiff **HANNA BOUVENG** repeats and realleges each and every allegation contained

in paragraphs 1 through 112 inclusive, with the same force and effect as though more fully set forth

at length herein.

156.     As a consequence of Defendant CEO **BENJAMIN WEY**'s wholly unlawful, intentional, reckless and negligent conduct, Defendant CEO **BENJAMIN WEY** intentionally inflicted emotional distress upon Plaintiff **HANNA BOUVENG**.

157.     Defendant CEO **BENJAMIN WEY**, through a pattern of extreme and outrageous conduct, which was beyond all possible bounds of decency, and which may be regarded as atrocious and utterly intolerable within a civilized society, molested, assaulted, battered, harassed, humiliated, degraded, disparaged, defamed and retaliated against Plaintiff.

158.     In so doing, Defendant CEO **BENJAMIN WEY** acted within the course and scope of his duties as duties as Chief Executive Officer, i.e., the highest-ranking officer, executive, manager, supervisor and employee of Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC.**   Accordingly, Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** is responsible for Defendant CEO **BENJAMIN WEY**'s misconduct under the theory of respondeat superior.

159.     As a consequence of Defendant CEO **BENJAMIN WEY**'s intentional infliction of emotional distress upon Plaintiff **HANNA BOUVENG**, Plaintiff sustained conscious pain and suffering, Plaintiff's health was impaired, and Plaintiff suffered great mental distress, shock, fright and humiliation.

160.     As a consequence of the conduct of Defendant CEO **BENJAMIN WEY** and Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**, Plaintiff **HANNA BOUVENG** has incurred physical and psychological trauma and damage, has suffered great humiliation, loss of esteem, mental anguish and suffering, and has sustained damage in the sum of TWENTY-FIVE MILLION

($25,000,000.00) DOLLARS compensatory damages and punitive damages in the amount of

FIFTY MILLION ($50,000,000.00) DOLLARS.

## AS AND FOR A TWELFH CAUSE OF ACTION
## DEFAMATION/SLANDER

161.    Plaintiff **HANNA BOUVENG**   repeats and realleges each and every

allegation contained in paragraphs 1 through 112 inclusive, with the same force and effect as

though more fully set forth at length herein.

162.    The aforementioned, patently false statements concerning Plaintiff **HANNA BOUVENG**

made by Defendant **BENJAMIN WEY** and broadcast to Defendant **NYGG's** business contacts,

to the CEO of Manpower Sweden, Inc., to the U.S. State Department, and to Plaintiff's family and

friends, exposed Plaintiff to public hatred, shame, contempt, ridicule, ostracism, degradation

and/or disgrace, induced an evil opinion of Plaintiff in the minds of right-thinking persons, and/or

deprived Plaintiff **HANNA BOUVENG** of confidence and friendly intercourse in society.

163.    The aforesaid acts of intentional defamation perpetrated by Defendant **BENJAMIN WEY**

violated the privacy rights of Plaintiff **HANNA BOUVENG**, a private citizen.   Said statements

not only disparaged Plaintiff **HANNA BOUVENG** and directly attacked her competence,

credibility and reputation as a professional, but also impugned her basic integrity and/or

creditworthiness as a law-abiding, peaceful, sober, non-promiscuous, healthy human being.

164.    As a consequence of Defendant **BENJAMIN WEY's** defamatory statements, including

written statements made via emails, text message, Facebook posts and blog messages on his

internet magazine "The Blot," Plaintiff **HANNA BOUVENG** has suffered great humiliation, loss

of esteem, mental anguish and suffering, and loss of reputation, and has sustained economic loss.

165.    As a consequence of the conduct of Defendant CEO **BENJAMIN WEY**, Plaintiff

**HANNA BOUVENG** has incurred psychological trauma and damage, has suffered great humiliation, loss of esteem, mental anguish and suffering, and has sustained economic damage, in the sum of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS compensatory damages and punitive damages in the amount of FIFTY MILLION ($50,000,000.00) DOLLARS.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
## HARASSMENT

166.    Plaintiff **HANNA BOUVENG** repeats and realleges each and every allegation contained in paragraphs 1 through 112 inclusive, with the same force and effect as though more fully set forth at length herein.

167.    The aforesaid acts of intentional harassment against Plaintiff **HANNA BOUVENG** by Defendant **BENJAMIN WEY** constitute Aggravated Harassment in the Second Degree in violation of New York State Penal Code Section 240.30.

168.    As set forth above, with the intent to annoy, threaten or alarm Plaintiff **HANNA BOUVENG**, Defendant CEO **BENJAMIN WEY** communicated with Plaintiff **HANNA BOUVENG** in a manner likely to cause annoyance or alarm.

169.    In so doing, Defendant CEO **BENJAMIN WEY** acted within the course and scope of his duties as the CEO, i.e., the highest-ranking officer, executive, manager, supervisor and employee of Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**.   Accordingly, Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** is responsible for Defendant CEO **BENJAMIN WEY**'s misconduct under the theory of respondeat superior.

170.    As a consequence of the conduct of Defendant CEO **BENJAMIN WEY** and Defendant

**NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC,** Plaintiff **HANNA BOUVENG** has incurred physical and psychological trauma and damage, has suffered great humiliation, loss of esteem, mental anguish and suffering, and has sustained damage in the sum of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS compensatory damages and punitive damages in the amount of FIFTY MILLION ($50,000,000.00) DOLLARS.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
## STALKING

171.    Plaintiff **HANNA BOUVENG** repeats and realleges each and every allegation contained in paragraphs 1 through 112 inclusive, with the same force and effect as though more fully set forth at length herein.

172.    The aforesaid acts of intentional stalking by Defendant **BENJAMIN WEY** of Plaintiff **HANNA BOUVENG** constitute Stalking in the Fourth Degree in violation of New York State Penal Code Section 240.26, .31; 120.45-60, et seq.

173.    As set forth above, Defendant CEO **BENJAMIN WEY** intentionally and with no legitimate purpose engaged in conduct that he knew or should reasonably have known: would cause reasonable fear of material harm to Plaintiff **HANNA BOUVENG** or a member of her immediate family; and/or that did cause material harm to the mental or emotional health of Plaintiff **HANNA BOUVENG** or a member of her immediate family; and/or that caused a reasonable fear that Plaintiff **HANNA BOUVENG**'s employment was threatened.

174.    In so doing, Defendant CEO **BENJAMIN WEY** acted within the course and scope of his duties as the CEO, i.e., the highest-ranking officer, executive, manager, supervisor and employee of Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC.**   Accordingly, Defendant **NYG CAPITAL**

LLC d/b/a **NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA**

**LLC** is responsible for Defendant CEO **BENJAMIN WEY**'s misconduct under the theory of

respondeat superior.

175.    As a consequence of the conduct of Defendant CEO **BENJAMIN WEY** and Defendant

**NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC**

**d/b/a FNL MEDIA LLC,** Plaintiff **HANNA BOUVENG** has incurred physical and

psychological trauma and damage, has suffered great humiliation, loss of esteem, mental anguish

and suffering, and has sustained damage in the sum of TWENTY-FIVE MILLION

($25,000,000.00) DOLLARS compensatory damages and punitive damages in the amount of

FIFTY MILLION ($50,000,000.00) DOLLARS.


WHEREFORE, Plaintiff **HANNA BOUVENG** demands judgment against Defendants

**BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and

**NYG CAPITAL LLC d/b/a FNL MEDIA LLC** in the First Cause of Action in the amount of

TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS; Plaintiff **HANNA BOUVENG**

demands judgment against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A**

**NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC**

in the Second Cause of Action in the amount of SEVENTY-FIVE MILLION ($75,000,000.00)

DOLLARS; Plaintiff **HANNA BOUVENG** demands judgment against Defendants **BENJAMIN**

**WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **NYG CAPITAL**

**LLC d/b/a FNL MEDIA LLC** in the Third Cause of Action in the amount of TWENTY-FIVE

MILLION ($25,000,000.00) DOLLARS; Plaintiff **HANNA BOUVENG** demands judgment

against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** in the Fourth Cause of Action in the amount of SEVENTY-FIVE MILLION ($75,000,000.00) DOLLARS; Plaintiff **HANNA BOUVENG** demands judgment against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** in the Fifth Cause of Action in the amount of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS; Plaintiff **HANNA BOUVENG** demands judgment against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** in the Sixth Cause of Action in the amount of SEVENTY-FIVE MILLION ($75,000,000.00) DOLLARS; Plaintiff **HANNA BOUVENG** demands judgment against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** in the Seventh Cause of Action in the amount of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS; Plaintiff **HANNA BOUVENG** demands judgment against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** in the Eighth Cause of Action in the amount of SEVENTY-FIVE MILLION ($75,000,000.00) DOLLARS; Plaintiff **HANNA BOUVENG** demands judgment against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** in the Ninth Cause of Action in the amount of SEVENTY-FIVE MILLION ($75,000,000.00) DOLLARS; Plaintiff **HANNA BOUVENG** demands judgment against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** in the Tenth Cause of Action in

the amount of SEVENTY-FIVE MILLION ($75,000,000.00) DOLLARS; Plaintiff **HANNA BOUVENG** demands judgment against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** in the Eleventh Cause of Action in the amount of SEVENTY-FIVE MILLION ($75,000,000.00) DOLLARS; Plaintiff **HANNA BOUVENG** demands judgment against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** in the Twelfth Cause of Action in the amount of SEVENTY-FIVE MILLION ($75,000,000.00) DOLLARS; Plaintiff **HANNA BOUVENG** demands judgment against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** in the Thirteenth Cause of Action in the amount of SEVENTY-FIVE MILLION ($75,000,000.00) DOLLARS; and Plaintiff **HANNA BOUVENG** demands judgment against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **NYG CAPITAL LLC d/b/a FNL MEDIA LLC** in the Fourteenth Cause of Action in the amount of SEVENTY-FIVE MILLION ($75,000,000.00) DOLLARS; all together with the costs and disbursements of this action, including attorneys' fees, plus interest, and for any other

//

//

//

//

//

//

//

relief which this Court deems just and proper.


Dated:      New York, New York
            July 21, 2014

     **MORELLI ALTERS RATNER LLP**


By: _____
        Benedict P. Morelli, Esq.
        David S. Ratner, Esq.
        777 Third Avenue, 32nd Floor
        New York, New York   10017
        (212) 751-9800