UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HANNA BOUVENG,

                Plaintiff,

     v.

NYG CAPITAL LLC d/b/a NEW YORK GLOBAL
GROUP, FNL MEDIA LLC, and BENJAMIN
WEY,

                Defendants.

Case No. 14-CV-5474 (PGG)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

Justin Sher
Mark Cuccaro
SHER TREMONTE LLP
80 Broad Street, Suite 1301
New York, New York 10004
Tel: 212.202.2600
jsher@shertremonte.com

*Attorneys for Defendants*
*NYG Capital LLC, FNL Media LLC,*
*and Benjamin Wey*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ALLEGED IN THE COMPLAINT ..................................................................... 2

APPLICABLE STANDARD ............................................................................................. 5

ARGUMENT ...................................................................................................................... 6

  I.   THE NEW YORK STATE AND CITY HUMAN RIGHTS LAW CLAIMS AGAINST
      FNL SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ......................... 6

  II.  PLAINTIFF'S ASSAULT AND BATTERY CLAIMS AGAINST NYGG AND FNL
       SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ................................ 8

  III.  PLAINTIFF'S DEFAMATION CLAIM AGAINST NYGG SHOULD BE DISMISSED
        FOR FAILURE TO STATE A CLAIM ............................................................................ 10

  IV.  PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM
        SHOULD BE DISMISSED AGAINST ALL DEFENDANTS FOR FAILURE TO STATE
        A CLAIM ....................................................................................................................... 12

  V.  PLAINTIFF'S REQUEST FOR EQUITABLE AND INJUNCTIVE RELIEF SHOULD E
      DISMISSED ................................................................................................................... 14

    A.  The Injunctive Relief Sought Would Violate the First Amendment............................... 15

    B. The Complaint Fails to Allege Absence of an Appropriate Legal Remedy or Irreparable
       Harm Sufficient to Support Claim for Injunctive Relief .................................................. 17

  VI. PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED FOR
      LACK OF SUPPLEMENTAL JURISDICTION ............................................................ 19

  VII. PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED
       AGAINST FNL FOR FAILURE TO STATE A CLAIM ................................................ 22

CONCLUSION .................................................................................................................. 22

i

## TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006)................................ 19

*Adorno v. Corr. Servs. Corp.*, 312 F. Supp. 2d 505 (S.D.N.Y. 2004) ................................... 10, 14

*Alexander v. United States,* 509 U.S. 544 (1993) ........................................................... 15

*Am. Malting Co. v. Keitel*, 209 F. 351 (2d Cir. 1913)...................................................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 5

*Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, No. 11 Civ. 7565 (DLC), 2012 WL 1203955
   (S.D.N.Y. Apr. 11, 2012) .............................................................................. 20

*Bell Atlantic v. Twombly*, 500 U.S. 544, 570 (2007) ...................................................... 6

*Biberaj v. Pritchard Indus., Inc.,* 859 F. Supp. 2d 549, 564 (S.D.N.Y. 2012) ........................... 12

*Bihari v. Gross,* 119 F. Supp. 2d 309, 325 (S.D.N.Y. 2000) .............................................. 17

*Bouche v. City of Mount Vernon,* No. 11 CIV. 5246 SAS, 2012 WL 987592, *9 (S.D.N.Y. Mar.
   23, 2012) ............................................................................................. 13

*Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432 (S.D.N.Y. 2006)................. 21

*Cam–Ful Indus. v. Fidelity & Deposit Co. of Md.*, 922 F.2d 156 (2d Cir.1991)......................... 20

*Chenensky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388 (S.D.N.Y. 2013) ........................... 22

*Cmty. for Creative Non–Violence v. Pierce*, 814 F.2d 663 (D.C.Cir.1987) ............................... 16

*Doe v. Alsaud*, No. 13 CIV. 571, 2014 WL 1345324 (S.D.N.Y. Apr. 3, 2014). ..................... 9, 10

*Dorn v. Maffei*, 386 F. Supp. 2d 479, 486 (S.D.N.Y. 2005)............................................. 13

*EEOC v. Die Fliedermaus*, 77 F. Supp. 2d 460 (S.D.N.Y. 1999) ....................................... 13

*Gameologist Grp., LLC v. Scientific Games Int'l, Inc.*, 838 F. Supp. 2d 141 (S.D.N.Y. 2011) ... 22

*Garrison v. Toshiba Bus. Solutions (USA) Inc.,* 907 F. Supp. 2d 301 (E.D.N.Y. 2012)............. 11

*George Haug v. Rolls Royce Motor Cars*, 148 F.3d 136 (2d Cir. 1998) ........................................ 6

*Golodner v. Quessant Inc*., 05 CIV. 7895 (RLE), 2007 WL 2844944 (S.D.N.Y. Sept. 27, 2007) ........................................................................................................................................ 14

*Haybeck v. Prodigy Servs. Co*., 944 F. Supp. 326, 329 (S.D.N.Y. 1996) ...................................... 9

*Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115 (1993) ........................................................ 12

*Jayaraj v. Scappini,* 66 F.3d 36 (2d Cir.1995) ......................................................................... 18

*Kessler v. Gen. Servs. Admin.,* 341 F.2d 275 (2d Cir. 1964) ..................................................... 16

*Konigsberg v. Time, Inc.*, 288 F. Supp. 989 (S.D.N.Y. 1968) .................................................... 16

*Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504 (S.D.N.Y. 2013) ........................................ 16, 17, 18

*Mackay v. Real Cars, Inc*., 215 A.D.2d 538 (2d Dep't 1995) ..................................................... 11

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ............................................................ 6

*Marcavage v. City of New York*, 689 F.3d 98 (2d Cir. 2012) ...................................................... 18

*Mariani v. Consol. Edison Co. of New York,* 982 F. Supp. 267 (S.D.N.Y. 1997) ....................... 12

*Medcalf v. Walsh*, 938 F. Supp. 2d 478 (S.D.N.Y. 2013) ........................................................... 12

*Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291 (2d Cir. 2000) ........................................ 21

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172 (2d Cir. 2001) ....................................................................................................... 16

*Monastra v. NYNEX Corp*., No. 99 Civ. 8917 (RCC), 2000 WL 1290596 (S.D.N.Y. Sept. 12, 2000) ....................................................................................................................................... 7

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ................................................................ 15

*New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339 (2d Cir.1989) ............................ 17

*Ogust v. Inst. for Pub. Serv*., 216 A.D. 118 (1st Dep't 1926) ..................................................... 11

*Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971) ........................................................ 15, 17

*Pampillonia v. RJR Nabisco, Inc*., 138 F.3d 459 (2d Cir. 1998) .................................................. 7

*Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460 (S.D.N.Y. 1996) ..................................... 7, 8

*Roman Y Gordillo, S.C. v. Bank of N.Y. Mellon Corp.*, No. 12-cv-0212 (DF), 2014 WL 3507300 (S.D.N.Y. July 14, 2014) ............................................................................................. 20

*Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522 (S.D.N.Y. 1998) ................................. 10

*Socialist Workers Party v. Attorney Gen. of U.S.*, 642 F. Supp. 1357 (S.D.N.Y. 1986) ............. 18

*Solieri v. Ferrovie Dello Stato Spa*, No. 97 Civ. 8844 (RPP), 1998 WL 419013 (S.D.N.Y. July 23, 1998) ................................................................................................................. 7

*Stop the Olympic Prison v. United States Olympic Comm.,* 489 F. Supp. 1112  (S.D.N.Y. 1980) ........................................................................................................................ 16

*Thomas v. Cnty. of Putnam*, 262 F. Supp. 2d 241 (S.D.N.Y. 2003) ............................... 13

*Tischmann v. ITT/Sheraton Corp.*, 882 F. Supp. 1358 (S.D.N.Y. 1995)........................ 11

*Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995) ............................................... 9, 10

*Tsegaye v. Impol Aluminum Corp.*, No. 01 Civ. 5943 (LMM), 2003 WL 221743 (S.D.N.Y. Jan. 30, 2003) ................................................................................................................. 8

*United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298 (2d Cir. 1994) ..................................................... 21

*White v. Pacifica Found.*, 973 F. Supp. 2d 363 (S.D.N.Y. 2013)................................... 7

*Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ...................................................... 18

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ..................................... 17

## **Statutes**

28 U.S.C. § 1332(a)(2) (2014) ..................................................................................... 20

28 U.S.C. § 1337 (2014) .............................................................................................. 19

N.Y. Exec. Law § 296, *et seq*. (McKinney 2014)......................................................... 6

N.Y.C. Human Rights Law § 8-101, *et seq*. (McKinney 2014) ................................... 6

Defendants NYG Capital LLC d/b/a New York Global Group ("NYGG"), FNL Media LLC ("FNL"), and Benjamin Wey ("Wey" and together, "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss in part the Second Amended Complaint (the "Complaint") of Plaintiff Hanna Bouveng ("Plaintiff" or "Bouveng").

## PRELIMINARY STATEMENT

In this action, Plaintiff brings thirteen separate claims against Defendants, seeking an aggregate of $850 million in damages for alleged sexual harassment and related claims arising from her less than seven-month internship at NYGG.  The allegations in the Complaint are false and part of a campaign to extort money from Defendants.  Indeed, months before Plaintiff initiated this action, her counsel threatened "expensive and embarrassing litigation for you, your company and your family" if the Defendants failed to pay a substantial settlement.[1]

As with many contrived stories, the Complaint suffers from general incoherence, vagueness, and internal inconsistencies.  The Complaint also suffers from multiple legal deficiencies.  For example, Plaintiff asserts statutory employment claims against FNL although it was admittedly not her employer.  Plaintiff also asserts intentional tort claims against NYGG and FNL although these defendants cannot be held liable for the underlying conduct allegedly committed by Wey outside of the scope of his employment.

Due to these and other deficiencies, even taking all the allegations in the Complaint as true, many of Plaintiff's claims should be dismissed.  Specifically, Defendants move to dismiss the following claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6): (a) all claims against FNL under the New York State Human Rights Law and New York City Human Rights Law, because FNL was not Plaintiff's employer; (b) the assault, battery, and

---

[1]        *See* Ex. M to 7/24/14 Ratner Aff. in Supp. of Prelim. Inj. (Dkt. No. 5-15).

intentional infliction of emotional distress claims against NYGG and FNL, and the defamation

claim against NYGG, because these intentional torts cannot be attributed to these corporate

defendants; (c) the intentional infliction of emotional distress claim against all Defendants,

because it is duplicative of other tort claims; and (d) the request for injunctive relief, which runs

afoul of the First Amendment.

In addition, Defendants move to dismiss the new claim for breach of contract, based on a

stipulation entered into between Plaintiff and NYGG and Wey during the course of this

litigation, under Federal Rule of Civil Procedure 12(b)(1), because the Court lacks supplemental

jurisdiction over this claim.  Furthermore, even if this breach of contract claim is permitted, it

must be dismissed for failure to state a claim as against FNL, which was not a signatory the

stipulation.

## FACTS ALLEGED IN THE COMPLAINT

The allegations in the Complaint are false.  However, even if they are assumed true for

purposes of a motion to dismiss, they do not portray a young woman victimized by a powerful

predator but a consensual relationship between two sophisticated adults.

According to the Complaint, Plaintiff is well educated and well-traveled.  At 24 years

old, she has a Bachelor of Science degree in media and communications from a university in

Sweden, studied abroad at a university in Hong Kong and speaks five languages.  (Compl. ¶¶ 1,

23.)  She has represented that she worked as a product manager in advertising for a company in

Oslo, Norway.  Without explaining the precise circumstances or indicating whether her departure

was voluntary, the Complaint reveals that Plaintiff's employment in Norway concluded after

only 13 months.  (*Id.* ¶ 24.)

2

Following the conclusion of her brief employment in Norway, Plaintiff decided to seek out an opportunity to live and work in New York City.  (*Id.* ¶ 25.)  In July 2013, she moved to Manhattan and enrolled in classes at Berkeley College.  (*Id.*) The Complaint does not specify how Plaintiff used her connections to get introduced to Wey, an investigative journalist and the chief executive officer of NYGG, an international business consulting firm.  However, according to the Complaint, Plaintiff got herself invited to lunch at Capital Grille near Wall Street with Wey.  (*Id.* ¶ 26.)

According to the Complaint, Wey understood the lunch as a social, rather than business, engagement.  Although the allegations are false, Plaintiff alleges that Wey made his intentions clear that he was interested in Bouveng as a "girlfriend."  Instead of ending the lunch or politely finishing the meal and then avoiding further communications with Wey, Plaintiff apparently saw an opportunity.  She responded by asking for a job.  (*Id.* ¶ 26.)  Wey had no prior interest in hiring Bouveng, and Plaintiff acknowledges that Wey did not respond to Plaintiff's request for a job during the lunch.  (*Id.*)

The Complaint alleges that Wey, having no prior contact or relationship with the Plaintiff, immediately reconsidered Plaintiff's proposal and, despite her lack of experience in the financial industry, agreed to hire her as a paid intern.  (*Id.* ¶ 27.)  The Complaint further alleges that Defendants sponsored Plaintiff's visa, paid her $2,000 per month, and guaranteed her apartment in downtown Manhattan.  (*Id.* ¶¶ 28, 29, 57.)  According to the Complaint, Plaintiff agreed to move out of an apartment she shared with friends and into this apartment in November 2013 *after* Wey allegedly told Plaintiff he wanted to leave his wife for her, *after* they had allegedly shared a hotel room together and *after* Wey allegedly tried to have sex with her.  (*Id.* ¶¶ 47, 55, 57.)

3

Shortly after moving into the apartment, the Complaint alleges that Plaintiff asked for a "raise." (*Id.* ¶ 58.) The following month, when Wey gave Plaintiff a $2,000 Prada bag, Plaintiff told him she preferred a "cash bonus." (*Id.* ¶ 66.)

The Complaint also alleges that Plaintiff had sex with Wey on four occasions. (*Id.* ¶¶ 67, 70.) Although Plaintiff claims she did so because she felt "trapped" after becoming "intoxicated," other allegations contradict this. (*Id.* ¶¶ 67, 69.) Throughout the Complaint, Plaintiff alleges that whenever she sought to resist Wey's advances, she said "Stop," "No," or "repeatedly refused." (*Id.* ¶¶ 55, 64, 69.) In each such instance, the Complaint also alleges that Wey promptly abided by Plaintiff's wishes and stopped or left Plaintiff's presence entirely. (*Id.*)

The Complaint also contains allegations that suggest Plaintiff was ultimately terminated for reasons that had nothing to do with her personal relationship with Wey. Plaintiff acknowledges that, four months into her employment as an intern, she refused to respond to her boss's repeated efforts to get in touch with her because she was at a party with friends. (*Id.* ¶ 73.) NYGG's general counsel and Plaintiff's immediate supervisor observed that getting Plaintiff to a point where she could comfortably present NYGG's financial services and products was "possibly unattainable" and informed Plaintiff that, despite her best efforts, Plaintiff did not have the experience and skills necessary to meet Defendants' expectations. (*Id.* ¶¶ 76, 85.) Finally, Defendants expressed concern that Plaintiff was engaging in irresponsible and embarrassing behavior by drinking alcohol in excess and possibly obtaining illegal drugs through her close relationship with night club promoter James Chauvet. (*Id.* ¶¶ 97, 106, 109, 111.) Defendants' alleged commentary on photos of Plaintiff and James Chauvet published on Instagram, Plaintiff's association with Chauvet, and his criminal convictions and prison

sentences for cocaine possession and the possession of an illegal firearm, form the basis for Plaintiff's defamation and breach of contract claims. (*Id.* ¶¶140-41, 144, 213, 218, 222.)

According to the Complaint, Plaintiff's internship was terminated on April 22, 2014, less than seven months after it began. (*Id.* ¶ 89.) Following Plaintiff's termination, Wey informed Plaintiff's family and NYGG's clients that Plaintiff was terminated due to excessive partying and drinking, dishonest conduct, and insufficient seriousness about her work. (Compl. ¶¶ 97-105.) Nonetheless, Plaintiff acknowledges that Defendants attempted to find Plaintiff new employment as a product manager for Defendants' contract web designer, Lugh Studio. (*Id.* ¶ 107.)

In short, even if the allegations in the Complaint are true (which they are not), they indicate that Plaintiff was not a victim but an opportunist. She saw an opportunity to move to New York, and she took it. She saw an opportunity to work on Wall Street, and she took it. She alternately rejected and accepted Wey's alleged advances as it suited her. When invited to share a room in Boston and Dubai, the Complaint fails to allege that Plaintiff objected. Through her relationship with Defendants, she traveled to Dubai, China, Europe, and within the United States, lived in an apartment guaranteed by Defendant Wey in downtown Manhattan, received various incidental benefits and, despite working for less than seven months, requested a "raise" and a "cash bonus." The allegations are consistent with a relationship that was consensual, voluntary, and entirely legal.

## APPLICABLE STANDARD

To survive a motion to dismiss for failure to state a claim, "a complaint must include sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 500 U.S. 544, 570 (2007)). It is not proper "to assume that the [plaintiff] can prove facts that it has not alleged" on

a motion to dismiss. *George Haug v. Rolls Royce Motor Cars*, 148 F.3d 136, 139 (2d Cir. 1998).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief require

more than labels and conclusions, and, a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).

In addition, "[a] case is properly dismissed for lack of subject matter jurisdiction under

Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000).

## ARGUMENT

## I.    THE NEW YORK STATE AND CITY HUMAN RIGHTS LAW CLAIMS AGAINST FNL SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

In the first eight counts of the Complaint, Plaintiff purports to state employment law

claims against FNL under the New York State Human Rights Law ("NYSHRL") and New York

City Human Rights Law ("NYCHRL").  These claims against FNL necessarily fail because it

was not Plaintiff's "employer" within the meaning of these statutes, and therefore does not fall

within any of these statutes' prohibitions.  *See* N.Y. Exec. Law § 296, *et seq*.; New York City

Human Rights Law § 8-101, *et seq*.  Plaintiff asserts that her actual employer was NYGG, but

then conclusorily alleges that NYGG and FNL can be considered a "single or joint enterprise"

due to their purported corporate affiliation.  (Compl. ¶¶ 7-8).  However, none of the required

criteria to support such a claim is alleged.  In determining whether an entity is an "employer"

under the NYSHRL and NYCHRL, courts consider the following factors: (1) whether the

proposed employer had the power of the selection and engagement of the employee; (2) whether

the proposed employer made the payment of salary or wages to the employee; (3) whether the

proposed employer had the power of dismissal over the employee; and (4) whether the proposed

employer had the power to control the employee's conduct. *Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 470 (S.D.N.Y. 1996); *see also White v. Pacifica Found.*, 973 F. Supp. 2d 363, 375 (S.D.N.Y. 2013) (same).  Because Plaintiff fails to allege a single one of these factors as to FNL, dismissal of the employment claims against FNL is appropriate.  *See Robins,* 923 F. Supp. 460 at 470-71 (granting motion to dismiss NYSHRL and NYCHRL claims where plaintiff failed to allege factors indicating employer status); *see also Solieri v. Ferrovie Dello Stato Spa*, 1998 WL 419013, at *1 (S.D.N.Y. July 23, 1998) (same).

The most important factor in determining whether someone is an employer under the NYSHRL and NYCHRL is whether the purported employer "exercised control over the employee's conduct and the incidents of her employment."  *Monastra v. NYNEX Corp.*, 2000 WL 1290596, *7 (S.D.N.Y. Sept. 12, 2000) ("Of these factors, whether the purported employer exercised control over the employee's conduct and the incidents of her employment, is the crucial inquiry").  As the Complaint is devoid of any allegation that FNL exercised control over the conditions of Plaintiff's employment or over NYGG's employment policies, the NYSHRL and NYCHRL claims against FNL cannot withstand a motion to dismiss.  *See Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998) (dismissing NYSHRL claims against corporate defendant in absence of allegation that it "exercised control over plaintiff's working conditions" or over the "employment policies and practices" of plaintiff's actual employer).

Plaintiff's only specific allegations regarding FNL are that it shared management, ownership, and office space with NYGG,[2] and that Plaintiff was sometimes assigned to work on FNL's business development.  (See Compl. ¶¶ 7-8.)  These allegations are insufficient to support

---

[2] The Complaint also alleges, incorrectly, that FNL is a subsidiary of NYGG.  (*See* Compl. ¶ 5.) This allegation is false, but even taken as true for the purposes of this motion, it does not support a conclusion that FNL was Plaintiff's employer.  *See Tsegaye v. Impol Aluminum Corp.*, 2003 WL 221743, at *10 (S.D.N.Y. Jan. 30, 2003) (parent-subsidiary relationship held insufficient to establish "employer" status under NYSHRL).

a claim that FNL was Plaintiff's employer.  Courts have held that corporate affiliation and

overlapping corporate management are insufficient to make a company an employer.  *See, e.g.*,

*Robins*, 923 F. Supp. at 470 (finding overlapping corporate management irrelevant to

determination of employer status under NYSHRL); *see also Tsegaye v. Impol Aluminum Corp.*,

2003 WL 221743, at *10 (S.D.N.Y. Jan. 30, 2003) (subsidiary not employer of parent's

employee where it "had no power to select [plaintiff] for employment, did not pay her salary, did

not have the power to dismiss her, and had no control over her conduct."); *Eaton v. Goodstein*

*Mgmt., Inc.*, 1999 WL 1037868, at *8 (S.D.N.Y. Nov. 15, 1999) (fact that corporate defendant

"controlled the board" and "owned a very large share" of employer did not make it a joint

employer).  Courts have also held that performing tasks for the benefit of an entity is insufficient

to create joint employer status for that entity.  *See Eaton*, 1999 WL 1037868, at *8 ("mere fact

that [plaintiff] performed tasks for the benefit of [defendants], without more, is insufficient to

support a finding of joint employer status").

     The crucial inquiry remains whether FNL, which runs a digital news magazine,

controlled Plaintiff's employment at NYGG, an international business consulting firm.  As the

Complaint does not (and could not plausibly) contain such an allegation, these claims against

FNL must be dismissed.

## II.   PLAINTIFF'S ASSAULT AND BATTERY CLAIMS AGAINST NYGG AND FNL SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

     Plaintiff's assault and battery claims against NYGG and FNL should be dismissed

because they are based on alleged acts by Wey that cannot be attributed to NYGG and FNL as a

matter of law.  Plaintiff alleges that Wey initiated unwanted and offensive physical contact with

her and that this contact gives rise to claims for assault (Count IX) and battery (Count X).  (*See*

Compl. ¶¶ 200, 204.)  This alleged contact includes "kissing, fondling, grabbing, pulling,

groping, molesting, and/or forcing sexual relations." (Compl. ¶ 204.)   Plaintiff also alleges in conclusory fashion, without any factual or logical support, that in committing these alleged intentional torts that Wey "acted within the course and scope of his duties" as a high ranking officer of NYGG and FNL, thus making them responsible for Wey's alleged misconduct under the theory of respondeat superior.  (Compl. ¶¶ 201, 205.)  As there is no conceivable reason why Wey's alleged improper sexual contact would have been within the scope of his duties for NYGG or FNL, the assault and battery claims should be dismissed.

To state a claim for respondeat superior, a plaintiff must plead facts showing "that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and thus was in furtherance of the employer's interests."  *Doe v. Alsaud*, No. 13 CIV. 571, 2014 WL 1345324, *1 (S.D.N.Y. Apr. 3, 2014).  On a motion to dismiss, if the court "concludes that the conduct complained of cannot be considered as a matter of law within the scope of employment, then the court must dismiss the complaint for failure to state a claim." *Haybeck v. Prodigy Servs. Co*., 944 F. Supp. 326, 329 (S.D.N.Y. 1996) (granting motion to dismiss because employee's alleged sexual misconduct was not within the scope of his employment).  An employer cannot be held liable under the doctrine of respondeat superior "for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business." *Tomka v. Seiler Corp*., 66 F.3d 1295, 1317 (2d Cir. 1995).

"Because tortious sexual activity generally is entirely divorced from the nature of an employment position, New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Adorno v. Corr. Servs. Corp*., 312 F. Supp. 2d 505, 517 (S.D.N.Y. 2004) (quoting *Ross v. Mitsui Fudosan, Inc*., 2 F. Supp. 2d 522,

531 (S.D.N.Y. 1998)); *see also Tomka,* 66 F.3d 1295 at 1317 (dismissing respondeat superior claim against employer because employee's alleged sexual assault fell outside the scope of his employment as a matter of law); *Alsaud*, 2014 WL 1345324 (same).

Indeed, the relief that Plaintiff is seeking on these claims against NYGG and FNL is literally unprecedented.  A recent decision by this Court (in another case brought by Plaintiff's counsel) found that "[n]o decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault." *Id.* at* 3.  There is no reason why this case should be the first.  NYGG is an international business consulting firm; FNL runs a digital news magazine.  There is no plausible argument that Wey's alleged improper physical contact with Plaintiff was in furtherance of NYGG's or FNL's business interests.  *See Adorno*, 312 F. Supp. 2d 505 at 517 (dismissing respondeat superior theory on assault charge because employee's duties "in no way mandated any kind of physical contact, let alone sexually oriented physical contact.").  As the Complaint does not and cannot plausibly allege the requisite connection between NYGG's and FNL's business interests and Wey's alleged intentional torts, the assault and battery claims against NYGG and FNL should be dismissed.

## III.   PLAINTIFF'S DEFAMATION CLAIM AGAINST NYGG SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

As with Plaintiff's assault and battery claims, Plaintiff's defamation claim against NYGG (Count XII) should be dismissed because it is based on alleged acts by Wey that cannot be attributed to it as a matter of law.  Plaintiff's defamation claims are based on statements allegedly made by Wey regarding her character and conduct to "NYGG's business contacts, to the CEO/Publisher of Manpower Sweden, Inc., to the U.S. State Department, to Plaintiff's former employers and to Plaintiff's family and friends, as well as to the public at large." (Compl. ¶ 214; *see also id.* ¶¶ 96-98; 102-03; 105-06; 109-11; 114; 123-26; 129-33; 137-41).

Plaintiff alleges in conclusory fashion that these alleged statements can be attributed to NYGG, an international business consulting firm.  As there is no indication that Wey's alleged statements were made within the scope of his duties for NYGG, the defamation claims against it should be dismissed.

As with other intentional torts, a defamation claim cannot be stated against the speaker's employer unless the speaker was acting within the scope of his employment in making the defamatory statements.  *See Garrison v. Toshiba Bus. Solutions (USA). Inc.,* 907 F. Supp. 2d 301, 307 (E.D.N.Y. 2012) ("An employer is liable for the defamatory conduct of an employee under a respondeat superior theory only if the employee, in committing the act complained of, was acting within the scope of his employment."); *Tischmann v. ITT/Sheraton Corp*., 882 F. Supp. 1358, 1371 (S.D.N.Y. 1995) (denying defamation claim against employer because statement by employee "was not made within the scope of her employment.").  The mere fact that the speaker is a high-ranking officer of a corporation does not mean that his defamatory statements are imputed to the corporation.  *See, e.g*., *Mackay v. Real Cars, Inc*., 215 A.D.2d 538, 538 (2d Dep't 1995) (corporate president's defamatory article could not be imputed to corporation in absence of showing that he "wrote the article on behalf of [defendant] or in his capacity as president of [defendant]"); *Ogust v. Inst. For Pub. Serv*., 216 A.D. 118, 120 (1st Dep't 1926) (defamatory letter written by corporate director could not be imputed to corporation where director had signed in his individual capacity and there was no indication that it was written "within the scope of his duty and powers as director to write such a letter, or that it was other than his individual view to which he was giving expression.").  Here, because the only defamatory statements alleged are personal comments made by Wey with no apparent connection to his position at NYGG, the defamation claim against NYGG must be dismissed.

11

**IV.     PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
         CLAIM SHOULD BE DISMISSED AGAINST ALL DEFENDANTS FOR
         FAILURE TO STATE A CLAIM**

Plaintiff's intentional infliction of emotional distress claim (Count XI) should be
dismissed against all defendants because it is duplicative of her other tort claims.  The claims
against NYGG and FNL should also be dismissed for the additional reason that they are based on
alleged acts by Wey that cannot be attributed to NYGG or FNL as a matter of law.

The elements of intentional infliction of emotional distress are (1) extreme and
outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of
causing, severe emotional distress; (3) a causal connection between the conduct and the injury;
and (4) severe emotional distress.  *Biberaj v. Pritchard Indus., Inc.,* 859 F. Supp. 2d 549, 564
(S.D.N.Y. 2012).  In order to satisfy the first element, the alleged conduct must be "so
outrageous in character, and so extreme in degree, as to go beyond all possible bounds of
decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."
*Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 596 (1993).  This standard is a rigorous one
and is rarely met, especially in the employment context.  *Medcalf v. Walsh*, 938 F. Supp. 2d 478,
488 (S.D.N.Y. 2013) ("the element of outrageous conduct is rigorous, and difficult to satisfy")
(quotation omitted); *Mariani v. Consol. Edison Co. of New York,* 982 F. Supp. 267, 275
(S.D.N.Y. 1997) (noting that "the New York Court of Appeals and three of the four departments
of the Appellate Division have never sustained a claim of intentional infliction of emotional
distress in an employment case").

Since "intentional infliction of emotional distress is a theory of recovery that is to be
invoked only as a last resort" any such a claim is therefore "precluded where the offending
conduct is embraced by a traditional tort remedy."  *E.E.O.C. v. Die Fliedermaus*, 77 F. Supp. 2d
460, 472-73 (S.D.N.Y. 1999).  Where the plaintiff has stated other tort claims that arise from the

same alleged outrageous conduct, a claim for intentional infliction of emotional distress must be dismissed as duplicative.  *See Dorn v. Maffei*, 386 F. Supp. 2d 479, 486 n.5 (S.D.N.Y. 2005) ("a substantial body of case law suggests that claims for intentional (and presumably also negligent) infliction of emotional distress must be dismissed where, as here, the conduct for the underlying claim may be redressed by way of traditional tort remedies such as battery"); *see also Bouche v. City of Mount Vernon,* 11 CIV. 5246 SAS, 2012 WL 987592, *9 (S.D.N.Y. Mar. 23, 2012) (granting motion to dismiss plaintiff's claim for intentional infliction of emotional distress because it was "clearly encompassed in his other claims"); *Thomas v. Cnty. of Putnam*, 262 F. Supp. 2d 241, 251 (S.D.N.Y. 2003) (dismissing claim for intentional infliction of emotional distress because "no intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability."); *Die Fliedermaus*, 77 F. Supp. 2d 460 at 472-73 (dismissing claim for intentional infliction of emotional distress because the alleged outrageous conduct overlapped with defamation claim).

Here, to the extent that Plaintiff has alleged any conduct that even arguably meets the requisite standard of outrageousness to support a claim for intentional infliction of emotional distress, that same conduct is adequately addressed by her other tort claims.  Plaintiff alleges that Wey intentionally inflicted emotional distress in that he "molested, assaulted, battered, harassed, humiliated, degraded, disparaged, defamed, and retaliated against" her.  (*See* Compl. ¶ 209.) These alleged acts are all explicitly addressed by Plaintiff's sexual harassment, retaliation, defamation, assault, and battery claims. For this reason, the intentional infliction of emotional distress claims should be dismissed.

In addition, Plaintiff's intentional infliction of emotional distress claims against NYGG and FNL should be dismissed for the independent reason that they are based on alleged acts by

Wey that cannot be attributed to them as a matter of law.  As with Plaintiff's other intentional

tort claims, she has alleged that NYGG and FNL can be held liable for Wey's alleged conduct

under the theory of respondeat superior.  (*See* Compl. ¶ 210.)  Again, there is no conceivable

reason why Wey's alleged intentional torts would have been within the scope of his duties for

NYGG or FNL, and thus the intentional infliction of emotional distress claim should be

dismissed.  *See, e.g., Adorno*, 312 F. Supp. 2d 505 at 517 (employers are generally not liable

under respondeat superior for sexual misconduct as a matter of law); *Golodner v. Quessant Inc.*,

No. 05 CIV. 7895 (RLE), 2007 WL 2844944, at *5 (S.D.N.Y. Sept. 27, 2007) (dismissing claim

for intentional infliction of emotional distress against employer because employee's sexual

assault was not "in furtherance of [defendant's] business or within the context of his

employment.").

## V.   PLAINTIFF'S REQUEST FOR EQUITABLE AND INJUNCTIVE RELIEF SHOULD BE DISMISSED

While no longer labeled a separate cause of action as it was in Plaintiff's previous

pleading, the Complaint still seeks unwarranted, unlawful, and exceedingly broad equitable relief

in connection with her retaliation claim, in the form of an injunction ordering Defendants to:

- "cease their campaign of harassment and intimidation against Plaintiff"

- "cease their defamatory postings, messages, emails, blogs and articles regarding Plaintiff"

- "cease using Plaintiff's name without her permission to create a domain and blog"

- "retract and remove from the internet the defamatory articles concerning Plaintiff"

- "cease and desist from further retaliating against her for complaining about" Wey's alleged sexual harassment; and

- "institute, at Defendants' own cost, measures to restore Plaintiff's good reputation"

14

(Compl. ¶¶ 195-97.)  The requested injunctive relief would constitute an unlawful prior restraint on Wey's right of free speech in violation of the First Amendment.  In addition, the Complaint does not support an application for injunctive relief, as neither absence of an adequate remedy at law nor irreparable harm is adequately pled.  For these reasons, Plaintiff's application for injunctive relief must be dismissed.

### A.     The Injunctive Relief Sought Would Violate the First Amendment

The injunctive relief that Plaintiff is seeking is the suppression of the same type of speech that is the subject of her defamation claim.  While Plaintiff also seeks to enjoin further "harassment," "intimidation," and "retaliation," this all falls under the rubric of speech, as the only instances alleged of such behavior are Wey's alleged defamatory statements.  Because the injunction sought would impermissibly infringe on Wey's right of free speech, Plaintiff's equitable claims should be dismissed as a matter of law.

Federal courts are extremely reluctant to grant permanent injunctive relief when speech is at issue.  "[P]ermanent injunctions . . . are classic examples of prior restraints." *Alexander v. United States,* 509 U.S. 544, 550 (1993).  "Any prior restraint on expression comes to this Court with a heavy presumption against its constitutional validity."  *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) (citations omitted).  Indeed, prior restraints are "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

A prior restraint will not be issued even if the speech at issue is defamatory.  "The usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages."  *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 531 (S.D.N.Y. 2013) (citing *Cmty. for Creative Non–Violence v. Pierce*, 814 F.2d 663, 672 (D.C.Cir.1987)).  "Indeed, for almost a century the Second Circuit has subscribed to the majority view that, absent

extraordinary circumstances, injunctions should not ordinarily issue in defamation cases." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001) (citing cases).  The rationale for this rule "rests in large part on the principle that injunctions are limited to rights that are without an adequate remedy at law, and because ordinarily libels may be remedied by damages."  *Id.* (citing *Am. Malting Co. v. Keitel*, 209 F. 351, 354 (2d Cir. 1913).

    In accordance with this principle, courts within the Second Circuit have consistently vacated or declined to impose injunctions restraining speech alleged to be defamatory.  *See, e.g., Metropolitan Opera Ass'n,* 239 F.3d at 176 (vacating injunction that prohibited labor union from making "fraudulent or defamatory" statements regarding the MET); *Kessler v. Gen. Servs. Admin.,* 341 F.2d 275 (2d Cir. 1964) (holding that former government employee was not entitled to injunctive relief against alleged libelous statements or interference with the performance of her work); *Stop the Olympic Prison v. United States Olympic Comm.,* 489 F. Supp. 1112, 1124–25 (S.D.N.Y. 1980) (declining to issue injunction against distribution of allegedly defamatory poster); *Konigsberg v. Time, Inc.*, 288 F. Supp. 989 (S.D.N.Y. 1968) (declining to enjoin the publication of a potentially libelous article and ruling, "To enjoin any publication, no matter how libelous, would be repugnant to the First Amendment to the Constitution."); *see also Bihari v. Gross,* 119 F. Supp. 2d 309, 325 (S.D.N.Y. 2000) (refusing to enjoin allegedly defamatory statements posted online by disgruntled customer).

    In *Org. for a Better Austin v. Keefe*, the Supreme Court vacated an injunction against an organization issuing pamphlets critical of a real estate broker for "only sell[ing] to Negroes." 402 U.S. 415, 416-17 (1971).  The Court ruled that courts cannot "concern themselves with the truth or validity of the publication" and, as long as the means are peaceful, a communication

16

"need not meet standards of acceptability." *Id.* at 418-19.  The fact that the expressions were intended to have a coercive effect on the broker also did not "remove them from the reach of the First Amendment." *Id.* at 419.  The Court held that "the interest of an individual in being free from public criticism" did not warrant "an impermissible restraint on First Amendment rights." *Id.* at 418, 419.

As the injunction sought by Plaintiff cannot be granted without violating the First Amendment, this request for relief should be dismissed for failure to state a claim upon which relief can be granted.  *See, e.g., Lan Sang*, 951 F. Supp. 2d 504 at 531 (granting motion to dismiss application for permanent injunction prohibiting defamatory speech).

### B.      The Complaint Fails to Allege Absence of an Appropriate Legal Remedy or Irreparable Harm Sufficient to Support Claim for Injunctive Relief

An injunction is an "extraordinary remedy" only to be awarded if the required elements are met.  *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008).  A permanent injunction is appropriate only if the plaintiff shows "the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1362 (2d Cir.1989).  Where, as here, none of the requirements for an injunction is met in the pleadings, an application for injunctive relief should be dismissed on a 12(b)(6) motion.  *See, e.g., Donnelley*, 893 F. Supp. 285 at 293 (dismissing request for injunctive relief on motion to dismiss for failure to state a claim because the pleadings "fail to supply a legal basis for seeking an injunction.").

Apart from a formalistic recitation of the phrase, the Complaint does not allege the absence of an adequate remedy at law.  (*See* Compl. ¶ 195.)  The injunctive relief that Plaintiff is seeking is the suppression of the same type of speech that is the subject of her defamation claim. Whatever injury Plaintiff can prove stemming from Wey's alleged past defamatory statements is

compensable in money damages, and only in money damages.  *See Lan Sang,* 951 F. Supp. 2d

504 at 531 (S.D.N.Y. 2013) ("the only remedy for defamation is an action for damages")

(quotation omitted).  To the extent that Plaintiff is seeking a prior restraint of future statements

that Wey may hypothetically make, the injunction cannot be granted on First Amendment

grounds (as discussed in greater detail above).  Accordingly, Plaintiff has an adequate remedy at

law for any permissible speech-related claim she may have and no injunction is warranted.

      The Complaint also fails to establish the likelihood of irreparable harm.  Irreparable harm

is an "injury for which a monetary award cannot be adequate compensation." *Jayaraj v.*

*Scappini,* 66 F.3d 36, 39 (2d Cir.1995).  To obtain the prospective relief of a permanent

injunction, a plaintiff must show "a sufficient likelihood that he or she will again be wronged in a

similar way." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012).  A plaintiff must

demonstrate a "certainly impending" future injury, and in so doing, "cannot rely solely on past

injuries; rather, the plaintiff must establish how he or she will be injured prospectively." *Id.*

(citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); *see also Socialist Workers Party v.*

*Attorney Gen. of U.S.*, 642 F. Supp. 1357, 1425 (S.D.N.Y. 1986) ("To obtain injunctive relief

based on past injury the plaintiff must show a real and immediate threat that the injury will be

continued or repeated.  Judicial intervention to prevent injury from misconduct is not justified

when such misconduct is merely hypothetical.") (citations omitted).  Here, there are no concrete

allegations of impending irreparable harm in the Complaint.  All of Plaintiffs' alleged injuries

are compensable in monetary damages.  Nor is there any impending future harm alleged that

would justify equitable intervention by this Court.  Thus the absence of irreparable harm is

another reason that injunctive relief must be denied.

**VI.    PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED
        FOR LACK OF SUPPLEMENTAL JURISDICTION**

Plaintiff is improperly attempting to force a separate state law claim, which is the subject of a pending action in state court, into this action.   Plaintiff's new breach of contract claim, based on a stipulation (the "Stipulation") entered into by the parties after the initiation of this case, should be dismissed because the Court lacks supplemental jurisdiction over it under 28 U.S.C. § 1337.  The Stipulation was entered into on August 28, 2014, several months after this action was initiated, and required the parties to remove and to refrain from adding certain internet postings regarding this case.  (*See* Compl., Ex. A.)  Defendants' alleged breach of the Stipulation, by posting new internet articles, falls outside of this Court's supplemental jurisdiction because it does not arise from a "common nucleus of operative fact" as the original claims.  *See Achtman v. Kirby, McInerney & Squire*, LLP, 464 F.3d 328, 335 (2d Cir. 2006) ("disputes are part of the same case or controversy within § 1367 when they derive from a common nucleus of operative fact.") (internal citation omitted).  Plaintiff's supplemental breach of contract claim is separate and distinct from her original claims in that it 1) involves a new contract not at issue in the original claims; 2) arises from facts post-dating the initiation of this litigation; 3) does not relate to the period of her employment at NYGG; and 4) does not relate directly to her core sexual harassment claims.  Accordingly, it does not stem from a common nucleus of operative fact and should be dismissed.

"A common background or origin is not a sufficient basis, without more, for the Court to consider claims part of a common nucleus of operative fact."  *Roman Y Gordillo, S.C. v. Bank of N.Y. Mellon Corp*., 2014 WL 3507300, at *9 (S.D.N.Y. July 14, 2014).  Indeed, this Court has specifically found that cases such as this one, which derive from a common background but require the interpretation of a new contract, are insufficiently related to justify supplemental

jurisdiction.  *See, e.g., id.* (finding no common nucleus of operative fact where supplemental claim derived from settlement agreement designed to resolve original claims); *Atlantic Cas. Ins. Co. v. Value Waterproofing, Inc*., 2012 WL 1203955, at *1 (S.D.N.Y. Apr. 11, 2012) (finding no common nucleus of operative fact even though the "disputes were precipitated by common events" because "the operative facts in each dispute are different and boil down to an analysis of the terms of distinct" contracts).  Furthermore, the case for supplemental jurisdiction is weakened when the claims are not "so tightly interwoven that the federal claims cannot be resolved unless the federal court also addresses the nonfederal claims."  *Atlantic Cas. Ins.,* 2012 WL 1203955, at *1 (citing *Cam–Ful Indust. v. Fidelity and Deposit Co. of Maryla*nd, 922 F.2d 156, 160 (2d Cir.1991).  In this case, the original sexual harassment and related claims can clearly be resolved without addressing the Stipulation entered into after the original claims were first pled.

In the absence of supplemental jurisdiction, the breach of contract claim should be dismissed, because there is no independent basis for subject matter jurisdiction.  The breach of contract claim is neither premised on federal law nor does it meet the $75,000 amount in controversy requirement for diversity jurisdiction.  *See* 28 U.S.C. § 1332(a)(2).  While the Complaint alleges in conclusory fashion that Plaintiff is entitled to $120,000 in liquidated damages for twelve undescribed violations of the Stipulation (at $10,000 per violation), this vague allegation is contradicted by the record before this Court and is insufficient to satisfy Plaintiff's burden to establish a "reasonable probability" that the amount in controversy is met. *See Mehlenbacher v. Akzo Nobel Salt*, Inc., 216 F.3d 291, 296 (2d Cir.2000) (party asserting diversity jurisdiction "has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount").  "Where, as here, jurisdictional

facts are challenged, the party asserting jurisdiction must support those facts with competent proof and justify its allegations by a preponderance of evidence." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994) (internal quotations omitted); *Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 438 (S.D.N.Y. 2006) (same).

In determining whether the party asserting jurisdiction has met its burden, "federal courts may look outside [the] pleadings to other evidence in the record." *United Food*, 30 F.3d 298 at 305. In a series of recent letters to this Court designed to apprise it of Defendants' alleged breaches of the Stipulation, Plaintiff identified only *four* articles from Defendants that allegedly breach the Stipulation and therefore claimed only $40,000 in liquidated damages. (*See* 09/30/14 Martha McBrayer Letter (Dkt. No. 32); 10/01/14 Martha McBrayer Letter (Dkt. No. 33)). The disparity between the damages claimed in Plaintiff's letters and the damages conclusorily alleged in the Complaint leads to the conclusion that the number in the Complaint has been artificially inflated for jurisdictional purposes. Accordingly, Plaintiff has not met her burden to show a reasonable probability that the amount in controversy requirement is independently met on her breach of contract claim.

Furthermore, the interests of comity and judicial economy will be well served by this Court declining supplemental jurisdiction over the breach of contract claim, because a state court proceeding relating to this claim is already pending. Prior to the filing of the latest Complaint, Wey initiated a state court action, *Wey v. Bouveng*, Index. No. 159673/2014, Sup. Ct. N.Y. Cnty, seeking a determination that the Stipulation was fraudulently induced and breached by Plaintiff. Accordingly, declining federal jurisdiction will avoid the risk of inconsistent judgments, duplicative litigation, and unnecessary conflict between the state and federal court systems. *See,*

*e.g., Chenensky v. New York Life Ins. Co*., 942 F. Supp. 2d 388, 395 (S.D.N.Y. 2013) (declining

supplemental jurisdiction over state law claims on comity grounds).

## VII.   PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED AGAINST FNL FOR FAILURE TO STATE A CLAIM

Regardless of whether the breach of contract claim is permitted in this action, it should be

dismissed as to FNL, because FNL was not a signatory to the Stipulation (s*ee* Compl., Ex. A)

and no basis for liability against a non-party to the contract has been pled.  *See Gameologist*

*Grp., LLC v. Scientific Games Int'l, Inc*., 838 F. Supp. 2d 141, 166 (S.D.N.Y. 2011)  (to maintain

a breach of contract claim, "a plaintiff must allege that the defendant was a party to the contract

at issue.").

## <u>CONCLUSION</u>

Defendants respectfully request that the Court issue an order dismissing the following

parts of the Complaint, and grant any other relief that the Court deems just and proper:

(a)  all claims under the NYSHRL and NYCHRL (Counts I-VIII)  against FNL;

(b)  the assault (Count IX), battery (Count X), and intentional infliction of emotional

distress claims (Count XI) against NYGG and FNL;

(c)  the defamation claim (Count XII) against NYGG;

(d)  the intentional infliction of emotional distress claims (Count XI) against all

Defendants;

(e)  the breach of contract claim (Count XIII) against all Defendants;

(f)  the request for injunctive relief against all Defendants.

Dated: New York, New York
　　　　November 12, 2014

SHER TREMONTE LLP

By: /s/ Justin M. Sher
　　　Justin M. Sher
　　　Mark Cuccaro
80 Broad Street, Suite 1301
New York, New York 10004
Tel: 212.202.2600
Email: jsher@shertremonte.com

*Attorneys for Defendants*
*NYG Capital LLC, FNL Media LLC,*
*and Benjamin Wey*