UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

HANNA BOUVENG,   Docket No: 14 Civ. 5474 (PGG)

Plaintiff,

- against -

NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP, NYG CAPITAL LLC, and BENJAMIN WEY,

Defendants.
------------------------------------------------------------------X

## PLAINTIFF HANNA BOUVENG'S
## TRIAL MEMORANDUM OF LAW

Dated:   New York, New York
         May 18, 2015

MORELLI ALTERS RATNER LLP
777 Third Avenue, 31st Floor
New York, New York   10017
(212) 751-9800
*Attorneys for Plaintiff Hanna Bouveng*

## INTRODUCTION

From October 1, 2013 until her retaliatory termination on April 22, 2014, Hanna Bouveng, a 24-year-old Swedish citizen, was employed on Wall Street as Director of Corporate Communications by Defendants Benjamin Wey, New York Global Group ("NYGG") and FNL Media. Wey, then 43-years-old, married, and the highest-ranking supervisor at NYGG (as its CEO) and FNL Media (as its Publisher), subjected Ms. Bouveng to ongoing sexual harassment throughout her employment. This sexual harassment culminated in Mr. Wey's coerced sexual relations with Ms. Bouveng.

When Ms. Bouveng refused to further succumb to Wey's unwanted sexual advances, she was subjected to retaliation, including the April 22, 2014 termination of her employment, immediate eviction from her corporate apartment, and the subsequent revocation of her J1-Visa.

Defendants' ongoing retaliation against Ms. Bouveng since her firing includes Mr. Wey's stalking of Ms. Bouveng in Sweden, his threats against and harassment of Ms. Bouveng and her family, friends, lawyers and other prospective witnesses and participants in this civil action, and Defendants' ongoing retaliatory blackballing and defamation of Ms. Bouveng via Defendants' on-line publication, TheBlot Magazine.

Mr. Wey has repeatedly testified that not only did he not have *any* sexual relations with Ms. Bouveng, he didn't even find her attractive. Moreover, Wey has an excuse for his retaliatory harassment of Ms. Bouveng after her termination, including the retaliation that has been ongoing since he was first contacted by her lawyers on April 29, 2104, namely: that he, rather than Ms. Bouveng, is the victim here. Under this theory, all of Defendants' retaliation and harassment is warranted because Ms. Bouveng, through her lawyers, had the audacity to confront Mr. Wey

concerning the wrongfulness of his behavior. Suffice to say, Mr. Wey's purported victimhood is a decision best left for the jury.

Plaintiff has addressed most of the legal issues that might arise in this case in prior memoranda to the court, including her Opposition to Defendants' Motion to Dismiss and her correspondence and briefs in support of her requests for injunctive relief and sanctions. However, Defendants raised certain concerns in their Trial Brief that were not previously addressed by the parties. Plaintiff will address those here.

## Retaliation

Defendants contend that neither the initial letter of representation sent by Plaintiff's counsel on April 29, 2014 nor the Complaint subsequently filed by Plaintiff's counsel on July 22, 2014 constitute "protected activity" for purposes of Ms. Bouveng's retaliation claim since the same were detailed rather than specious.

To the contrary, it is well established that a letter of representation from Plaintiff's counsel constitutes protected activity. Adams v. Canon USA, Inc., No. CIVA 07-3512, 2009 WL 3064856 at 17 (EDNY Sept. 22, 2009) (*post-termination representation letter by plaintiff's counsel describing complaints of gender discrimination and making specific demands constitutes protected activity*); Delville v. Firmenich Inc., 920 FSupp2d 446, 464 (SDNY 2013) (*letter of representation by plaintiff's counsel informing former employer of alleged discrimination constitutes protected activity*); Lamberson v. Six West Retail Acquisition Inc., 122 FSupp2d 502, 511 (SDNY2000) ("*protected oppositional activities include informal as well as formal complaints and complaints to management.*") See also Cook v. CBS, Inc., 47 F.App'x 594, 597 (2d Cir. 2002) (*letter of representation from plaintiff's attorney to former employer may constitute protected activity, but it was not causally connected to the alleged adverse actions.*)

Indeed, Defendants proffer no legal argument to the contrary.

Mr. Wey has retaliated ever since Plaintiff's counsel wrote him on April 29, 2014. Contrary to Defendants' assertions, Plaintiff's filing of a detailed Complaint some three months later does not vitiate the same nor does it somehow excuse Defendants' misconduct. Defendants reliance upon Marchuk v. Faruqi & Faruqi, LLP, 2015 WL 363625 (SDNY 2015) is misplaced. Marchuk held that an employer's filing of *counterclaims* for defamation and tortious interference and issuance of a press release concerning the same *more than one year after plaintiff's resignation* is not an "adverse employment action" for the purpose of a retaliation claim, especially where there was a rational basis for those counterclaims.1 Marchuk, supra, 2015 WL 363625 at 5. Defendants' misconduct is readily distinguishable here.

### Defamation

First, while Defendants contend Plaintiff's Complaint is too detailed regarding Wey's *quid pro quo* sexual harassment, they argue conversely that the Complaint is not detailed enough when it comes to Defendants' defamation.

This is so despite the fact that Plaintiff's Second Amended Complaint reprints many of Defendants' defamatory emails, messages and postings2, and further articulates the author, date, forum, intended audience and defamatory nature of those postings, namely, that Defendants have falsely labeled Ms. Bouveng as: an unchaste woman (e.g, a prostitute, streetwalker, massage parlor worker who trades sex for drugs and money); and carrier of a loathsome disease (e.g., AIDS, an STD); engaged in criminal activity

---

1 In Marchuk, plaintiff, a lawyer, deliberately sent copies of her Title VII complaint to her former employer's clients, as well as to her harasser's spouse. Marchuk, supra, 2015 WL 363625 at 5. In the instant action, Plaintiff's counsel initially sent letters of representation and subsequent correspondence to Mr. Wey and Defendants' General Counsel *and no one else*: after their appearance, Plaintiff's counsel communicated exclusively with Wey's lawyers. Plaintiff named Wey's wife in the Complaint because she is a witness with knowledge in this action: she is listed as an officer in NYGG's website; she admittedly performed work – including bookkeeping, benefits and human resources-related tasks –for NYGG and FNL; and she accompanied Wey and Ms. Bouveng on an international business trip. Any publicizing of the Complaint by reporters was occasioned by the fact that the Complaint is a public pleading, not to mention Mr. Wey's own antics.

2 Moreover, Plaintiff identified more of Defendants' defamation in her subsequent requests for protective relief.

(e.g., a drug trafficker, blackmailer, extortionist, fugitive from the United States); who is unfit for her former profession (e.g., a Swedish party girl, alcoholic, drug addict.) These defamatory statements constitute defamation *per se*. Stern v. Cosby, 645 FSupp2d 258, 288 (SDNY 2009) (*citation omitted*.) *See, also* Torain v. Clear Channel Broad., Inc., 651 FSupp2d 125, 152 (SDNY 2009) (*statements about plaintiff's past sexual conduct, including undisputed use of the terms "slut" and "whore," can give rise to per se liability for defamation, thus obviating the need for the plaintiff to prove special damages*); Walia v. Vivek Purmasir & Associates, Inc., 160 FSupp2d 380, 394 (EDNY 2000) (*statements referring to plaintiff as a "whore" and "slut" constitute defamation per se as they impute unchastity to plaintiff*); Campanella v. Cnty. of Monroe, 853 F.Supp.2d 364, 371 (WDNY 2012) (*under New York law, words such as "blackmailer" and "aider and abettor" are per se defamatory if they "import criminal activity."*)

Moreover, under New York law, libel *per se* is not limited to the four categories of slander *per se* since certain written statements are "so clearly damaging that the law presumes that the plaintiff has suffered damages." Stern, supra, 645 FSupp2d at 289; Pub. Relations Soc. of Am., Inc. v. Rd. Runner High Speed Online, 799 NYS2d 847, 851 (Sup.Ct.NY.Co. 2005.) Accordingly, a written statement is libelous *per se* if it "tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace," or where it tends to "induce an evil opinion of [plaintiff] in the minds of right-thinking persons, and to deprive [plaintiff] of their friendly intercourse in society.") Id.; Roth v. United Fed'n of Teachers, 787 NYS2d 603, 608 (Sup.Ct.KingsCo. 2004.) A statement is libelous *per se* under New York law, even if it does not fall within one of the four categories of slander per se, if the statement is so severe that serious injury to the plaintiff's reputation can be presumed. *See* id. at 290.

Libel *per se* includes false allegations of alcoholism against a former employee, Sadowy v. Sony Corp. of Am., 496 FSupp 1071, 1078 (SDNY 1980) (*statements made during electronics trade show to another member of the profession concerning plaintiff, who had recently been fired, to the effect that

4

*plaintiff was an alcoholic, among other things, could constitute libel per se where intent to disparage is shown*); false allegations of illegal drug use, <u>D'Lima v. Cuba Mem'l Hosp., Inc.</u>, 833 FSupp2d 383, 390 (WDNY 2011) (*defendants' communication with third-parties regarding dentist's purported cocaine use alleges slander per se.*)

Defendants' request that Plaintiff continuously identify each and every defamatory statement made by Defendants is particularly onerous here not only because the defamation is ongoing and copious, but also because during the scope of discovery Defendants have failed to independently produce *any* articles from their publication TheBlot Magazine aside from copies of those already produced by Plaintiff. Defendants' request s also misguided.

Plaintiff is not required to make legal conclusions regarding the defamatory nature of Defendants' statements, nor separate out which parts of long statements are specifically defamatory, so long as she alleges that the statements taken as a whole are defamatory.  See <u>Condit v. Dunne</u>, 225 FRD 100, 111 (SDNY 2004) (*citations omitted*) (*plaintiff did not have to specifically identify defamatory statements contained in long transcript*); <u>Condit v. Dunne</u>, 317 FSupp2d 344, 368 (SDNY 2004.)  "Rather, the finder of fact will determine whether the statements, taken as a whole, and in context, constitute slander." <u>Condit</u>, <u>supra</u>, 225 FRD at 112 (*citation omitted.*)  See also, <u>Albin v. Cosmetics Plus N.Y., Ltd.</u>, No. 97 Civ. 2670, 1997 WL 615494 at 3 (SDNY Oct. 6, 1997) (*denying motion to dismiss defamation complaint even though plaintiff omitted the exact allegedly defamatory words*); <u>Biro v. Conde Nast</u>, 883 FSupp2d 441, 456 (SDNY 2012)(*FRCP 8 does not require the particularized pleadings of New York's CPLR for defamation claims.*)  So too at bar.

Second, Wey contends he can not be held liable for TheBlot Magazine's defamatory publications based upon his status as Publisher alone.  However, Wey has admitted contributing to the research and writing of many of the defamatory articles at issue.  Plaintiff also has circumstantial evidence that these

5

articles were written and published at Mr. Wey's specific direction. Moreover, it is uncontroverted that Wey is the author of similarly-worded defamatory emails and texts.

Third, Defendants contend they can not be held liable for their publication of defamatory "comments" purportedly written by third-parties in response to TheBlot's defamatory articles about Ms. Bouveng. However, Plaintiff has circumstantial evidence that those comments were actually written, edited and approved of by Mr. Wey.

Fourth, Defendant NYGG contends it can not be held responsible for FNL Media's defamatory publications. However, as previously argued, these entities are liable as joint employers owned and operated out of the same offices by the same individuals under Mr. Wey's direction.

Finally, Defendants contend they are immune from defamation because they were provoked. This argument is belied by the circumstances of this case and do not warrant a response.

## Breach of Contract

Defendants maintain they were fraudulently induced by Plaintiff's counsel to enter into the August 28, 2014 Agreement intended to stop Defendants' retaliatory and defamatory postings.

Defendants first asserted this claim via a Complaint filed in New York County Supreme Court. Plaintiff subsequently removed the Complaint to this Court. Defendants have yet to properly serve the Complaint. Defendants now wish to present their case as a counterclaim. Accordingly, Defendants have now named four individual lawyers as witnesses, witnesses who were never previously disclosed as witnesses in this case. This evidence is a sideshow, one that should not be tolerated by the Court.

## Jury Panel

Defendants wish to increase their odds of avoiding an unanimous jury verdict against them by increasing the number of jurors empaneled in this trial from six to eight. However, there is no legitimate

basis for doing so.   Plaintiff has already informed Defendants that they do not consent to this request.

Dated: New York, New York

    May 18, 2015           Respectfully submitted,

                              By: s/s *David S. Ratner*
                              David S. Ratner
                              **MORELLI ALTERS RATNER LLP**
                              Attorneys for Plaintiff
                              777 Third Avenue, 31st Floor
                              New York, New York 10017
                              Tel: (212) 751-9800
                              Fax: (212) 751-0046