UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HANNA BOUVENG,

                Plaintiff,

    v.

NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP, FNL MEDIA LLC, and BENJAMIN WEY,

                Defendants.

Case No. 14-CV-5474 (PGG)


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO REQUIRE PLAINTIFF TO IDENTIFY DEFAMATION STATEMENTS
AND RETALIATORY CONDUCT, OR FOR PARTIAL SUMMARY JUDGMENT**


DENTONS US LLP
Glenn Colton
Gary Meyerhoff
1221 Avenue of the Americas
New York, New York 10020
Tel.  (212) 768-6700

*Attorneys for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

I.    Plaintiff Should Be Required To Identify The Statements -- By Wording And Exhibit Number -- Upon Which Her Defamation Claim Purports To Rest ......................... 6

     A.    Identifying the Statements Is Necessary To An Efficient Trial And To Avoid Jury Confusion ................................................................................................ 6

     B.    Requiring Identification Of Defamatory Statements Is Consistent With Relevant Law ............................................................................................................ 10

     C.    Alternatively, The Court Should Enter Summary Judgment Against Plaintiff As To All Statements Not Sufficiently Identified In the Complaint ....... 13

II.   Plaintiff Should Also Be Required To Identify The Specific Actions She Alleges To Be Retaliatory ............................................................................................................ 13

CONCLUSION ............................................................................................................................ 14

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alf v. The Buffalo News, Inc.*,
   100 A.D.3d 1487, 953 N.Y.S.2d 797 (2012) *aff'd*, 21 N.Y.3d 988, 995 N.E.2d
   168 (2013) ..................................................................................................................................9

*Biro v. Conde Naste*,
   883 F. Supp. 2d 441 (S.D.N.Y. 2012) ......................................................................................11

*Celle v. Filipino Reporter Enters. Inc.*,
   209 F.3d 163 (2d Cir. 2000) ......................................................................................................6

*Condit v. Dunne*,
   225 F.R.D. 100 (S.D.N.Y. 2004) .............................................................................................12

*Croslan v. Housing Authority for City of New Britain*,
   974 F. Supp. 161 (D. Conn. 1997) ...............................................................................10, 11, 13

*Dimond v. Time Warner, Inc.*,
   119 A.D.3d 1331, 989 N.Y.S.2d 727 (4th Dep't 2014) .............................................................9

*Fincher v. Depository Trust & Clearing Corp.*,
   604 F.3d 712 (2d Cir. 2010) ....................................................................................................13

*Levin v. McPhee*,
   119 F.3d 189 (2d Cir. 1997) ......................................................................................................6

*Lihong Dong v. Ming Hai*,
   108 A.D.3d 599, 969 N.Y.S.2d 144 (2d Dep't 2013) ................................................................9

*Marchuk v. Faruqi & Faruqi, LLP*,
   No. 13 CIV. 1669 (AKH), 2015 WL 363625 (S.D.N.Y. Jan. 28, 2015) ...................................8

*Melius v. Glacken*,
   94 A.D.3d 959, 943 N.Y.S.2d 134 (2d Dep't 2012) ..................................................................8

*Neal v. Asta Funding, Inc.*,
   No. 13 CV 2176 (VB), 2014 WL 3887760 (S.D.N.Y. June 17, 2014) ...................................11

*Parrino v. SunGard Availability Servs. LP*,
   No. CV 11-3315 (JFB) (GRB), 2012 WL 826946 (E.D.N.Y. Feb. 16, 2012) ........................12

*Thai v. Cayre Group, Ltd.*,
    726 F. Supp.2d 323 (S.D.N.Y 2010)..................................................................................12

*Trustco Bank of New York v. Capital Newspaper Div. of the Hearst Corp.*,
    213 A.D.2d 940, 624 N.Y.S.2d 291 (1995) ..............................................................................8

*Wanamaker v. Columbian Rope Co.*,
    713 F. Supp. 533 (N.D.N.Y. 1989), *aff'd*, 108 F.3d 462 (2d Cir. 1997)..................................10

**Statutes**

New York City Human Rights Law ("NYCHRL") ............................................................5, 13, 14

# INTRODUCTION

Plaintiff asserts claims for defamation and retaliation.  But even on the eve of trial, Plaintiff asks Defendants, this Court, and ultimately the jury to play a guessing game as to exactly what defamatory statements, and retaliatory acts, her claims rest upon.  Plaintiff expects to dump over sixty exhibits into evidence -- hundreds of pages -- and ask the jury to apply complex legal questions to countless, unspecified statements in determining these claims.

The Court can and should address, before trial, the multiple legal issues that would serve to trim down these otherwise bloated claims.  To accomplish that, Plaintiff must be required, in the first instance, to identify the purportedly libelous statements they will rely upon at trial.  Defendants can then present for ruling its arguments as to why many (if not most, or all) of such statements are not actionable.  The relief Defendants request is necessary for effective trial management and to avoid jury confusion.

In her belatedly filed Trial Memorandum of Law  ("Plaintiff's Trial Brief"), Plaintiff attempts to convince the Court that she already identified the defamatory statements sufficiently in her Second Amended Complaint ("Complaint").  She includes a generalized list of the ways in which Defendants have "falsely labeled" Plaintiff that, according to her, would qualify as defamation *per se*.  (*Id.,* 3-4; *see* block quotation, *infra,* at page 4.)[1]  That is just not true.

Plaintiff's Trial Brief list is presented without any citations to the record and does not even purport to be a complete list.  Just finding the information Plaintiff's list purports to refer to in the record is an arduous and confusing process, a version of what Plaintiff expects to foist on the jury in this case.  When one finally locates a defamatory statement that might link up with

---

[1] The documents referred to herein, including the Plaintiff''s Second Amended Complaint, the parties' Joint Pre-Trial Order, and the parties' trial briefs, are already filed with the Court.

1

Plaintiff's list, there is a strong likelihood that statement is not actionable as a matter of law. What Plaintiff may want to put before the jury and label defamation is likely to prolong the trial immeasurably and lead to unfair jury confusion.

The only way this Court can be sure to review and dispense with the types of statements that could not be actionable as defamation *per se,* for example,[2] is to require Plaintiff to identify -- by trial exhibit number and the words within the exhibit -- the statements she will attempt to use to prove her case. Then the Court can view those statements, in the context of each purportedly libelous document as a whole, and consider the legal precedent that informs on whether such statements can go to the jury on a defamation claim.

Plaintiff also presents a fundamental misinterpretation of the law in arguing (in her Trial Brief) that she has identified her defamation claim sufficiently. It is well settled in this Court that even under the Federal Rules' standard of "notice pleading" for defamation claims, the statements upon which a claim is based *must* be identified so the court can eliminate the non-actionable ones. If Plaintiff cannot provide sufficient notice as to the defamatory statements on which her claim rests, no fact dispute is created as to whether there was defamation at all, and summary judgment is proper.

The same points and arguments apply to Plaintiff's retaliation claims, which appear to be based in part on the publishing of statements to Plaintiff, her family and friends, and in TheBlot Magazine -- even statements that are demonstrably true (and, thus, not even defamatory). As generally alleged, these claims are likely to come into conflict with the First Amendment. To ensure the Court's ability to deal with that potentially thorny legal issue, Plaintiff should be

---

[2] Plaintiff does not seek economic ("special") damages and, thus, must prove her case on statements that constitute defamation *per se.*

ordered to identify as well the specific statements upon which she bases her retaliation claims.

## STATEMENT OF FACTS

In her Second Amended Complaint, ("Compl."), Plaintiff does not identify any specific defamatory statements. She seeks relief based upon "the aforementioned, patently false statements" (Compl., ¶ 214) -- a generalized reference to statements located somewhere in the preceding fifty-nine pages of allegations. While the Complaint mentions that the defamatory statements include "written statements made via emails, text message, Facebook posts and blog messages on Defendants' internet magazine 'The Blot'" (*id.*, ¶216), she does so in conclusory fashion without reference to the specific communications and/or publication – let alone the statements in them – about which she ostensibly complains.

In a meet and confer session over possible stipulations on legal issues for the Joint Pre-Trial Order, Defendants' counsel expressly raised this issue with Plaintiff. Plaintiff's counsel announced that they would not provide such a list -- they would present their case at trial and it would be their risk if they failed to meet their burden. Accordingly, Plaintiff did not identify specific defamatory words in the description of her claims in the Joint Pre-Trial Order. Plaintiff did stipulate, however, that given her decision not to seek relief for economic injury -- no "special damages -- Plaintiff "will need to establish that the statements she claims to be defamatory constitute defamation *per se* under New York law." (Joint PTO, Section VIII.)

Plaintiff's trial exhibit list includes over 60 exhibits, spanning hundreds and hundreds of pages, of emails, texts, blog messages, and articles in TheBlot Magazine. There are seventeen multi-page exhibits with purported email chains and texts of Mr. Wey involving third parties,

3

much of it repetitive (Plaintiff's #24, 26, 29-37, 41-44, and 53).  There are eight additional exhibits that purport to be Facebook or Twitter messages involving Mr. Wey (Plaintiff's #38, 49-52, 54, 72, 89).  There are thirty additional exhibits that either are, or include, articles from TheBlot (many of them dozens of pages), with the same articles submitted in different forms as multiple exhibits (Plaintiff's #56, 58, 60-61, 63-64, 66, 69, 71, 73-74, 76-77, 81-88, 90-91, 93-98, 100).  And there are at least eight other exhibits that include statements Plaintiff appears to be suggesting were published by Mr. Wey (Plaintiff's #47-48, 57, 59, 62, 70, 75, 79).

Defendants described in detail these problems associated with Plaintiff's failure to identify specific defamatory statements in their May 15, 2015 Trial Memorandum of Law ("Defendants' Trial Brief").  Plaintiff did not file a brief on May 15, 2015; she filed her Trial Brief on May 18, 2015, responding to some of the legal arguments raised in Defendants' Trial Brief, including on this subject.

In her Trial Brief, Plaintiff states:

> Plaintiff's Second Amended Complaint reprints many of Defendants' defamatory emails, messages and postings2 [sic], and further articulates the author, date, forum, intended audience and defamatory nature of those postings, namely that Defendants have falsely labeled Ms. Bouveng as:  an unchaste woman (e.g., a prostitute, streetwalker, massage parlor worker who trades sex for drugs and money); and carrier of a loathsome disease (e.g., AIDS, an STD); engaged in criminal activity (e.g., a drug trafficker, blackmailer, extortionist, fugitive from the United states); who is unfit for her former profession (e.g., a Swedish party girl, alcoholic, drug addict).

(Plaintiff's Trial Brief, p. 3-4.)

Plaintiff does not point out where in the Second Amended Complaint any of the information she now describes in her Trial Brief can be found.  Nor does she point out which trial exhibits contain these purportedly "false labels."  References to many of the false labels

4

cannot be found in the Complaint at all, much less the other identifying information (author, date, forum, intended audience).

In her Complaint, Plaintiff does quote, repetitively, from certain emails, texts, and Facebook messages Mr. Wey purportedly had sent to Plaintiff and her "family and friends." (*Id.,* ¶¶96-98; 102-03; 105-06; 109-12; 114; 117, 120-128; 140-141.)  Those paragraphs do not identify which of the words in those many communications constitute statements that purport to defame Plaintiff specifically.  The Complaint also states that  "defamatory articles" and comments on such articles were published by The Blot Magazine" (*Id.,* ¶ 129).  While these allegations include quotations from certain articles that contain words that could be viewed as disparaging (*id.,* ¶¶ 131-134; 137-139), those paragraphs fail to identify which of the statements purport to defame Plaintiff specifically (as opposed to others) and which constitute libel *per se*.

Critically, nowhere does Plaintiff state that she will be limited in her defamation claim to the wordings specifically identified in the Complaint -- not in the Complaint itself, not in the Joint Pre-Trial Order, and not in her Trial Brief.

With respect to the retaliation claim under New York City Human Rights Law ("NYCHRL"), Plaintiff similarly states that her claim is based on the "aforesaid acts of intentional retaliation" (Compl., ¶ 188) - once again, a generalized reference to allegations located somewhere in the preceding pages of the Complaint.  There is no way to determine which of the events described in the entirety of the Complaint constitute the events upon which the retaliation claim is based, but presumably Plaintiff will argue that as yet unspecified statements were retaliatory.  Plaintiff also does not identify any specific retaliatory conduct or statements that she purports to be retaliatory conduct in the Joint Pre-Trial Order.  Plaintiff does not address that issue in her Trial Brief.

**ARGUMENT**

I. **Plaintiff Should Be Required To Identify The Statements -- By Wording And Exhibit Number -- Upon Which Her Defamation Claim Purports To Rest**

Plaintiff obviously prefers to have Defendants, the Court, and eventually the jury guess at which words she will be presenting at trial to support her claim for defamation. That preference renders the efficient management of the trial of Plaintiff's defamation claim unworkable, is likely to result in jury confusion, and is contrary to relevant law.

    A.    Identifying the Statements Is Necessary To An Efficient Trial And To Avoid Jury Confusion

There are multiple legal grounds upon which the Court can narrow (if not eliminate) this potentially vast defamation claim: whether the purportedly actionable words constitute defamation *per se*, are statements of fact (as opposed to non-actionable opinions), are directed at the Plaintiff (as opposed to others), or are otherwise protected.[3] "Whether particular words are defamatory presents a legal question to be resolved by the court[s] in the first instance." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (citation omitted). While it is ultimately "the responsibility of the jury to determine whether the plaintiff has actually been defamed; however, a threshold issue for resolution by the court is whether the statement alleged to have caused plaintiff an injury is reasonably susceptible to the defamatory meaning imputed to it." *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997) (citing *James v. Gannett Co.*, 353 N.E.2d 834, 837–38, 386 N.Y.S.2d 871 (1976)).

Without a list of the specific words Plaintiff alleges to be defamatory, Defendants will be unable to target and argue for the elimination of purportedly defamatory words that are not

---

[3] Plaintiff has stipulated that, because she seeks no economic or special damages, she "will need to establish that the statements she claims to be defamatory constitute defamation per se under New York law." (Joint PTO, Section VIII.)

actionable.  A final, complete list will permit presentation to the Court, in an orderly fashion, of legal arguments that could significantly narrow and/or simplify the trial of the defamation claim.

Indeed, there is a significant risk of jury confusion given the number of exhibits Plaintiff contemplates using and the manner in which Plaintiff will be presenting her claims.  Without the Court's orderly review of the statements Plaintiff intends to advance, Plaintiff will simply present over sixty exhibits and haphazardly describe what she will contend to be actionable defamatory statements.   Plaintiff replicates this uninformative process in her Trial Brief.  By referencing types of defamation without specific identification of the defamatory words themselves, Plaintiff launches Defendants (and the Court) on a quest to locate the purportedly offending wording.  There is no way for Defendants or the Court to be sure, from the Trial Brief or the Complaint, that they have found the statement, or statements, Plaintiff will decide to rely upon at trial.

For example, in her Trial Brief, Plaintiff states that she has been falsely labeled a "carrier of a loathsome disease (e.g., AIDS, an STD)." (Plaintiff's Trial Brief, p. 3.)  There is no citation to a Complaint paragraph where this "false label" has been quoted, nor to any trial exhibit.  Thus, Defendants (and the Court) now have to search through the sixty-five page, two hundred and twenty seven paragraph pleading to find an alleged reference to AIDS.  (Further complicating matters, Plaintiff's use of "e.g." signals a decision not even to commit to AIDS being the only loathsome disease it might claim at trial to be at issue.)

Upon our review of the Complaint, we can find only one such reference to AIDS.  The Complaint discusses an email Mr. Wey purportedly sent that states, about Ms. Bouveng's boyfriend, "The man has many girls and I worry Hanna may get AIDS or other diseases from this man." (Compl., ¶30.)  Plaintiff offers this statement as actionable libel *per se* -- that it is falsely labels her as *actually having* a loathsome disease.  That is *not* what the communication sets forth.

7

Surely the Court can rule on the difference between a statement that one is worried that a plaintiff may contract a disease and falsely labeling someone the plaintiff as actually having the disease.

Without being subject to prior Court review, Plaintiff would expect this statement to go to the jury as actionable libel *per se,* along with some unknown subset of the hundreds of other statements contained in more than sixty listed trial exhibits.  And there can be no Court review unless Defendants undertake to scour the entire record, attempting to divine what Plaintiff may have in mind, and then present massive and likely unnecessary briefing on every conceivable statement that Plaintiff might contend is disparaging.

In another example, Plaintiff claims it is libel *per se* to label someone an "extortionist," which Plaintiff labels an accusation of criminal activity that would fall within one of the *per se* categories.  Untrue.  Statements accusing a plaintiff of being an "extortionist" in the context of discussing legal proceedings is considered to be a non-actionable opinion under well-settled defamation law.  *See Marchuk v. Faruqi & Faruqi*, *LLP*, No. 13 CIV. 1669 (AKH), 2015 WL 363625, at *7 (S.D.N.Y. Jan. 28, 2015) (characterizing a plaintiff's lawsuit as "extortion" is not actionable); *Melius v. Glacken*, 94 A.D.3d 959, 959-60, 943 N.Y.S.2d 134 (2d Dep't 2012) ("[A] reasonable listener would have believed that calling the plaintiff an 'extortionist' who is seeking 'to extort money' was conveying the defendant's opinion as to the merits of the plaintiff's lawsuit and was not a factual accusation of criminal conduct."); *Trustco Bank of New York v. Capital Newspaper Div. of the Hearst Corp.*, 213 A.D.2d 940, 624 N.Y.S.2d 291 (1995) (town officer's use of word "extortion" in newspaper interview while discussing plaintiff's legal proceedings was "pure opinion").

This Court has to have the opportunity to consider which statements involving the labeling of Plaintiff as an extortionist are at issue so the Court can determine, as a matter of law,

8

whether they constitute that type of non-actionable opinion. Such a review would be impossible unless Defendants and the Court know exactly what statements Plaintiff purports to rely upon. Even if Defendants elected to rely upon what can be mined from the Complaint, or from Plaintiff's generalized Trial Brief list of "false labels," that would not end the exercise. Plaintiff has not limited its defamation claim to those sources.

Without review and narrowing by the Court, we cannot even fathom how a jury, even well instructed by the Court on the myriad of legal principles at play (and that would also be an overwhelming challenge), could sift through hundreds of pages of communications and determine what is, and what is not, defamation *per se*. Moreover, most of the articles in TheBlot that make statements about Plaintiff also make statements about Mr. Chauvet and the Morelli Alters Ratner firm; statements about persons other than Plaintiff are *not* a permissible basis upon which to make a defamation claim. *Lihong Dong v. Ming Hai*, 108 A.D.3d 599, 600, 969 N.Y.S.2d 144 (2d Dep't 2013) (In order to state a claim for defamation, the alleged defamatory statement must actually concern the plaintiff).[4] The jury would have to sort through that as well. The risk of confusion is tremendous.

Requiring Plaintiff to commit now (on the eve of trial) to a set of particular words is necessary for other reasons. For example, Plaintiff designated her entire deposition "confidential" pursuant to the Court's February 13, 2015 Stipulated Confidentiality Agreement And Protective Order. Plaintiff's counsel has defended this overbroad designation by pointing to, as an example, potential testimony about alleged use or lack of use of illegal drugs, which

---

[4] *See also Dimond v. Time Warner, Inc.,* 119 A.D.3d 1331, 1332, 989 N.Y.S.2d 727, 728 (4th Dep't 2014) (affirming dismissal of complaint on the ground that none of the three alleged defamatory statements was "of and concerning" plaintiffs); *Alf v. The Buffalo News, Inc.,* 100 A.D.3d 1487, 1488, 953 N.Y.S.2d 797, 799 (2012) *aff'd*, 21 N.Y.3d 988, 995 N.E.2d 168 (2013) (affirming dismissal of complaint when an average reader would conclude that other individuals, not Plaintiff, were the subject of defamatory statements).

Plaintiff apparently considers to be a private matter. However, TheBlot articles reference alleged drug use by Plaintiff. Defendants do not know whether Plaintiff contends that references to alleged drug use are on the list.[5] If Plaintiff *does* contend that this is defamation, that surely would undercut designating potential testimony regarding use or lack of use of drugs as personal and confidential. On the other hand, if alleged drug use is *not* on the list, and Plaintiff seeks to block the use of deposition or trial testimony in that area, the Court may have to consider whether it is necessary to redact multiple exhibits or make limiting instructions should Plaintiff seek to offer those exhibits into evidence for other reasons. For all of these issues to be addressed properly and in a timely fashion, an identifying list must be presented.

### B. Requiring Identification Of Defamatory Statements Is Consistent With Relevant Law

Identifying the general source of the purported defamatory statements is insufficient. In *Croslan v. Housing Authority for City of New Britain*, 974 F. Supp. 161, 170-71 (D. Conn. 1997), the court held that a plaintiff failed to provide the detail necessary for defendants to properly defend themselves, despite her identification of 55 news articles and 22 board meetings in which purported defamatory comments were made. Similarly, in *Wanamaker v. Columbian Rope Co.*, 713 F. Supp. 533, 544-45 (N.D.N.Y. 1989), *aff'd*, 108 F.3d 462 (2d Cir. 1997), the court determined that although Plaintiff alleged that all of the defendants had defamed him "by speaking and/or writing or circulating malicious, untrue and damaging comments about his job performance" his claim could not go forward since he did not set forth the specific allegedly actionable words.

These courts were concerned about the very issue that this Court now faces as trial

---

[5] If she does, such statements are unlikely to be actionable, given that they would not constitute libel *per se* under New York law.

approaches; Plaintiff's notion that she has done enough through generalized pleading was expressly rejected in *Croslan*. Plaintiff's response to these legal premises is to cite and discuss, in her Trial Brief (at p. 5), a number of pleadings-stage cases and argue that the Federal Rules of Civil Procedure (unlike New York's CPLR) do not require pleading of defamation with particularity. But Plaintiff misrepresents the holding and meaning of the cases she cites.

*Biro v. Conde Naste,* 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012), which Plaintiff cites, is instructive. The Court does note that while New York state court's CPLR requires defamation to be pleaded with "particularity," the Federal Rules do not, but Plaintiff dramatically over-reads that distinction. Court in *Biro* held that even under the more permissive "notice pleading" standard, the alleged defamatory statements must be pled with enough particularity so that the court is able to dismiss all non-actionable defamatory statements. *Id.* at 456-57 ("if the court finds that some of the statements are actionable but others are not, then the court may dismiss the claims based on non-actionable statements and allow the claims based on actionable statements to go forward."). This is exactly what Defendants are asking Plaintiff to do here; set forth the complained of defamatory statements in enough detail so that Defendants, and the Court, may properly determine which statements can be deemed non-actionable.

Case after case in this circuit has held that "enough detail" requires a plaintiff to identify the particular words spoken as well as the time, place, and manner in which the alleged defamatory statements were uttered. *Neal v. Asta Funding, Inc.*, No. 13 CV 2176 (VB), 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014), *reconsideration denied*, 2014 WL 3891239 (S.D.N.Y. June 27, 2014) ("[e]ven under the more lenient federal standard, however, the amended complaint must at least 'identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the

11

statements were published'") (internal quotations omitted) (citations omitted); *Parrino v. SunGard Availability Servs. LP*, No. CV 11-3315 (JFB) (GRB), 2012 WL 826946, at *3 (E.D.N.Y. Feb. 16, 2012) (Plaintiff must specify the "specific words about which [she] complains."); *Thai v. Cayre Group, Ltd.,* 726 F. Supp.2d 323, 329 (S.D.N.Y 2010) ("A defamation claim is only sufficient if it adequately identifies the purported communication") (internal quotations omitted) (citations omitted).

The only case Plaintiff cites that discusses a context in which the identification of specific statements was not required is *Condit v. Dunne,* 225 F.R.D. 100, 111 (S.D.N.Y. 2004). (Defendants' law firm, known previously as Sonnenschein Nath & Rosenthal, represented the defendant, Dominick Dunne in that case.)  In that case, Congressman Gary Condit had sued Mr. Dunne for comments he made in a broadcast about Condit's possible affair with intern Chandra Levy, whose disappearance had been highly publicized.  The Court held that Condit was not required to respond to an interrogatory seeking identification of specific words from within a broadcast transcript.

That case, however, involved distinguishable circumstances. Unlike here, the defamation at issue had been narrowed to a particular interview transcript, far more manageable at trial than the more than sixty exhibits Plaintiff expects to introduce.  In addition, Condit argued that the entire broadcast had to be heard in its entirety to understand its defamatory nature -- in other words, the "statement" was the whole broadcast.  That is not Plaintiff's assertion here.  Even in the Trial Brief, Plaintiff concedes that its claim is based on quotations from particular documents (although falsely suggesting that all the statements have already been identified in the Complaint).  Even if Plaintiff made such an argument, she has not provided sufficient nformation

12

-- sufficient notice of her claims -- to allow the Court to evaluate that argument.[6]

        C.      Alternatively, The Court Should Enter Summary Judgment Against Plaintiff As To All Statements Not Sufficiently Identified In the Complaint

Absent Plaintiff's identification of statements sufficient to give Defendants notice of the actual defamation claimed, Defendants are entitled to summary judgment. Plaintiff's general assertions of defamation would be insufficient to present a disputed issue of material fact regarding the actual defamatory statements allegedly made. *See Croslan,* 974 F. Supp. at 171 (determining that Plaintiff could not prove defamation as a matter of law without identifying specific statements, despite identifying the publications, speaker and subject matter of the purported defamatory statements).

If it is Plaintiff's contention that she identifies statements in the Complaint in a manner sufficient to meet the obligation to present a disputed issue of material fact, she should be obligated to identify the statements for which such identifying information has been provided in the Complaint in opposition to this motion. A failure to do so should render the claim subject to dismissal.

**II.    Plaintiff Should Also Be Required To Identify The Specific Actions She Alleges To Be Retaliatory**

For the same reasons, Plaintiff must specify precisely which acts of alleged retaliation she will rely upon to attempt to prove her retaliation claim. The proper inquiry under the NYCHRL is whether a jury could reasonably conclude from the evidence that the "complained-of conduct" by the employer was "reasonably likely to deter a person from engaging in protected activity." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010). Plaintiff fails to specify, but appears to allege, that such conduct includes statements Defendants may have

---

[6] In addition, in the *Condit* case, the Court applied California law; here, New York law applies.

made to others, including materials published in TheBlot.

Again, without Plaintiff identifying what specific actions constitute the basis for her claim, the Court is unable to properly adjudicate threshold legal issues prior to trial.  For instance, the NYCHRL retaliation statute, on its face, provides no First Amendment limitations, thus potentially punishing protected free speech in finding that a defendant's speech, whether it be true or not, that could reasonably deter a person from engaging in protected activity.  (*See* Defendants' Trial Brief at pp. 6-8.)   Without knowing the specific words about which Plaintiff complains, Defendants are unable to address what First Amendment protections may be accorded the speech at issue and what limitations should be placed upon the facially broad prohibitions of the NYCHRL that could, depending on the issue presented, run afoul of the First Amendment.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court order Plaintiff to provide a list identifying the purported defamatory and retaliatory words and conduct that form the basis of her defamation and retaliation claims in this action, including the specific trial exhibits in which such statements or conduct (to the extent such conduct is related to exhibits) can be found, or, in the alternative, grant Defendants summary judgment on those claims, and enter such other and further relief the Court deems just and proper.

Dated:  May 22, 2015
         New York, New York

                        Respectfully submitted,

                         s/Glenn Colton
                        Glenn Colton
                        Gary Meyerhoff
                        1221 Avenue of the Americas
                        New York, New York 10020
                        Tel.  (212) 768-6700

                        *Attorneys for Defendants*