UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

HANNA BOUVENG,

                        Plaintiff,

    -against-

NYG CAPITAL LLC d/b/a NEW YORK GLOBAL
GROUP, NYG CAPITAL LLC d/b/a FNL MEDIA
LLC, and BENJAMIN WEY,

                        Defendants.

-----------------------------------------------------------------X

PLAINTIFF'S TRIAL
BRIEF RE BLOT
COMMENTS

Docket No: 14 CIV. 5474
(PGG)

**BRIEF IN SUPPORT OF INCLUDING THE "COMMENTS" IN EVIDENCE**

Plaintiff respectfully submits this Brief to include certain Comments posted within TheBlot articles, namely, those attributed to certain witnesses in this case, Plaintiff's lawyers and paralegal, and individuals with Plaintiff's surname. As set forth below, these Comments should be offered into evidence and not redacted.

Despite Defendants' argument to the contrary, Plaintiff is not offering these Comments as statements to be considered as defamatory. Therefore, Defendants' argument that Plaintiff waived her right to have the Comments considered as defamatory statements is inapposite. Instead, these comments should be admitted into evidence and not redacted (i) to show that Defendants, specifically Mr. Wey, fabricated these comments for search engine optimization purposes, and (ii) as evidence of Defendants maliciousness, which is necessary to prove Plaintiff's entitlement to punitive damages.

It is undisputed that as Publisher of FNL Media and TheBlot, Mr. Wey is responsible for

1

the contents of all articles posted to TheBlot. (*See* Testimony of Benjamin Wey, Trial Transcript, December 15, 2014, 209:13-21.) Mr. Wey admitted that comments posted on TheBlot in articles discussing Ms. Bouveng, which were attributed to friends and relatives of Ms. Bouveng, were not actually posted by the individuals whom they were attributed to. (Id., 164:20-166:20.)

In fact, Mr. Wey himself contributes to the content of TheBlot articles and decides what stories are to be published. (*See* Testimony of Yonatan Weiss, Trial Transcript, December 15, 2014, 13:2-24.) Mr. Wey instructed his employees to make up fake names for the bylines of the articles. (Id., 16:17-22.) For certain articles, Mr. Wey instructed his employees to allow comments to be posted without any verification of who was actually posting the comments or whether it was even an actual person posting the comments at all. (Id., 24:1-12.) In fact, the majority of comments being posted were from a single IP address, even though the comments were posted under various names. (Id., 24:13-24.) Mr. Wey directed his employees to change the names of the comments because the majority of the comments were not being posted by actual people, and instead were automated comments posted for purposes of search engine optimization. (Id., 25:6-24.)

Despite Defendants' argument to the contrary, Defendants are not immunized under the Communications Decency Act ("CDA"), 47 U.S.C. § 230, for comments posted on TheBlot because the Defendants themselves created the comments at issue. Defendants created the impression that comments were posted by bona fide individuals, when in fact the comments were either attributed to fictitious persons and actually posted by an automated computer program, or were posted by Mr. Wey himself. *See* Alvi Armani Med., Inc. v. Hennessey, 629 F. Supp. 2d

2

1302, 1306 (S.D. Fla. 2008) (*internet publisher sued by hair restoration clinic and physician, stemming from website featuring comments by allegedly disgruntled patients, was not immunized under CDA, since publisher was alleged to have created tortious content*); Whitney Info. Network, Inc. v. Xcentric Venture, LLC, 199 Fed. Appx. 738, 744 (11th Cir. 2006) (*where complaint contained allegations illustrating defendants' involvement in creating or developing the content of consumer complaints posted on their website, defendants' entitlement to CDA immunity remained in question*); Blumenthal v. Drudge, 992 F.Supp. 44, 50 (D.D.C. 1998) ("*Section 230(c)(1) would not immunize [defendants] with respect to any information [they] developed or created entirely by [themselves].*"); Doe v. City of New York, 583 F. Supp. 2d 444, 449 (S.D.N.Y. 2008) (*plaintiff's hostile work environment claims were not barred by CDA since when defendant added his own allegedly tortious speech to the third-party content, he fell out of the CDA's protections*).

Furthermore, there is a distinct similarity in the style of writing between the comments posted on TheBlot and the emails and articles admittedly written by Mr. Wey. This similarity in style is further evidence that these comments were fabricated by the Defendants for the purpose of getting the articles on the first page of internet search results.

The comments should also be admitted into evidence to prove Plaintiff's entitlement to punitive damages.

Under New York law, punitive damages are available in a defamation case to punish a person for outrageous conduct which is malicious, wanton, reckless, or in willful disregard for another's rights. Stern v. Cosby, 645 F. Supp. 2d 258, 286 (S.D.N.Y. 2009) (citations and internal quotations omitted); DiBella v. Hopkins, 403 F.3d 102, 122 (2d Cir. 2005) (*evidence in*

*libel case was sufficient to support award of punitive damages*). Satisfying the "actual malice" standard does not suffice. Id. To be entitled to punitive damages, a defamation plaintiff must prove by a preponderance of the evidence that the defendant acted toward the plaintiff with hatred, ill-will, spite, criminal mental state or that traditionally required variety of common-law malice. Id. *See also* Prozeralik v. Capital Cities Commc'ns, Inc., 82 N.Y.2d 466, 479, 626 N.E.2d 34, 41 (1993) ("*Something more than the mere commission of a tort is always required for punitive damages*") (*quoting* Prosser and Keeton, Torts §2, at 9–10 (5th ed. 1984)). "This kind of common-law malice focuses on the defendant's mental state in relation to the plaintiff and the motive in publishing the falsity." Prozeralik, 82 N.Y.2d at 480.

"Common law malice is established by examining all of the relevant circumstances surrounding the dispute, including any rivalries and earlier disputes between the parties so long as they are not too remote." Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 184-85 (2d Cir. 2000) (*citing* Herbert v. Lando, 441 U.S. 153, 164 n. 12, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) ("*any competent evidence, either direct or circumstantial, can be resorted to [to establish common law malice], and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, [and] ill will, or hostility between the parties.*") *See also* Unker v. Joseph Markovits, Inc., 643 F. Supp. 1043, 1048 (S.D.N.Y. 1986) ("*malice necessary to sustain an award of punitive damages may be implied from the publication itself, where the natural inference from the defamatory statement is that it was aimed directly at the plaintiff's reputation*") (*citations omitted*); Leser v. Penido, 96 A.D.3d 578, 578, 947 N.Y.S.2d 441, 442 (1st Dep't 2012) (*disinterested malevolence on part of*

4

*defendant who was responsible for blog and website postings that, on their face, impugned plaintiff's chastity and thus were libelous per se supported award of both compensatory and punitive damages*).

Here, the fabricated Comments should be included and not redacted because they are relevant for purposes of establishing Defendants' maliciousness and mental state in relation to Ms. Bouveng. These Comments are competent evidence to establish Defendants' outrageous and malicious conduct towards Ms. Bouveng, and thus, Plaintiff's entitlement to punitive damages.

Accordingly, this evidence should be held admissible.

Respectfully submitted, this 15th day of June, 2015.

s/ David S. Ratner<br>
David S. Ratner, Esq.<br>
**MORELLI ALTERS RATNER LLP**<br>
777 Third Avenue, 31st Floor<br>
New York, New York 10017<br>
Tel: (212) 751-9800<br>
Fax: (212) 751-0046