UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HANNA BOUVENG,

        Plaintiff,

   v.

NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP, FNL MEDIA LLC, and BENJAMIN WEY,

        Defendants.

Case No. 14-CV-5474 (PGG)

# DEFENDANTS' MEMORANDUM OF LAW ON WHETHER LAWYER'S LETTER OR DRAFT COMPLAINT CAN CONSTITUTE <u>EXTORTION UNDER FEDERAL OR NEW YORK STATE LAW</u>

DENTONS US LLP
Glenn Colton
Gary Meyerhoff
1221 Avenue of the Americas
New York, New York 10020
Tel. (212) 768-6700

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Statement of Facts ................................................................................................................ 2

   I.  The Extortion Statues And Their Relevant Standards .............................................. 3

      A.  The Federal Statute At Issue -- 18 U.S.C. § 875(d) ............................................ 3

      B.  The New York State Statute At Issue -- New York Penal Law §155.05(2)(e) .... 6

  II.  Plaintiff's Threats In This Case Can, And Do, Constitute The Crime Of Extortion Under Both Federal And State Law ........................................................................... 7

      A.  Jackson And RICO Predicate Act Cases Citing It Support The Viability Of Extortion Under Section 875(d) Arising From A Civil Litigation Context ......... 8

      B.  A Malicious Prosecution Case Supports The Application Of The New York State Extortion Statute In A Civil Litigation Context .......................................... 11

      C.  A Dated Case Expressly Holds That The Privilege Of An Attorney Does Not Constitute Defense To A Prosecution For Blackmail ........................................... 12

CONCLUSION ...................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chevron v. Donziger*,
    974 F. Supp. 2d 362 (S.D.N.Y. 2014) ................................................................................9

*Dawkins v. Williams*,
    511 F. Supp. 2d 248 (N.D.N.Y. 2007) ..................................................................7, 11, 12

*La Suisse, Societe D'Assurances Sur La Vie v. Kraus*,
    2014 WL 3610890 (S.D.N.Y. July 21, 2014) ................................................................10, 11

*Neder v. United States*,
    527 U.S. 1 (1999) ..............................................................................................................5

*New York v. Chesler*,
    50 N.Y.2d 203, 428 N.Y.S.2d 639 (N.Y. 1980) ................................................................7

*People v. Wickes*,
    112 A.D. 39, 98 N.Y.S. 163 (1st Dep't 1906) ..............................................................12, 13

*United States v. Jackson*,
    180 F.3d 55 (1999) .................................................................................................. *passim*

*United States v. Jackson*,
    196 F.3d 383 (2d Cir. 1999) ..............................................................................................5

**Statutes and Other Authorities**

18 U.S.C. § 875(d) ...............................................................................................3, 4, 7, 8

N.Y. Penal Law §155.05(2)(e)(iv) ....................................................................................6, 7

N.Y. Penal Law §155.05(2)(e)(v) ......................................................................................6, 7

N.Y. Penal Law § 155.15(2) ..................................................................................................6

Predicate Act ..........................................................................................................................8

Racketeer Influenced and Corrupt Organizations Act (RICO) ...............................8, 9, 10

The Court has requested briefing from the parties on whether the delivery of a lawyer's letter demanding a settlement, the delivery of a draft complaint, or the delivery of anything associated with a pending or threatened lawsuit could ever constitute extortion under either federal or New York State law.  (Trial Tr. at 168.)  Defendants contend that it was reasonable for them to interpret Plaintiff's demands to Mr. Wey pay a settlement under threats to (a) embarrass and humiliate Mr. Wey and his family, and (b) refer him to law enforcement based upon the false assertion that he "forced" Ms. Bouveng to have sex with him (*i.e.,* rape) constitute the crime of extortion.  Thus, the issues should be examined with respect to those threats.

Defendants were unable to find authority in this Circuit, or in the New York State courts, that addresses the propriety of a criminal prosecution for extortion where the threats at issue were delivered through a lawyer's letter or the delivery of a draft complaint.  However, the threats Plaintiff made do meet the terms of the relevant extortion statutes, and we are unaware of any case law suggesting that a party can insulate herself from a violation of those statutes by passing extortionate threats through her lawyer or through the presentation of a draft complaint.  And while the authority that is available in this area arises in different procedural contexts, that authority confirms that Plaintiff's threats, even if delivered in a manner connected to pending or threatened litigation, absolutely can constitute extortion under relevant statutes.[1]

---

[1] Defendants present these arguments in compliance with the Court's instruction to brief this issue. Defendants note the Court's comments (Trial Tr. at 468-69) that these legal standards may bear on jury instructions in this case and that the Court may not yet be focusing on the connection between these legal issues and, for example, the defamation claim (*i.e.,* whether an instruction on the legal standards for extortion, or other crimes implicated by allegedly defamatory statements in this action, would be appropriate in connection with the test of "substantial truth" under New York defamation law). Recognizing that the Court did not instruct the parties to brief the interplay between extortion standards and the legal claims at issue, Defendants will not do so, but respectfully request the opportunity to be heard on that analysis before the Court determines which instructions it will give to the jury in this area.

**Statement Of Facts**

Defendants contend that Plaintiff made particularized threats to Mr. Wey in connection with demands for a settlement that can constitute the crime of extortion under both federal and New York State law. The conduct began with Plaintiff's counsel's April 29, 2014 letter, sent by email over the internet to Mr. Wey,[2] which stated:

> We suggest that you have your lawyer contact us immediately in order to resolve this situation before we are forced to commence *what is likely to be embarrassing litigation.*
>
> * * *
>
> We are also investigating whether your actions to date rise to the level of criminal misconduct that would *require law enforcement intervention.*

4/29/14 Letter (emphasis added).

The threats in that letter were amplified and clarified eight days later with Plaintiff's counsel's May 7, 2014 email to Mr. Wey, which stated;

> [A]ttached is the legal complaint we intend to file on Ms. Bouveng's behalf on Friday, May 9. You have one more chance to avoid what surely will be expensive *and embarrassing litigation for you, your company and your family*.

5/9/14 Email (emphasis added).

The draft complaint attached to the May 7, 2014 email included the following allegations:

- Defendant CEO Benjamin Wey then ***forced*** Plaintiff to have sexual intercourse with him. Plaintiff was alarmed, disgusted, and devastated. (¶59.) (emphasis added.)

- On approximately three occasions thereafter from approximately January through early February 2014, Defendant CEO Benjamin Wey plied Plaintiff Hanna

---

[2] The means of transmission of the threats at issue may have some bearing on the implication of federal extortion statutes, which include an element of interstate commerce.

> Bouveng with alcohol and, once she was intoxicated, *forced* her to have sexual intercourse with him. (¶61.) (emphasis added.) [3]

These allegations amplified and substantiated the threat to embarrass Mr. Wey and his family through the revelation of his alleged personal infidelity. They also clarified that the threat to refer Mr. Wey for criminal prosecution concerned the crime of forced sexual activity -- "rape."

In addition, Plaintiff's draft complaint contained numerous embarrassing salacious details about alleged sexual encounters between Mr. Wey and Ms. Bouveng. The draft complaint also included allegations identifying Mr. Wey's wife and indicating that he has three children. (¶5.) These allegations, plainly unnecessary to pursuing the threatened lawsuit, further substantiated the threat to bring embarrassment to Mr. Wey's family. The draft complaint sought a startling $850 million in damages. *Id.,* p. 46-48. In subsequent oral communications, Plaintiff -- through counsel -- quantified her demand to settle, and thus avoid the threatened exposure to humiliation and referral for criminal prosecution, as a specific, exorbitant, cash payment amount.[4]

The threats at issue, thus, go beyond the commonplace fact pattern in which a potential litigant, either on her own or through legal counsel, demands payment from a potential defendant under an imminent threat to file a lawsuit. As discussed below, it is because these particular additional threats -- to embarrass and to refer for criminal prosecution -- that can constitute extortion even if delivered by an attorney or in connection with a pending or threatened lawsuit.

## I. The Extortion Statutes And Their Relevant Standards

### A. The Federal Statute At Issue -- 18 U.S.C. § 875(d)

---

[3] Although not necessarily relevant here, it is also a fact that Plaintiff has retreated from her position that the alleged sexual encounters were "forced" -- in other words, the threats were tied to *false* assertions of forced sexual contact. (See Defendants' Letter Brief of June 16, 2015.)

[4] If necessary, affidavit evidence can be provided to support the factual assertion that oral demands for specific sums of money were made.

The federal extortion statute in question states:

> (d) Whoever, with intent to extort from any person . . . any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another . . . shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 875(d).

Pertinent here, the statute does not define the terms "extort" or "intent to extort," leaving open the question of whether there must be an element of wrongfulness to be in violation. For example, a lawyer's letter demanding to settle a lawsuit could qualify as a "threat to injure the property . . . of another," even though such a demand is routinely considered to be a lawful one. This Court aptly pointed the parties to the case of *United States v. Jackson,* 180 F.3d 55 (1999), in which the Second Circuit, analogizing to extortion under the Hobbs Act, held that §875(d) does include an implicit requirement that the threat to injure be "wrongful."

In *Jackson,* the defendant threatened Bill Cosby that if he did not pay her money, she would sign a contract with *The Globe,* a tabloid paper, to tell her story, revealing that she was Cosby's illegitimate child and causing him public humiliation. Although lawyers were not involved in the threat, Jackson asked for $40 million to "settle [their disputes], once and finally." A follow-up letter suggested that Cosby's "failure to acknowledge her as his daughter had left her mentally anguished and impoverished." *Id.* at 61-62. Jackson was prosecuted for extortion and convicted.

Jackson's appeal contended that it was error for the Court to have failed to instruct the jury that the threats to injure Cosby's reputation had to be "wrongful." The Government countered that § 875(d) contains no "wrongfulness" requirement. After a thorough analysis, the Second Circuit found that wrongfulness is implied in the statute; the failure to give an instruction

4

to that effect was reversible error. *Id.* at 69-72.[5]

The Court's analysis of "wrongfulness" informs on the question at issue here:

> We do, however, view as inherently wrongful the type of threat to reputation that has no nexus to a claim of right. There are significant differences between, on the one hand, threatened disclosures of such matters as consumer complaints and nonpayment of dues, as to which the threatener has a plausible claim of right, and, on the other hand, threatened disclosures of such matters as sexual indiscretions that have no nexus with any plausible claim of right. In the former category of threats, the disclosures themselves—not only the threats—have the potential for causing payment of the money demanded; in the latter category, it is only the threat that has that potential, and actual disclosure would frustrate the prospect of payment. Thus, if the club posts a list of members with unpaid dues and its list is accurate, the dues generally will be paid; if the consumer lodges her complaint and is right, she is likely to receive her refund; and both matters are thereby concluded. In contrast, if a threatener having no claim of right discloses the victim's secret, regardless of whether her information is correct she normally gets nothing from the target of her threats. And if the victim makes the demanded payment, thereby avoiding disclosure, there is nothing to prevent the threatener from repeatedly demanding money even after prior demands have been fully met.
>
> * * *
>
> We conclude that where a threat of harm to a person's reputation seeks money or property to which the threatener does not have, and cannot reasonably believe she has, a claim of right, or where the threat has no nexus to a plausible claim of right, the threat is inherently wrongful and its transmission in interstate commerce is prohibited by § 875(d).

*Id.* at 70-71.

The question at bar is whether the threats Plaintiff made through her attorneys would be considered legitimate or lawful -- *i.e.,* not "wrongful." The Second Circuit's test for determining

---

[5] The day after the Second Circuit's ruling, the United States Supreme Court handed down its decision in *Neder v. United States,* 527 U.S. 1 (1999), which established that harmless-error analysis applies to a trial court's failure to instruct on an element of an of an offense. Relying on *Neder,* the Second Circuit, on rehearing, found the failure to instruct on wrongfulness to be harmless error and sustained Jackson's conviction. *United States v. Jackson,* 196 F.3d 383 (2d Cir. 1999).

5

whether particular threats are wrongful turns upon whether the threatener "does not have, and cannot reasonably believe she has, a claim of right, or where the threat has no nexus to a plausible claim of right." *Id.* While Plaintiff may have had a plausible claim of right to damages that would be owed under a suit for sexual harassment, her threats to humiliate Mr. Wey's family and to refer Mr. Wey for criminal prosecution have no nexus to a plausible claim of right. Thus, they would be considered inherently wrongful under *Jackson*.

    B.    <u>The New York State Statute At Issue -- New York Penal Law §155.05(2)(e)</u>

Under New York State law, the crime at issue would be named "larceny by extortion":

> 2. Larceny includes a wrongful taking . . . of another's property, with the intent prescribed in subdivision one of this section, committed in any of the following ways:
>
> (e) By extortion.
>
>    A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will:
>
>    (iv) Accuse some person of a crime or cause criminal charges to be instituted against him; or
>
>    (v) Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule . . . .

New York Penal Law §155.05(2)(e)(iv) and (v).

Similar to the federal statute, the language of the New York statute does not expressly address wrongfulness. The New York State legislature subsequently enacted a law providing that, in any prosecution for larceny by extortion, it is an affirmative defense that "the defendant reasonably believed the threatened charge to be true and that his sole purpose was to compel or induce the victim to take reasonable action to make good the wrong which was the subject of the threatened charge." N.Y. Penal Law § 155.15(2). The New York State Court of Appeals later

6

struck down the word "affirmative," since treating the defense as an affirmative defense would unconstitutionally shift the burden to the defendant to disprove the element of intent. *See New York v. Chesler,* 50 N.Y.2d 203, 428 N.Y.S.2d 639, 643 (N.Y. 1980). Thus, the government retains the burden to disprove good faith beyond a reasonable doubt. *See Chesler,* 428 N.Y.S.2d at 643.

Recent cases have limited the scope of this "good faith" exception to particular types of threats under New York Penal Law §155.05(2)(e). Relevant here, while the exception appears to apply to subsection (iv) (concerning threats to accuse someone of crimes), it does *not* apply to subsection (v) (concerning exposing a secret). *See Dawkins v. Williams,* 511 F. Supp. 2d 248, 258-59 (N.D.N.Y. 2007).

II. **Plaintiff's Threats In This Case Can, And Do, Constitute The Crime Of Extortion Under Both Federal And State Law**

The threats Plaintiff has made to embarrass Mr. Wey's family and to refer him for criminal prosecution certainly can constitute the crime of extortion. Threatening public embarrassment and criminal prosecution plainly are threats to "injure the property or reputation" of another under 18 U.S.C. § 875(d). The threats also constitute means to "instill" in Mr. Wey "a fear that if the property is not so delivered, the actor . . . will . . . accuse [Mr. Wey] of a crime or cause criminal charges to be instituted against him." N.Y. Penal Law §155.05(2)(e)(iv). And they also instill a fear in Mr. Wey that Plaintiff will "expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule." N.Y. Penal Law §155.05(2)(e)(v).

The open question is whether the act of making these threats through lawyer documents -- a letter, an email, a draft complaint -- somehow insulates Plaintiff from potential criminal

7

liability. Defendants could not find recent case law that addresses directly whether threats of public embarrassment or of referrals for criminal prosecution constitute extortion if made in the context of civil litigation.[6] However, cases in a few other procedural contexts make it clear that there can, indeed, be extortion in the context of a threatened -- or even a pending -- lawsuit.

    A.    *Jackson* And RICO Predicate Act Cases Citing It Support The Viability Of Extortion Under Section 875(d) Arising From A Civil Litigation Context

Under the principles set forth in *Jackson*, Plaintiff's threats to embarrass and to refer for criminal prosecution are not insulated from the statute because they were made through attorneys. Under *Jackson,* a threat will be unlawful if there is no "nexus to a plausible claim of right." Since Jackson's demand was for $40 million, and her only plausible claim of right was for child support (in an amount far less than $40 million), there was ample evidence to support that the threat was inherently wrongful and, thus, in violation of the criminal statute. *Id.* at 71-72.

The court did not address how lawyer involvement in a series of threats would be interpreted, but the mode of analysis established in *Jackson* certainly can be applied here. Plaintiff's threats -- publicly embarrassing Mr. Wey, his company and his family and/or as well referring him for criminal prosecution -- are not compensable in civil litigation. There is no nexus between those threats and a lawful claim to recover. Thus, the threats are inherently wrongful and in violation of the extortion statute. Such a finding plainly is aligned with the traditional notion that there will be no criminal penalty when a party or lawyer threatens to file

---

[6] The New York rules governing the ethics of lawyers were based upon the Model Code of Professional Responsibility until 2008. DR 7-105 of the Model Code provided, "A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in civil matter." The Model Rules of Professional Conduct, adopted in New York effective as of 2000, do not include a specific prohibition in this area (although presumably such conduct is still prohibited under more generalized language governing the ethical conduct of New York lawyers). It may be for this reason -- New York lawyers refraining from threatening criminal prosecution because it would have been a clear ethical violation -- that there is an absence of significant case law on the legal implications of such conduct.

civil litigation if a settlement is not paid. That threat *is* compensable in civil litigation; the nexus to a lawful claim to recover does exist and, as such, the threat is not wrongful. But Plaintiff went beyond merely threatening to bring suit, turning otherwise lawful conduct into inherently wrongful extortion.

In two recent cases, this Court has considered whether extortionate threats in the midst of pending civil litigation can constitute predicate acts under the Racketeer Influenced and Corrupt Organizations Act (RICO). In the context of making that analysis, it is apparent that the shroud of litigation activity will *not* insulate an otherwise extortionate threat from criminal liability.

In *Chevron v. Donziger,* 974 F. Supp. 2d 362 (S.D.N.Y. 2014), Chevron sued a group of lawyers who had brought litigation against it for purported environmental violations on behalf of thousands of indigenous peoples in Ecuador. In a nearly 400 page decision following a bench trial, Judge Kaplan ruled upon a myriad of issues, including on the implications of the defendants' efforts to pressure Chevron to settle by "a variety of both legitimate and illegitimate means." *Id.* at 383. Donziger's position, similar to the position Plaintiff and her attorney have taken in the instant case, was that his conduct was protected -- he had merely attempted to "subject Chevron to pressure to produce a generous settlement prior to judgment." *Id.* at 577.

Relying on *Jackson,* the Court distinguished between lawful and unlawful threats:

> It was Donziger's purpose to magnify the pressure on Chevron by increasing both the perceived magnitude of its potential exposure and the perceived likelihood that the exposure in the end would culminate in huge liability. He repeatedly did so by manifestly wrongful means, which included corruption of the litigation and a pressure campaign premised on misrepresentations. . . .
>
> Each of these tactics increased the perceived threat of harm to Chevron, either by increasing the dollar exposure, by increasing the probability of a judgment that could be enforced outside Ecuador, or by both. They were inherently wrongful by any definition. Chevron "had a preexisting right

9

> to be free from the threats invoked" by the illegitimate means employed. Viewing them in terms of the *Jackson* formulation, they destroyed the nexus between the original plausible claim and the fear of a catastrophic adverse result on that claim because the fear of such a result was a product not solely of the original plausible claim, but of the illegitimate means used to increase the exposure on that claim. . . . In other words, the illegitimate means that Donziger and his confederates used provided them with "leverage to force the payment of money" that arose uniquely from the illegitimate means. . . . Put still another way, one engaged in litigation either accepts the risk of an adverse result reached by fair and honest methods or settles, and that is fine. But a litigant who magnifies the risks to its adversary by corrupting the litigation in order to "get the price up" creates leverage purely attributable to the corruption, which is inherently wrongful, which bears no proper nexus to any plausible claim that may have been asserted in the first place, and from which the victim has a right to be free.

*Id.* at 579-80.

Similarly, in *La Suisse, Societe D'Assurances Sur La Vie v. Kraus,* 2014 WL 3610890 (S.D.N.Y. July 21, 2014), the Court considered whether damages from "extortionate litigation" could be available under the RICO act.[7] The Court recognized that, ordinarily, even frivolous lawsuits cannot result in claims for extortion: "recognizing abusive litigation as a form of extortion would subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim." *Id.* at *9. But the Court saw a distinction when claims are asserted for which there is no legitimate right to recover:

> The lawsuits controlled by Kraus and Caruso constituted extortion for RICO purposes because Kraus and Caruso did not have a legitimate claim of right to the proceeds of the *Moskovitz* lawsuit. Rather, the allegations of the third-party complaint, deemed admitted by virtue of Kraus and Caruso's default, establish that "Kraus and Caruso have attempted to leverage their control and influence over the policyholders by instituting policyholder litigations against Swiss Life, such as *Moskovitz,* and otherwise threatening Swiss Life in an attempt to extort Swiss Life into making payments directly to Kraus and Karuso." In light

---

[7] The decision cited is an Amended Report and Recommendation of Magistrate Judge Gorenstein. District Judge McMahon adopted the Report and Recommendation by order dated August 6, 2014 (Docket #217).

> of these facts, Kraus and Caruso could not have any claim of right to the proceeds of the *Moskowitz* suit.

*Id.*

In both of these cases, the litigants attempted to distance themselves from the extortion statutes by claiming that they were pursuing legitimate litigation activities. The Court rejected those arguments, citing the principle espoused in *Jackson* -- where there is no nexus to a legitimate claim to recover, the conduct is inherently wrongful and, thus, extortionate. The same would apply here to Plaintiff's threats to embarrass and to refer for criminal prosecution.

    B.    <u>A Malicious Prosecution Case Supports The Application Of
The New York State Extortion Statute In A Civil Litigation Context</u>

In *Dawkins* (cited above), the court followed the *Jackson* analysis in a case more aligned with the one at bar. Dawkins had reported to the police that his girlfriend had been raped by Dawkins' attorney, Catalano. Dawkins threatened to file a complaint with an attorney grievance committee, to continue to pursue the rape complaint, and to contact various news outlets and report Catalano's alleged misconduct if Catalano did not pay him money. Williams, a New York State Police investigator, arrested Dawkins for violation of the New York State extortion statute. Dawkins then sued Williams for malicious prosecution, claiming (as Plaintiff does here) that he is insulated from criminal extortion because he was, essentially, pursuing his rights in good faith. Williams then moved to dismiss the malicious prosecution claim, precipitating an analysis of whether Dawkins' conduct created probable cause to arrest under the New York State extortion statute. *Dawkins,* 511 F. Supp. 2d at 253-54.

The court, adopting the Report and Recommendation of the Magistrate Judge, relied heavily on *Jackson* in analyzing, under the New York State law, whether an actual extortion could have taken place:

> Here, Plaintiff did not merely threaten to continue to pursue Ms. Disant's rape complaint, and to file a complaint with an attorney grievance committee (neither of which appear to be criminal acts under the circumstances, given the good-faith defense available under Section 155.15[2] ), but Plaintiff also repeatedly threatened to contact various news outlets and report Mr. Catalano's alleged misconduct to them if Mr. Catalano did not pay Plaintiff money. I find that, based on the current record, probable cause existed to believe that Plaintiff was *not* acting in good faith when he threatened to go to the press with his claims, given the lack of any "nexus" between the threatened disclosures to the press and any inherent material benefit to Plaintiff from going to the press. *See Jackson,* 180 F.3d at 70-71.
>
> * * *
>
> [H]ere, Plaintiff's conduct in threatening to contact news outlets (as well as his apparent conduct of twice *actually* calling such news outlets) was not "part" of his "larger endeavor to obtain recompense for a perceived wrong," since it was not a step that was *necessary* to pursue some sort of legal remedy (for example, filing a complaint against Defendant with an attorney grievance committee of the Appellate Division of the New York State Supreme Court, or by filing a civil action against Defendant in New York State Supreme Court). Rather, the record evidence indicates that this conduct was a significant tool that Plaintiff used as a last resort, after his other threats had apparently failed, in order to try to extract an increased and exorbitant sum of money from Defendant.

*Id.* at 259-60, 260.

This case aligns with Plaintiff's threats to Mr. Wey. It was not *necessary* to Plaintiff's claim for damages for allegedly legitimate claims of sexual harassment to threaten Mr. Wey with anything other than the filing of a civil lawsuit. And yet Plaintiff also threatened him with the public humiliation of his family and referral for criminal prosecution. In using *those* tools to attempt to extract an increased and exorbitant sum from Mr. Wey, Plaintiff, like Dawkins, ran afoul of the New York State extortion statute.

### C. A Dated Case Expressly Holds That The Privilege Of An Attorney Does Not Constitute Defense To A Prosecution For Blackmail

In *People v. Wickes,* 112 A.D. 39, 98 N.Y.S. 163 (1st Dep't 1906), the court upheld a

12

conviction based upon a lawyer's threat, in the midst of litigation, to not only prevail in the suit, but to publish that the opposing party had committed the crime of perjury and to bring embarrassment to him. In rejecting the claim that the conduct was insulated because he was an attorney, the court held:

> The appellant pleads the privilege of an attorney in attempting to collect a just debt. But "the law does not authorize the collection of just debts by the malicious threatening to accuse the debtor of a crime." Com. v. Coolidge, 128 Mass. 55; People v. Eichler, supra. "Lewis Jarvis" was not the attorney of Grinnell. Nor would it have altered the case if the defendant had signed his own name to the letters. The privilege of an attorney does not extend so far as to sanction such letters as are in evidence in this case to be written to a defendant to force the settlement of an unliquidated claim of the attorney's client, in which he has a monetary interest, by threats. The blackmail denounced by the statute was made out; knowledge, threat, and intent, were all sufficiently proved to warrant the verdict.

*Id.,* 98 N.Y.S. at 170.

## **CONCLUSION**

Under the foregoing, there is ample authority for the notion that certain types of threats -- including the ones Plaintiff made to Mr. Wey -- can, indeed, constitute extortion under both federal and New York State law, even when associated with a pending or threatened lawsuit.

Dated: June 19, 2015
  New York, New York

Respectfully submitted,

 /s/Glenn Colton

Glenn Colton
Gary Meyerhoff
1221 Avenue of the Americas
New York, New York 10020
Tel. (212) 768-6700

*Attorneys for Defendants*
