UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HANNA BOUVENG,

       Plaintiff,                                Civil Case No. 14-CV-5474 (PGG)

       -against-

NYG CAPITAL LLC d/b/a NEW YORK GLOBAL
GROUP, FNL MEDIA LLC, and BENJAMIN WEY,

       Defendants.
------------------------------------------------------------------X


## PLAINTIFF HANNA BOUVENG'S
## TRIAL MEMORANDUM OF LAW AS TO PRE-LITIGATION COMMUNICATIONS


Dated:  New York, New York                **MORELLI ALTERS RATNER LLP**
         June 19, 2015                            777 Third Avenue, 31st Floor
                                                         New York, New York 10017
                                                         (212) 751-9800

                                                         *Attorneys for Plaintiff Hanna Bouveng*

**Introduction**

Contrary to the Defendants' contentions that Plaintiff's counsel's April 29, 2014 letter and May 7, 2014 email to Defendant Benjamin Wey constitute extortion, these communications were protected activity, were not improper, and certainly did not constitute criminal extortion under New York or Federal law. The communications were premised upon, and informed the Defendants of colorable legal claims and did not demand that the Defendants relinquish money, property, or any legal rights. Moreover, the purpose of the communications was to air Plaintiff's legal grievances against Mr. Wey and New York Global Group, to request that Mr. Wey and New York Global Group stop engaging in criminal activity, *i.e.*, contacting and intimidating potential witnesses for Plaintiff's case (a felony), and to inform Mr. Wey and New York Global Group about the possibility of litigation. As the April 29, 2014 letter and the May 7, 2014 email were permissible pre-litigation communications that were in no way improper or extortionate, the jury should be so informed.

**I.      Plaintiff's Counsel's April 29, 2014 Letter and May 7, 2014 Email Constitute Permissible Pre-Litigation Communications, and are not Extortionate under New York or Federal Law.**

**i.      Plaintiff's Counsel's Pre-Suit Communications with Defendants**

Plaintiff's counsel sent pre-litigation correspondence to Defendants Benjamin Wey and New York Global Group in order to air Plaintiff's legal grievances against the Defendants and to request that the Defendants cease their illegal, harassing, retaliatory, and defamatory actions against the Plaintiff. The April 29, 2014 and May 7, 2014 communications with the Defendants constitute permissible pre-litigation correspondence asserting legitimate, colorable legal claims and are not extortionate.

## ii. Extortion Statutes

Criminal extortion pursuant to New York law falls into two categories: (1) "larceny by extortion" (compelling a person to surrender property); and (2) "coercion" (compelling a person to do an act or refrain from doing an act which that person has a legal right not to do or to do). *See* New York Penal Law § 155 *et seq.* and New York Penal Law § 135 *et seq.*; *see also United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1130–32 (E.D.N.Y. 1992) (describing the two crimes and explaining their distinctions). Larceny by extortion is defined as:

> 1. A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.
> 2. Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed in any of the following ways:
> ***
> e) By extortion.
> A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will:
> (i) Cause physical injury to some person in the future; or
> (ii) Cause damage to property; or
> (iii) Engage in other conduct constituting a crime; or
> (iv) Accuse some person of a crime or cause criminal charges to be instituted against him; or
> (v) Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule; or
> (vi) Cause a strike, boycott or other collective labor group action injurious to some person's business; except that such a threat shall not be deemed extortion when the property is demanded or received for the benefit of the group in whose interest the actor purports to act; or
> (vii) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or
> (viii) Use or abuse his position as a public servant by performing some act within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely; or
> (ix) Perform any other act which would not in itself materially benefit the actor but which is calculated to harm another person materially with respect to his health,

2

> safety, business, calling, career, financial condition, reputation or personal relationships.

New York Penal Law § 155.05 (emphasis added). Moreover, a "larceny by extortion" charge is subject to the following defense:

> In any prosecution for larceny by extortion committed by instilling in the victim a fear that he or another person would be charged with a crime, it is an affirmative defense that the defendant reasonably believed the threatened charge to be true and that his sole purpose was to compel or induce the victim to take reasonable action to make good the wrong which was the subject of such threatened charge.

New York Penal Law § 155.15. Federal Law likewise makes it a criminal offense for a person to "obtain[ ] [the] property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C.A. § 1951(b)(2).

### iii. Plaintiff's Counsel's April 29, 2014 and May 7, 2014 Communications are not Extortionate.

Here, Plaintiff's counsel's pre-litigation correspondence with the Defendants did not, and was not intended to, unlawfully compel the Defendants to surrender property or to relinquish any legal rights. The April 29, 2014 letter to Benjamin Wey informed Mr. Wey and New York Global Group that Plaintiff was considering proceeding with litigation and that evidence proffered in that litigation might be embarrassing, requested that Mr. Wey cease contacting Plaintiff and/or her family, friends, and associates, and informed Mr. Wey that Plaintiff's counsel would perform research as to whether his actions as of that date rose to the level of criminal misconduct. The letter <u>did not</u> demand money, <u>did not</u> threaten to embarrass Mr. Wey if he refused to give Plaintiff money, <u>did not</u> detail any potentially embarrassing facts, and <u>did not</u> threaten to file criminal charges if Mr. Wey refused to give Plaintiff money. Indeed, the Defendants' contention that the April 29, 2014 letter accused Mr. Wey of rape is wholly unfounded. The letter does not mention rape or sexual assault at all. Rather, the only criminal

3

activity the letter alludes to is Mr. Wey's conduct in contacting and intimidating potential witnesses in this case, and the letter does not threaten the filing of charges as to that conduct; it requests that Mr. Wey cease such conduct.  It also informs the Defendant that we are investigating whether his intimidating conduct to date rises to the level where law enforcement should be notified.  The May 7, 2014 email to Mr. Wey likewise informed Mr. Wey that Plaintiff was considering proceeding with litigation and that embarrassing facts might be exposed in the course of that litigation (enclosing a copy of the Complaint), and stating that if Mr. Wey continued to contact Plaintiff and her friends or family, she would obtain an order of protection and restraining order.  It does not threaten criminal prosecution.

As the statements in the April 29, 2014 letter and the May 7, 2014 email were not aimed at depriving Mr. Wey of money, property, or any legal rights, did not threaten Mr. Wey with criminal charges or with the exposure of any prejudicial or embarrassing fact irrelevant or unrelated to the contemplated litigation, and were intended to inform Mr. Wey of impending colorable legal claims and to request that he cease illegal conduct, those statements <u>do not</u> constitute extortion under federal or state law.  *See State v. Rendelman*, 404 Md. 500, 515 (2008); *Malin v. Singer*, 217 Cal. App. 4th 1283, 1299–1300 (2013), *review denied* (Oct. 23, 2013) (concluding that an attorney's pre-suit demand letter did not constitute extortion where, *inter alia*, the embarrassing "secret" that the letter threatened to reveal via litigation "was inextricably tied to his client's pending complaint").  Indeed, Plaintiff's counsel's April 29, 2014 letter and May 7, 2014 email were aimed at warning the Defendants of impending litigation, and federal cases have repeatedly held that "a threat of litigation, even if meritless, does not constitute [extortion, *i.e.*,] wrongful use of actual or threatened force, violence, or fear."  *See, e.g.*, *Kerik v. Tacopina*, 64 F. Supp. 3d 542 (S.D.N.Y. 2014); *DIRECTV, Inc. v. Cavanaugh*, 321

4

F. Supp. 2d 825, 834–35 (E.D. Mich. 2003) ("Generally, a threat to file a lawsuit, even if made in bad faith, does not constitute extortion"); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 457 (S.D.N.Y. 2014); *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 256–59 (S.D.N.Y. 2001) ("Threats of litigation, and even threats of meritless litigation or the actual pursuit of such litigation, have been held not to constitute acts of extortion"); *Rendelman*, 404 Md. at 520 ("Looking to the federal jurisdictions that have analyzed this same issue under the statutory language of the Hobbs Act, we note that a majority of the federal jurisdictions have held that a threat to file a law suit unless a settlement demand is accepted, regardless of whether the threat was made in good faith, is not a wrongful threat") (citing cases); *In re Vaughan Co., Realtors*, Case No. 10-10759, 2014 WL 585288, at *3 (Bankr. D.N.M. Feb. 14, 2014) ("Sending a demand letter before commencing litigation is fairly common; it is not wrongful, nor does it constitute a criminal threat").  Here, Plaintiff's threat of litigation was meritorious and Plaintiff in fact filed the lawsuit her counsel described to the Defendants in the pre-suit communications.

Moreover, Pre-litigation letters are commonplace, serve a valuable purpose, and are typically not even sanctionable, let alone criminal.  *See Greenberg v. Chrust*, 297 F. Supp. 2d 699, 703–705 (S.D.N.Y. 2004).  In *Greenberg*, the defendant moved for sanctions against plaintiff and his counsel, alleging bad faith in prosecution of the action.  *Id.*  The court denied the motion and rejected, *inter alia*, the defendant's argument that the plaintiff's "pre-litigation letter as indicative of [ ] improper purpose." *Id.*  The court explained:

> [Plaintiff's pre-litigation] letter did not present empty threats. Rather, he had a good faith belief that his claim had merit and that additional law suits could be brought against [defendant], as he demonstrated by subsequently filing suit and vigorously defending against [defendant's] motion to dismiss and motions for summary judgment (twice successfully). [Plaintiff's] letter merely represents his attempt to reach a settlement and avoid the time and expense of litigation. Such attempts at

5

> settlement are protected. *Revson v. Cinque & Cinque*, 221 F.3d 71, 79–80 (2d Cir. 2000) (refusing to impose sanctions against plaintiff's counsel for issuing a settlement letter which employed offensive language and threatened to tarnish defendant's reputation); *Sussman v. Bank of Israel*, 56 F.3d 450 (2d Cir. 1995) (reversing sanctions imposed for pre-litigation letter threatening suit). As the Second Circuit explained, "prelitigation letters airing grievances and threatening litigation if they are not resolved are commonplace, sometimes with salutary results, and do no[t] suffice to show an improper purpose if nonfrivolous litigation is eventually commenced." *Id.* at 459.

*Greenberg v. Chrust*, 297 F. Supp. 2d at 70 (S.D.N.Y. 2004); *see also Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) ("It is hardly unusual for a would-be plaintiff to seek to resolve disputes without resorting to legal action; pre-litigation letters airing grievances and threatening litigation if they are not resolved are commonplace, sometimes with salutary results, and do not suffice to show an improper purpose if nonfrivolous litigation is eventually commenced"). Pre-litigation letters that are "repugnant" and that threaten to tarnish a defendant's reputation are likewise not sanctionable. *See Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79–81 (2d Cir. 2000). In *Revson*, the Second Circuit, *inter alia*, rejected the district court's conclusion that the plaintiff's counsel's threatening to tarnish defendant's reputation in a pre-litigation letter constituted a sound basis for the imposition of sanctions. *Id.* at 80. The Court explained:

> An attorney is entitled to warn the opposing party of his intention to assert colorable claims, as well as to speculate about the likely effect of those claims being brought. In *Sussman v. Bank of Israel*, for example, we overturned Rule 11 sanctions based on the attorney's having written a prelitigation letter warning of adverse publicity if the claims were to come to public attention . . . . Similarly, the court's concern that [plaintiff's counsel] had in fact tarnished [defendant's] reputation by speaking with a news reporter was not a proper basis for sanctions.

*Revson*, 221 F.3d at 80. Here, Plaintiff's counsel's pre-litigation communications were a permissible attempt to air grievances pre-suit and are not improper or extortionate. Pre-litigation demand letters are a common and integral part of an attorney's zealous representation, and deeming said letters extortionate merely chills free speech and hinders effective advocacy.

6

This Court requested that the parties address the applicability of *U.S. v. Jackson*, 196 F.3d 383 (2d Cir. 1999), to this matter, but *Jackson* is readily distinguishable. In *Jackson*, the defendants were accused and convicted of criminal extortion because they attempted to obtain money from Bill Cosby by threatening to injure his reputation by "caus[ing] tabloid newspapers to publish Jackson's claim to be Cosby's daughter out-of-wedlock." *United States v. Jackson*, 180 F.3d 55, 59 (2d Cir. 1999). Ms. Jackson's communications with Mr. Cosby were not made in furtherance of any contemplated, valid litigation and were instead extortionate demands that Mr. Cosby give her money or suffer embarrassing consequences. Indeed, the underlying District Court decision in the *Jackson* case noted that extortion statutes are designed to "punish threats made to obtain property for 'selfish gain' or personal benefit from a victim in a private, bilateral transaction akin to robbery," and that the defendants' actions therein "were precisely the kind of private transaction, motivated purely by selfish gain, that extortion statutes have always validly punished." *United States v. Jackson*, 986 F. Supp. 829, 835 (S.D.N.Y. 1997) *vacated*, 180 F.3d 55 (2d Cir. 1999) *on reh'g*, 196 F.3d 383 (2d Cir. 1999) and *aff'd*, 196 F.3d 383 (2d Cir. 1999). Accordingly, the key distinction between Ms. Jackson's demands and the communications at issue here is that Ms. Jackson threatened to embarrass Cosby if he didn't pay, while Plaintiff and Plaintiff's counsel, in an effort to explore the possibility of pre-litigation discussions to resolve the parties' grievances, validly <u>threatened colorable litigation</u> and stated that embarrassing evidence might come to light in the course of that litigation (<u>and</u> without demanding money). Jackson's actions were akin to robbery; the actions of Plaintiff and her counsel certainly were not. As the defendants' demands in *Jackson* were not made in connection with asserting colorable legal claims against Mr. Cosby, *Jackson* is readily distinguishable and does not warrant a finding that Plaintiff's counsel's pre-suit communications were extortionate.

7

**Conclusion**

Plaintiff's counsel's pre-litigation communications with the Defendants were in no way improper or extortionate and the jury should be so informed.

Dated: June 19, 2015
New York, NY

Respectfully submitted,

/s_____
David S. Ratner
**MORELLI ALTERS RATNER LLP**
777 Third Avenue, 31st Floor
New York, New York 10017
(212) 751-9800

*Attorneys for Plaintiff Hanna Bouveng*