UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HANNA BOUVENG,

                              Plaintiff,

           – against –

NYG CAPITAL LLC d/b/a NEW YORK
GLOBAL GROUP, NYG CAPITAL LLC
d/b/a FNL MEDIA LLC, and BENJAMIN
WEY,

                              Defendants.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/29/15

14 Civ. 5474 (PGG) (DCF)

## JURY INSTRUCTIONS

June 26, 2015

# TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | | GENERAL INTRODUCTORY INSTRUCTIONS | 4 |
| | A. | Introductory Remarks | 4 |
| | B. | Role of the Court | 4 |
| | C. | Role of the Jury | 5 |
| | D. | Role of Counsel | 5 |
| | E. | Sympathy or Bias | 5 |
| | F. | Burden of Proof | 6 |
| | G. | What Is and Is Not Evidence | 7 |
| | H. | Direct and Circumstantial Evidence | 8 |
| | I. | Witness Credibility | 9 |
| | J. | Prior Inconsistent Statements | 10 |
| | K. | Bias of Witnesses | 11 |
| | L. | Opinion Testimony | 12 |
| | M. | Preparation of Witnesses | 12 |
| | N. | Stipulations | 12 |
| II. | | SUBSTANTIVE INSTRUCTIONS | 13 |
| | A. | The Parties | 13 |
| | B. | Plaintiff's Claims | 13 |
| | C. | New York State Human Rights Law and New York City Human Rights Law *Quid Pro Quo* Sexual Harassment Claims | 14 |
| | | 1. First Element: Unwelcome Sexual Conduct | 15 |
| | | 2. Second Element: Reaction Used as a Basis for Concrete Employment Actions | 15 |
| | | 3. Liability of New York Global Group and FNL Media | 17 |
| | D. | New York State Human Rights Law Retaliation Claim | 19 |
| | | 1. Overview of Elements | 19 |
| | | 2. New York State Human Rights Law Retaliation – First Element – "Protected Activity" | 20 |
| | | 3. New York State Human Rights Law Retaliation – Second Element – Knowledge of Protected Activity | 21 |
| | | 4. New York State Human Rights Law Retaliation – Third Element – Material Adverse Action | 21 |
| | | 5. New York State Human Rights Law Retaliation – Fourth Element – Retaliatory Motive | 23 |

|  |  | a. | Circumstantial Evidence of Retaliatory Motive .................................. 25 |
|  |  | b. | Non-Retaliatory Reasons.................................................................... 26 |

| | 6. | New York State Human Rights Law Retaliation – Liability of NYGG and FNL Media............................................................................................ 27 |
| | 7. | New York State Human Rights Law Retaliation – Affirmative Defense . 30 |

E. New York City Human Rights Law Retaliation Claim ........................................ 30

| | 1. | Overview of Elements.............................................................................. 30 |
| | 2. | New York City Human Rights Law Retaliation – First Element – Protected Activity ..................................................................................... 31 |
| | 3. | New York City Human Rights Law Retaliation – Second Element – Knowledge of Protected Activity............................................................... 31 |
| | 4. | New York City Human Rights Law Retaliation – Third Element – Conduct Reasonably Likely To Deter....................................................... 32 |
| | 5. | New York City Human Rights Law Retaliation – Fourth Element – Retaliatory Motive ................................................................................... 33 |
| | 6. | New York City Human Rights Law Retaliation – Liability of NYGG and FNL Media............................................................................................ 34 |
| | 7. | New York City Human Rights Law Retaliation – Affirmative Defense .. 36 |

F. Assault Claim........................................................................................................ 37

G. Battery Claim ....................................................................................................... 38

H. Defamation Claim................................................................................................. 38

| | 1. | First Element – Defamatory Statement..................................................... 38 |
| | | a. Statement Charging a Serious Crime .................................................. 39 |
| | | b. Statement Injurious to Trade, Business, or Profession........................ 39 |
| | | c. Statement Imputing Unchastity .......................................................... 40 |
| | 2. | Second Element – Statement Concerning Plaintiff.................................... 40 |
| | 3. | Third Element – Statement Published by One or More Defendant .......... 41 |
| | 4. | Fourth Element – Falsity.......................................................................... 44 |
| | 5. | Fifth Element – Negligent Publication ..................................................... 44 |
| | 6. | Sixth Element – Actual Harm ................................................................... 45 |

I. Damages................................................................................................................ 45

| | 1. | General Instructions................................................................................. 45 |
| | 2. | Compensatory Damages ........................................................................... 46 |
| | | a. Compensatory Damages on Defamation Claim ................................... 47 |
| | | b. Compensatory Damages on Remaining Claims – Emotional Distress .................................................................................................................. 47 |
| | | c. No Damages for Harm Caused to Others ............................................ 48 |

|   |   |   | d. | No Economic Damages | 49 |
|---|---|---|----|----|----|
|   |   | 3. |   | Punitive Damages | 49 |
|   |   |   | a. | Punitive Damages – New York City Human Rights Law Claims | 50 |
|   |   |   | b. | Punitive Damages – Assault and Battery Claims | 51 |
|   |   |   | c. | Punitive Damages – Defamation Claim | 51 |
| III. | | | | Final Instructions on Procedure | 52 |
| | A. | | | Right to See Exhibits and Hear Testimony; Communications With Court | 52 |
| | B. | | | Duty to Deliberate/Unanimous Verdict | 53 |
| | C. | | | Verdict Form | 53 |
| | D. | | | Duties of Foreperson | 54 |
| | E. | | | Return of Verdict | 54 |
| IV. | | | | CONCLUSION | 54 |

# I. GENERAL INTRODUCTORY INSTRUCTIONS

## A. Introductory Remarks

Members of the jury, I will now instruct you as to the law that governs this case. You have been handed a copy of the instructions I will read. You should feel free to read along or to just listen to me. You will be able to take your copy of these instructions into the jury room.

You have heard all of the evidence in the case as well as the final arguments of the parties. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict.

There are three parts to these instructions. First, I'll give you general instructions about your role, and how you are to go about deciding the factual issues in this case. Second, I'll give you instructions concerning the law applicable to this particular case. Third, I'll give you final instructions about procedure.

Please listen carefully. I'm reading these instructions from a prepared text because the law is made up of words, and those words are very carefully chosen. This is not a time to ad lib. So when I tell you what the law is, it is critical that I use exactly the right words.

## B. Role of the Court

My duty is to instruct you on the law. It is your duty to accept these instructions of law and to apply them to the facts as you determine them. With respect to legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction. You must not substitute your own notions or opinions of what the law is or what you think it ought to be.

4

## C. Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You decide what happened. You must determine the facts based solely on the evidence received in this trial. Any opinion I might have regarding the facts is of absolutely no consequence.

## D. Role of Counsel

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed an opinion of any kind as to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, that should not enter into your deliberations.

From time to time, the lawyers and I had conferences at the bench and other conferences out of your hearing. These conferences involved procedural and evidentiary matters, and should not enter into your deliberations at all.

Lawyers have a duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible. It is my responsibility to rule on those objections. Why an objection was made is not your concern. You should not draw any inference simply from the fact that a lawyer objects to a question. If I sustained the objection, you may not consider the testimony or exhibit at issue; if I overruled the objection, you may consider the testimony or exhibit just as you would any other evidence in the case.

## E. Sympathy or Bias

You must evaluate the evidence calmly and objectively, without prejudice or sympathy. You must be completely fair and impartial. Your verdict must be based solely on the evidence presented at this trial, or the lack of evidence. Our system of justice cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

You may not consider, in deciding the facts of the case, any personal feelings you

5

may have about the race, national origin, sex or age of any party or witness. You must regard the parties as of equal standing in the community, and of equal worth. All parties are entitled to the same fair trial at your hands. They stand equal before the law, and are to be dealt with as equals in this court.

The plaintiff in this case – Hanna Bouveng – is an individual. Two of the Defendants – NYG Capital LLC and FNL Media LLC – are corporations. The remaining defendant – Benjamin Wey – is an individual. The mere fact that NYG Capital LLC and FNL Media LLC are corporations does not entitle them to any greater or lesser consideration by you. All litigants stand equal before the law, and corporations are entitled to the same fair consideration you would give any other party.[1]

## F.    Burden of Proof

The preponderance of the evidence standard applies to all disputed issues in this case.

To establish by a preponderance of the evidence means that the evidence of the party having the burden of proof must be more convincing and persuasive to you than the evidence opposed to it. A preponderance of the evidence means the greater weight of the evidence. The difference in persuasiveness need not be great: it requires only that you find that the scales tip, however slightly, in favor of the party having the burden of proof – that what that party claims is more likely than not true. If you find that the credible evidence as to a particular issue is evenly divided, then you must find in favor of the party not having the burden of proof on that issue.

What is important here is the quality and persuasiveness of the evidence relied on

---

[1] Based on jury charge in Securities & Exchange Comm. v. Reserve Mgmt. Co. Inc., et al., No. 09 Civ. 4346 (PGG).

by a party, and not the number of witnesses or exhibits that party introduced, or the length of time that party spent on a particular subject. In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all of the witnesses and all of the exhibits, regardless of which party introduced this evidence. Simply because I have permitted certain evidence to be introduced does not mean that I have decided that it is important or significant. That is for you to decide.

G. **What Is and Is Not Evidence**

In determining the facts, you must rely upon your recollection of the evidence. The evidence in this case includes the testimony of the witnesses, the exhibits received in evidence, and stipulations – or agreements – as to certain facts entered into by the parties. Some of the testimony you heard in this case was taken at pre-trial depositions. The deposition testimony was given under oath and should be treated by you just like testimony given from the witness stand here in the courtroom.

As I instructed you at the outset of the trial, you are not to consider questions asked by the lawyers as evidence. It is the witnesses' answers that are evidence, not the questions. The questions are significant only insofar as they put the answers in context.

I sometimes asked witnesses questions. You should draw no inference from that. My questions were only intended for clarification or to expedite matters and were not intended to suggest any opinion on my part as to whether any witness was more or less credible than any other witness, or any view as to what your verdict should be.

When I ordered that testimony be disregarded or stricken from the record, you may not consider that testimony in rendering your verdict.

From time to time I received evidence for a limited purpose. For example, there were occasions in which I instructed you that certain testimony was not being offered for its

truth, and could be considered only as to a witness's state of mind. Where evidence was received only for a limited purpose, you may consider it only for that purpose.

To constitute evidence, exhibits must first be received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

Arguments by the lawyers are also not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their closing arguments may help you understand the evidence and assist you in reaching a verdict, but these arguments are not evidence. Moreover, if your recollection of the evidence differs from the statements made by the lawyers in their arguments to you, it is your recollection that controls.

Finally, any statements that I may have made during the trial do not constitute evidence. Similarly, any statements or rulings I have made during the trial are not any indication of my views as to what your decision should be. The decision here is for you alone.

It is for you alone to decide what weight, if any, should be given to the testimony and the exhibits received in evidence in this case.

**H.    Direct and Circumstantial Evidence**

Generally, there are two types of evidence that you may consider in reaching your verdict.

Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses – something seen, felt, touched, or heard. For example, if a witness were to testify that when he or she left home this morning, it was raining, that would be direct evidence about the weather. Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence from which you may infer the existence of . certain facts. For example, assume that when you came into the courthouse this morning the sun

8

was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella, which was dripping wet. Then a few minutes later another person entered with a wet raincoat. Now, you cannot look outside the courtroom and you cannot see whether it is raining. So you have no direct evidence of that fact. But based on the facts that I have asked you to assume, you could conclude that it had been raining.

That is all there is to circumstantial evidence. On the basis of reason, experience and common sense, you infer from one established fact the existence or non-existence of some other fact.

The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. A proper inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven. It is often the case that material facts – such as what a person was thinking or intending – are not easily proven by direct evidence. Proof of such matters is often established by circumstantial evidence.

Circumstantial evidence is of no less value than direct evidence.

## I. **Witness Credibility**

You should evaluate the credibility or believability of the witnesses by using your common sense. Common sense is your greatest asset as a juror. Ask yourself whether the witness appeared honest, open and candid. Did the witness appear evasive or as though he or she was trying to hide something? How did the witness's responsiveness on direct examination compare to that witness's responsiveness on cross-examination?

If you find that any witness has lied under oath at this trial, or lied under oath in an earlier proceeding, you should view the testimony of that witness cautiously and weigh it with great care. It is for you to decide, however, how much of that witness's testimony, if any, you

9

wish to believe. Few people recall every detail of every event precisely the same way. A witness may be inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and truthful in other respects. It is for you to determine whether such inconsistencies are significant or inconsequential, and whether to accept or reject all, or to accept some and reject the balance of, that witness's testimony.

In sum, it is up to you to decide whether a witness's testimony is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, to give to that witness's testimony.

In evaluating the testimony of any witness, you may consider, among other things:

- the witness's intelligence;

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the manner of the witness while testifying; and

- the reasonableness of the witness's testimony in light of all the evidence in the case, including testimony from other witnesses and the exhibits that have been received in evidence.

## J.     **Prior Inconsistent Statements**

You have heard evidence that, at some earlier time, witnesses have said or done something that counsel argues is inconsistent with their trial testimony.

Evidence of prior allegedly inconsistent statements was introduced to help you decide whether to believe the trial testimony of a witness. If you find that a witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with an insignificant detail; whether the witness had an explanation for the inconsistency, and whether that explanation accords with your common sense.

It is exclusively your decision, based upon all the evidence and your own good judgment, whether the prior statement was inconsistent, and if so how much weight, if any, to give the inconsistent statement in determining whether to believe all, or part, of that witness's testimony.

## K.     **Bias of Witnesses**

In deciding whether to believe a witness, you should consider any evidence that the witness is biased in favor of, or against, one side or the other. Likewise, you should consider evidence of any interest or motive that the witness may have in cooperating with one side or the other. You should also take into account any evidence that a witness may benefit in some way from the outcome of the case.

It is your duty to consider whether any witness has permitted bias or interest to color his or her testimony. If so, you should view that witness's testimony with caution, weigh it with great care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness has an interest in the outcome of this case does not mean that the witness has not told the truth. It is for you to decide from your observations and applying your common sense and experience whether the possible interest of any witness has intentionally or otherwise colored or distorted that witness's testimony. You are not required to disbelieve a witness with an interest in the outcome of this case; you may accept as much of that witness's testimony as you deem reliable and reject as much as you deem

11

## L. Opinion Testimony

Dr. Barbara Ziv was permitted to express opinions about Ms. Bouveng's mental state, because she possesses specialized knowledge as a result of her education, training, and work experience. In weighing Dr. Ziv's testimony, you may consider her qualifications, the stated basis for her opinions, the reasons she gave for her opinions, the reliability of the information supporting those opinions, as well as all the factors I have previously mentioned for evaluating witness testimony. You may also consider the compensation she received in connection with this case. To the extent you find her opinion testimony credible and reliable, you may rely on it. To the extent you do not, you need not rely on her testimony. Opinion testimony should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

## M. Preparation of Witnesses

You heard evidence that certain witnesses discussed the facts of the case and their testimony with lawyers before the witness appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, you should be aware that there is nothing unusual or improper about a witness meeting with lawyers before testifying. Indeed, it would be unusual for a lawyer to call a witness to testify without such preparation.

## N. Stipulations

You have heard evidence in the form of stipulations, or agreements, as to certain facts or as to testimony a person would give if called to testify. Where the parties have entered into an agreement as to certain facts, you must regard the agreed-upon facts as true. Where the

12

parties have stipulated as to what a witness would say if called to testify, you must accept the parties' agreement as to what the witness would say.

## II.    SUBSTANTIVE INSTRUCTIONS

I will now turn to the law applicable to the specific claims in this case.

### A.    The Parties

As you know, the plaintiff in this case is Hanna Bouveng. The defendants are Benjamin Wey, NYG Capital LLC (d/b/a New York Global Group), and FNL Media LLC. I will refer to NYG Capital LLC as "New York Global Group."

### B.    Plaintiff's Claims

Ms. Bouveng claims that Mr. Wey violated the New York State Human Rights Law and New York City Human Rights Law by subjecting her to unwelcome sexual advances and by using her reaction to those unwelcome sexual advances as a basis for decisions concerning her employment. Ms. Bouveng claims that New York Global Group and FNL Media are liable for Mr. Wey's conduct, because of the positions he held at these companies. Ms. Bouveng further alleges that all of the Defendants violated these same statutes by retaliating against her for complaining about Mr. Wey's alleged conduct.

Ms. Bouveng has also brought assault and battery claims against Mr. Wey, and a defamation claim against all Defendants based on statements published in an internet publication called The Blot Magazine, which is allegedly owned by Defendant FNL Media LLC. Ms. Bouveng claims that Mr. Wey is the publisher of The Blot Magazine and the author of the alleged defamatory statements in it.

The Defendants deny all of Ms. Bouveng's claims. They contend that Mr. Wey did not subject Ms. Bouveng to unwelcome sexual advances and they deny retaliating against her. Defendants further contend that Ms. Bouveng's employment at New York Global Group

13

was terminated for lawful reasons. Mr. Wey denies having committed assault and battery, and all Defendants contend that any statements made about Ms. Bouveng, including those in The Blot Magazine, were not defamatory and were not made in retaliation for any activities by Ms. Bouveng that the law protects.

You should be aware that you will be asked to render separate verdicts as to each Defendant and as to each of Ms. Bouveng's claims. Accordingly, you will be required to separately consider Ms. Bouveng's claims against each Defendant, and what the evidence is as to each Defendant and as to each claim. Keep in mind that, in order to prevail, Ms. Bouveng must prove each element of her claims by a preponderance of the evidence.

## C. New York State Human Rights Law and New York City Human Rights Law *Quid Pro Quo* Sexual Harassment Claims[2]

I will now turn to the law that governs Ms. Bouveng's claim for quid pro quo sexual harassment under the New York State Human Rights Law and the New York City Human Rights Law.

The New York State and City Human Rights Laws make it an unlawful discriminatory practice for an employer to refuse to hire, to discharge, or to discriminate in compensation or in terms, conditions, or privileges of employment because of the sex of any individual.

Here, Ms. Bouveng alleges that Mr. Wey, New York Global Group, and FNL Media violated the State and City Human Rights Law by engaging in what is called "quid pro quo sexual harassment." To prevail on her State and City Human Rights Law quid pro quo sexual harassment claims against Mr. Wey, Ms. Bouveng must establish, by a preponderance of the evidence, that

---

[2] Based on New York PJI § 9 I Intro. 1.

14

(1) she was subjected to unwelcome sexual conduct by Mr. Wey; and

(2) her reaction to that conduct was then used as a basis for concrete employment actions affecting her.[3]

I will now explain these elements in detail.

### 1. First Element: Unwelcome Sexual Conduct

Ms. Bouveng must first prove by a preponderance of the evidence that Mr. Wey made sexual advances to her and that these advances were unwelcome. To determine whether Mr. Wey's alleged advances were unwelcome, you must consider whether or not Ms. Bouveng and Mr. Wey were engaged in a consensual sexual relationship. An employee's participation in a consensual sexual relationship with his or her employer does not constitute quid pro quo sexual harassment.[4] However, if you find that Ms. Bouveng and Mr. Wey engaged in a consensual sexual relationship for a period of time, but that Mr. Wey's sexual advances later became unwelcome, Ms. Bouveng is not precluded from recovering for quid pro quo sexual harassment.

### 2. Second Element: Reaction Used as a Basis for Concrete Employment Actions

Ms. Bouveng must also prove that her reaction to Mr. Wey's alleged unwelcome

---

[3] See Alexander v. Westbury Union Free Sch. Dist., 829 F. Supp. 2d 89, 108 (E.D.N.Y. 2011) ("Quid pro quo sexual harassment occurs when submission to or rejection of improper or unwelcome sexual conduct by an individual is used as the basis for employment decisions affecting such individual. . . . In addition to showing that she was subjected to unwelcome sexual advances, a plaintiff seeking to state a claim of quid pro quo sexual harassment must also demonstrate a tangible employment action, i.e., that an explicit . . . alteration[] in the terms or conditions of employment resulted from her refusal to submit to . . . sexual advances.") (internal quotation marks and citations omitted).

[4] Kahn v. Objective Solutions, Int'l, 86 F. Supp. 2d 377, 381 (S.D.N.Y. 2000) ("New York courts have held that employment decisions predicated upon the existence or termination of consensual romantic relationships do not give rise to claims of gender discrimination. . . . [Plaintiff] has not asserted that her continued sexual relationship with [her supervisor] was an unwelcome condition of her employment, or that she was discharged because of her refusal to submit to sexual requests. Instead, she asserts that she was discharged in the wake of [her supervisor's] decision to terminate their relationship. This does not constitute quid pro quo harassment.")

15

sexual advances was used as a basis for concrete employment actions that affected her. A central issue in a quid pro quo sexual harassment case is whether the employer has expressly or tacitly linked concrete job benefits to the acceptance or rejection of sexual advances.[5] Ms. Bouveng must thus show either that (1) she rejected Mr. Wey's unwelcome sexual advances and suffered concrete employment-related consequences, or (2) she submitted to his unwelcome sexual advances in order to avoid concrete employment-related consequences.[6]

Concrete employment actions include a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in employee benefits.[7]

Ms. Bouveng must demonstrate that Mr. Wey took concrete employment actions regarding her employment based on her reaction to his alleged unwelcome sexual advances. Ms. Bouveng need not prove, however, that Mr. Wey took such actions based solely on her reaction to his unwelcome sexual advances. Ms. Bouveng can prove the second element of a quid pro quo sexual harassment claim under the State and City Human Rights Laws by showing that Mr. Wey was motivated in part by her reaction to his unwelcome sexual advances, even if he also

---

[5] Father Belle Cmty. Ctr. v. New York State Div. of Human Rights on Complaint of King, 221 A.D.2d 44, 50 (4th Dep't 1996) ("The issue in a quid pro quo case is whether the supervisor has expressly or tacitly linked tangible job benefits to the acceptance or rejection of sexual advances; a quid pro quo claim is made out whether the employee rejects the advances and suffers the consequences or submits to the advances in order to avoid those consequences.") (citing Karibian v. Columbia Univ., 14 F.3d 773, 778 (2d Cir. 1994)).

[6] See Father Belle Cmty. Ctr., 221 A.D.2d at 50 ("[A] quid pro quo claim is made out whether the employee rejects the advances and suffers the consequences or submits to the advances in order to avoid those consequences.").

[7] Alexander, 829 F. Supp. 2d at 108 ("'Tangible employment actions' include 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'") (citation omitted); see also Hill v. Children's Vill., 196 F. Supp. 2d 389, 397 (S.D.N.Y. 2002); Perks v. Town of Huntington, 251 F. Supp. 2d 1143, 1155 (E.D.N.Y. 2003).

16

had other, lawful motives for his actions.[8]

If you find that Ms. Bouveng has proved both of these elements by a preponderance of the evidence, you will find in favor of Ms. Bouveng on her New York State and City Human Rights Law quid pro quo sexual harassment claims against Mr. Wey.

### 3. Liability of New York Global Group and FNL Media

Ms. Bouveng also asserts New York State and City Human Rights Law quid pro quo sexual harassment claims against New York Global Group and FNL Media. In order for you to find either New York Global Group or FNL Media liable under the New York State or City Human Rights Laws, you must find that New York Global Group or FNL Media was the employer of Ms. Bouveng.

In assessing Ms. Bouveng's claim against New York Global Group, you must consider whether (1) Ms. Bouveng was an employee of New York Global Group; and (2) Mr. Wey – while acting in the course of his employment with New York Global Group – unlawfully engaged in quid pro quo sexual harassment against Ms. Bouveng. If you find that Ms. Bouveng was employed by New York Global Group, and that Mr. Wey – while acting in the course of his employment with New York Global Group – unlawfully engaged in quid pro quo sexual harassment against Ms. Bouveng, you will find New York Global Group liable for quid pro quo

---

[8] Weber v. City of New York, 973 F. Supp. 2d 227, 250 (E.D.N.Y. 2013) (citing Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2522-23 (2013) ("An employee who alleges status-based discrimination under Title VII need not show that the causal link between injury and wrong is so close that the injury would not have occurred but for the act. So-called but-for causation is not the test. It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision.")); see also Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997) ("We have repeatedly noted that claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII.").

17

sexual harassment under the New York State and New York City Human Rights Laws.[9]

Similarly, in assessing Ms. Bouveng's claims against FNL Media, you must consider whether (1) Ms. Bouveng was an employee of FNL Media; and (2) Mr. Wey – while acting in the course of his employment with FNL Media – unlawfully engaged in quid pro quo sexual harassment against Ms. Bouveng. If you find that Ms. Bouveng was employed by FNL Media, and that Mr. Wey – while acting in the course of his employment with FNL Media – unlawfully engaged in quid pro quo sexual harassment against Ms. Bouveng, you will find FNL Media liable for quid pro quo sexual harassment under the New York State and New York City Human Rights Laws.

If you find that either New York Global Group or FNL Media – but not both – is liable for quid pro quo sexual harassment, you must go on to consider whether New York Global Group and FNL Media constitute a "single employer" under the law. If the two companies constitute a "single employer," one company's liability on Ms. Bouveng's quid pro quo sexual harassment claim will be attributed to the other company.[10]

---

[9] "Because the quid pro quo harasser, by definition, wields the employer's authority to alter the terms and conditions of employment – either actually or apparently – the law imposes strict liability on the employer for quid pro quo harassment." Karibian v. Columbia Univ., 14 F.3d 773, 777-78 (2d Cir. 1994) (citing Kotcher v. Rosa and Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir. 1992) ("The supervisor is deemed to act on behalf of the employer when making decisions that affect the economic status of the employee."); Carrero v. New York City Housing Auth., 890 F.2d 569, 579 (2d Cir. 1989) ("[T]he harassing employee acts as and for the company, holding out the employer's benefits as an inducement to the employee for sexual favors."); see also Jin v. Metro. Life Ins. Co., 310 F.3d 84, 98 (2d Cir. 2002) ("Karibian's rule that an employer is automatically liable when a supervisor bases decisions affecting the terms and conditions of a subordinate's employment on the submission to sexual demands remains good law.").

[10] Lima v. Addeco, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009) ("Single integrated enterprises can include parent and wholly-owned subsidiary corporations or separate corporations that operate under common ownership and management. . . . Where two entities are deemed part of a single integrated enterprise, then both entities are subject to joint liability for employment-related acts.") (internal quotation marks and citations omitted); aff'd sub nom. Lima v. Adecco &/or Platform Learning, Inc., 375 Fed. App'x 54 (2d Cir. 2010).

To determine whether New York Global Group and FNL Media constitute a "single employer," you must consider whether the two companies had (1) interrelated operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.[11] The most important prong of the test is whether New York Global Group and FNL Media shared centralized control over labor relations.[12] The critical inquiry with respect to this prong is whether the two companies shared centralized control over tasks such as selecting, hiring, supervising, and terminating Ms. Bouveng and other similarly situated employees.[13]

If you find that Ms. Bouveng has established by a preponderance of the evidence that New York Global Group and FNL Media constitute a "single employer" under this test, FNL Media is liable for any quid pro quo sexual harassment attributable to New York Global Group, and New York Global Group is liable for any quid pro quo sexual harassment attributable to FNL Media.

## D. New York State Human Rights Law Retaliation Claim[14]

### 1. Overview of Elements

Ms. Bouveng has also brought a retaliation claim under the New York State Human Rights Law against Mr. Wey, New York Global Group, and FNL Media. The New York State Human Rights Law prohibits employers from retaliating against an employee for the

---

[11] With respect to the four-factor "single employer" test, courts have employed the Title VII standard to NYCHRL claims. See, e.g., Echevarria, 2014 WL 7250956, at *12-13; Fried v. LVI Servs., Inc., No. 10 Civ. 9308 (JSR), 2011 WL 2119748, at *1-7 (S.D.N.Y. May 23, 2011); Fowler v. Scores Holding Co., 677 F. Supp. 2d 673, 680-81 (S.D.N.Y. 2009); Dias v. Cmty. Action Project, Inc., No. 07 Civ. 5163 (NGG) (RER), 2009 WL 595601, at *1-3 (E.D.N.Y. Mar. 6, 2009).Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 155-57 (2d Cir. 2014).

[12] Parker v. Columbia Pictures Indus., 204 F.3d 326, 341 (2d Cir. 2000).

[13] Based on jury charge in Turley v. ISG Lackawanna, Inc., No. 06 Civ. 794.

[14] Based on jury charge in Mugavero v. Arms Acres, Inc., et al., No. 03 Civ. 5724 (PGG).

19

employee's opposition to unlawful discrimination – including sexual harassment – or an employee's opposition to unlawful retaliation.

In order to prove her retaliation claim under the State Human Rights Law, Ms. Bouveng must prove each of the following four elements by a preponderance of the evidence:

(1) that she engaged in a "protected activity," such as making a complaint about unlawful sexual harassment or unlawful retaliation to her employer;

(2) that the "protected activity" Ms. Bouveng engaged in was known to the defendant you are considering;

(3) that she suffered a "material adverse action;" and

(4) that the defendant you are considering took the material adverse action because of Ms. Bouveng's "protected activity."

## 2. New York State Human Rights Law Retaliation – First Element – "Protected Activity"

The first element of a retaliation claim under the New York State Human Rights Law is that the activity Plaintiff engaged in that resulted in retaliation against her was an activity protected by law. An employee has a right to report and protest workplace sexual harassment or retaliation where such harassment or retaliation has actually occurred, or where the employee reasonably believes in good faith that sexual harassment or retaliation occurred.

"Protected activity" includes an employee's conduct in opposing unlawful sexual harassment or unlawful retaliation by (1) complaining about sexual harassment or retaliation to the employer; or (2) by filing a complaint, testifying, or assisting in any proceeding brought under the State Human Rights Law. This lawsuit is a proceeding brought under the State Human Rights Law.

To prove that she engaged in protected activity, Ms. Bouveng need not establish that she was correct in her complaints or that there was indeed sexual harassment. She need only

20

show that she had a good faith, reasonable belief that the challenged actions by her employer violated the law.

Ms. Bouveng contends that she engaged in protected activity when (1) her lawyer sent a letter to Mr. Wey on April 29, 2014, threatening litigation against Mr. Wey; (2) her lawyer transmitted a draft complaint to Mr. Wey on May 7, 2014; and (3) she filed the Complaint that initiated this lawsuit on July 21, 2014.

It is for you to decide whether any of these actions constitute "protected activity" as I have defined that term.

### 3. New York State Human Rights Law Retaliation – Second Element – Knowledge of Protected Activity

The second element of a retaliation claim under the State Human Rights Law is that the defendant you are considering must have knew of the protected activity. General corporate knowledge that Plaintiff engaged in a protected activity is sufficient to establish this element of a retaliation claim under the New York State Human Rights Law.[15]

### 4. New York State Human Rights Law Retaliation – Third Element – Material Adverse Action

The third element of a retaliation claim under the State Human Rights Law is that Plaintiff suffered a material adverse action. Here, Ms. Bouveng contends that following constitute material adverse actions:

---

[15] Summa v. Hofstra Univ., 708 F.3d 115, 125-26 (2d Cir. 2013) ("Nothing more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity. . . .") (internal quotation marks and citation omitted); Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 844 (2d Cir. 2013) ("[F]or purposes of a prima facie case, a plaintiff may rely on 'general corporate knowledge' of her protected activity to establish the knowledge prong of the prima facie case."); Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 ("[B]y complaining to an officer of the company, . . . the plaintiff was in effect communicating her concerns about [her co-worker's] comments to [the company].").

(1) Mr. Wey's communications to Ms. Bouveng, to her family, and to her friends and business associates after April 29, 2014; and

(2) The Blot articles received in evidence, to the extent that statements in these articles (a) accuse Ms. Bouveng of a serious crime; (b) tend to injure Ms. Bouveng in her trade, business, or profession; and (c) impute unchastity to Ms. Bouveng. I will define a number of these terms in a moment, when I instruct you on Ms. Bouveng's defamation claim. The definitions of these terms in the defamation section of these instructions apply with equal force to Ms. Bouveng's New York State Human Rights Law and New York City Human Rights Law retaliation claims.

An adverse action is "material" if it would dissuade a reasonable worker from making or supporting a complaint of sexual harassment or retaliation.[16] Material adverse actions under the State Human Rights Law may include actions taken by the employer after the employee's employment has been terminated. Where, for example, an employer "blacklists" a former employee, wrongfully refuses to write a recommendation to prospective employers, or sullies the former employee's reputation by making disparaging and false statements about the former employee, such conduct may constitute a material adverse action.[17]

---

[16] Ballard v. Children's Aid Society, 781 F. Supp. 2d 198, 207 (S.D.N.Y. 2011) ("To establish an adverse employment action [under Title VII and the NYSHRL], . . . [a plaintiff] must establish that 'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'") (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

[17] Harrison v. N. Shore Univ. Hosp., No. CV 04-2033 (WDW), 2008 WL 656674, at *13 (E.D.N.Y. Mar. 6, 2008) (quoting Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997) ("The terminated employee, however, may have tangible future employment objectives, for which he must maintain a wholesome reputation. Thus, plaintiffs may be able to state a claim for retaliation [under Title VII], even though they are no longer employed by the defendant company, if, for example, the company 'blacklists' the former employee, wrongfully refuses to write a recommendation to prospective employers, or sullies the plaintiff's reputation.") (citations omitted). For the proposition that sullying a plaintiff's reputation may

22

In deciding whether the conduct at issue constitutes material adverse actions, you must keep in mind that not every negative action amounts to a material adverse action. Petty slights and minor annoyances do not constitute material adverse actions. You must also keep in mind that context matters, and that the significance of any given act will depend upon the particular circumstances.

### 5. New York State Human Rights Law Retaliation – Fourth Element – Retaliatory Motive[18]

The fourth element of retaliation under the State Human Rights Law that Ms. Bouveng must prove by a preponderance of the evidence is that a material adverse action was taken against her because of her protected activity as I have defined that term. Proximity in time between an employee's protected activity and an employer's alleged retaliation may, although does not necessarily, establish a causal link between the two.

In considering whether Ms. Bouveng has proved that a material adverse action was taken against her because of protected activity she had engaged in, you must first decide whether the defendant you are considering was in fact motivated by a desire to retaliate against her because of her complaints about sexual harassment. If not, you must find in favor of that defendant.

---

constitute actionable retaliation, Wanamaker cites Pantchenko v. C.B. Dolge Co., Inc., 581 F.2d 1052 (2d Cir. 1978), in which the Second Circuit reversed the district court's grant of summary judgment for defendant employer in a Title VII retaliation case, where plaintiff alleged that the employer "refused to give plaintiff a letter of recommendation and had made disparaging and untrue statements about her to prospective employers" after plaintiff's employment terminated. Pantchenko, 581 F.2d at 1054-55. The court held that Title VII "prohibits discrimination related to or arising out of an employment relationship, whether or not the person discriminated against is an employee at the time of the discriminatory conduct." Id. at 1055. It also found that "[a]lthough [an employer's mere refusal to provide an employee with a references does not violate Title VII], the complaint here alleges, in addition, that the reference was refused in retaliation for plaintiff's efforts to protect herself against the employer's other discriminatory conduct by filling charges with the EEOC. Proof of such conduct would amount to discrimination of the type prohibited by [Title VII]." Id.

[18] Based on jury charge in Echevarria v. Insight Medical, P.C., et al., No. 13 Civ. 3710 (KPF).

If you conclude that the defendant you are considering was motivated by a desire to retaliate against Ms. Bouveng for having engaged in protected activity, you must next consider whether that defendant also had a non-retaliatory reason, or non-retaliatory reasons, for the material adverse action. If you decide that that defendant had no non-retaliatory motive for the material adverse action, and that the material adverse action was solely motivated by retaliatory animus, then you must find for Ms. Bouveng on this element.[19]

If the defendant you are considering had both retaliatory and non-retaliatory motives for taking the material adverse action against Ms. Bouveng, however, then you must consider whether the retaliatory motive was the "but for" cause of the material adverse action taken against Ms. Bouveng. In other words, you must consider whether that defendant would have taken the material adverse action against Ms. Bouveng absent the retaliatory motive. If the defendant you are considering would not have taken the material adverse action against Ms. Bouveng absent a desire to retaliate against her for having engaged in protected activity, then retaliatory animus is the "but for" cause for the material adverse action taken against Ms. Bouveng, and you will find in her favor on this element. If, on the other hand, you decide that

---

[19] See Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."); see also Russo v. New York Presbyterian Hosp., 972 F. Supp. 2d 429, 455 (E.D.N.Y. 2013) ("Since the NYSHRL statutory language is the same, and the New York Court of Appeals has consistently stated that federal Title VII standards are applied in interpreting the NYSHRL, this Court will continue to interpret the standard for retaliation under NYSHRL consistent with Title VII jurisprudence, as clarified by the Supreme Court in Nassar.") (citing Leacock v. Nassau Health Care Corp., No. 08–CV–2401, 2013 WL 4899723, at *9 n.4 (E.D.N.Y. Sept. 11, 2013); Dall v. St. Catherine of Siena Med. Ctr., 966 F. Supp. 2d 167, 192 n.12, (E.D.N.Y. Aug. 14, 2013); Brown v. City of New York, No. 11 Civ. 2915 (PAE), 2013 WL 3789091, at *19 (S.D.N.Y. July 19, 2013)); Taylor v. Seamen's Soc. For Children, No. 12 CIV. 3713 PAE, 2013 WL 6633166, at *23 (S.D.N.Y. Dec. 17, 2013) ("The 'but for' causation standard from Nassar applies to [plaintiff's] Title VII and NYSHRL retaliation claim, but not to her retaliation claim under the NYCHRL.") (citation omitted).

that defendant would have taken the material adverse action against Ms. Bouveng even absent his or its retaliatory intent, or if that defendant had no retaliatory motive at all, then you must find for that defendant on this claim.

### a. Circumstantial Evidence of Retaliatory Motive[20]

You can see from these instructions that it is very important in this case to determine the reasons why certain actions were taken and the intent that motivated those actions. Defendants contend that there were legitimate reasons for the alleged adverse actions taken against Ms. Bouveng. Ms. Bouveng claims that the Defendants' explanations are pretextual, that is, that they are unworthy of belief and were not in fact motivating factors.

How do juries go about deciding what was in someone's mind? Medical science has not yet devised an instrument that can ascertain what was in a person's mind at some time in the past. The state of someone's mind presents a question of fact, however, and it is an issue that you will have to decide in this case.

Direct proof concerning state of mind is often not available. A person's state of mind can be inferred, however, from that person's words, actions, and conduct. A person's state of mind can be established by surrounding facts and circumstances at the time an action was taken, and the reasonable inferences to be drawn from those facts and circumstances. Circumstantial evidence of a retaliatory motive might include proof that the protected activity was followed closely in time by the adverse action, or evidence that Plaintiff was treated differently than fellow employees who were similarly situated.

However, an employee who has engaged in protected activity, such as complaining about sexual harassment or retaliation, is not entitled to special treatment. That is,

---

[20] Based on jury charge in <u>Mugavero v. Arms Acres, Inc., et al.</u>, No. 03 Civ. 5724 (PGG).

she should not be in a better position than other employees solely because she made the complaint of sexual harassment or retaliation.

### b.     Non-Retaliatory Reasons[21]

When you consider the question of retaliatory motive, you are not to judge the wisdom of a Defendant's actions, but instead, to decide whether the non-retaliatory reasons advanced by that Defendant were the actual reasons for the Defendant's actions. An employer or supervisor is entitled to make decisions for good reasons, bad reasons, or for no reason at all, so long as the decision is not motivated by unlawful retaliation. The issue in this case is not whether you would have taken any of the alleged adverse actions against Ms. Bouveng if you were in charge. Rather, you are to determine whether the Defendant you are considering took the alleged adverse actions against Ms. Bouveng because of non-retaliatory reasons, or because of her protected activity.

If you believe that the reasons offered by a Defendant for adverse actions taken against Ms. Bouveng are false, you may – but are not required to – infer that that Defendant acted out of a desire to retaliate against her. However, if you find that the reasons given by a defendant for the alleged adverse actions are false, that does not necessarily mean that the true motive was the illegal, retaliatory motive argued by Plaintiff.

Ms. Bouveng's personal, subjective belief that she was retaliated against is not sufficient to meet her burden of proof. It is not enough for her to show her subjective belief, feelings, suspicions or speculation that the reasons stated by Defendants for the alleged adverse actions are not genuine.

In determining whether Plaintiff has carried her burden of proving retaliatory intent you will consider all the facts and circumstances that your common sense and good

---

[21] Based on jury charge in <u>Mugavero v. Arms Acres, Inc., et al.</u>, No. 03 Civ. 5724 (PGG).

judgment tell you are relevant to deciding why someone acted as they did. The central question is whether the Defendants took the alleged adverse actions against Ms. Bouveng at least in part because she engaged in a protected activity, and the burden is on Ms. Bouveng to prove that. [22]

### 6. New York State Human Rights Law
### Retaliation – Liability of NYGG and FNL Media

The New York State Human Rights Law imposes liability for retaliation on a corporate employer where the offending employee is a high-level managerial employee,[23] and where that employee was acting within the scope of his employment when he unlawfully retaliated against the plaintiff.

In determining whether a manager acted within the scope of his employment, you must consider the following factors:

(1) whether the employee's adverse action fell within the discretion and control of the employer;

(2) whether the employee acted under the express or implied authority of the employer;

(3) whether the employee's adverse action was in furtherance of the employer's interests;

---

[22] Based on jury charge in Mugavero v. Arms Acres, Inc., et al., No. 03 Civ. 5724 (PGG).

[23] Franklin v. City of New York, No. 01 CIV.10574 DLC, 2003 WL 21511932, at *8 (S.D.N.Y. July 1, 2003) (quoting Father Belle Comm. Ctr. v. State Div. of Human Rights, 221 A.D.2d 44, 54 (4th Dep't 1996) ("[W]e hold that the corporate employer may be held directly liable for acts of discrimination perpetrated by a high-level managerial employee."), aff'd, 99 Fed. App'x 315 (2d Cir. 2004)). Generally, under the New York State Human Rights Law, an employer cannot be held liable "for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it." Id. (internal quotation marks and citations omitted). However, where "the harasser is [the company's] highest ranking employee" – or at least "a high-level managerial employee" – "the corporate employer may be directly liable" for that employee's acts. Father Belle, 221 A.D.2d at 54 ("[I]f an upper-level supervisor's knowledge of harassing conduct can be imputed to the corporate employer for the purpose of establishing acquiescence or condonation as a basis for imposing direct liability, there is no logical reason why the harassing conduct of a top manager cannot be imputed to the employer as well.") (citations omitted).

27

(4) whether the employee was discharging his duty to the employer by taking an adverse action against Ms. Bouveng;

(5) whether the adverse action was part of the work assigned by the employer; and

(6) whether the adverse action was so closely connected with what the employee was hired to do, that it may be regarded as a method – even though an improper one – of carrying out the objectives of the employment.[24]

Where a manager engages in conduct for wholly personal reasons, which are outside the scope of his employment, the employer is not responsible for that conduct.[25] However, even where a manager engages in conduct for a wrongful purpose or with partially personal motives, the employer is liable if the manager engaged in the conduct to further the interests of the employer or as part of the work assigned by the employer.[26]

In assessing Ms. Bouveng's claim against New York Global Group, you must consider whether (1) Ms. Bouveng was an employee of New York Global Group; and (2) a high-level managerial employee of New York Global Group – while acting within the scope of his employment with New York Global Group – unlawfully retaliated against Ms. Bouveng. If you find that Ms. Bouveng was employed by New York Global Group, and that a high-level managerial employee of New York Global Group – while acting within the scope of his

---

[24] Cruz v. Marchetto, No. 11 Civ. 8378 (RWS), 2012 WL 4513484, at *7 (S.D.N.Y. Oct. 1, 2012) (quoting Perks, 251 F. Supp. 2d at 1166).

[25] Perez v. City of New York, 79 A.D.3d 835, 836 (2d Dep't 2010) ("'[W]here an employee's actions are taken for wholly personal reasons, which are not job related, his or her conduct cannot be said to fall within the scope of employment[.]'") (citation omitted).

[26] See Perez, 79 A.D.3d at 836 ("An act is within the scope of employment when it is 'performed while the employee is engaged generally in the business of his employer, or if his act may be reasonably said to be necessary or incidental to such employment', or where the act has the purpose '"to further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employer's business[.]"'") (citations omitted) (emphasis added).

28

employment with New York Global Group – unlawfully retaliated against Ms. Bouveng, you will find New York Global Group liable for retaliation under the State Human Rights Law.

Similarly, in assessing Ms. Bouveng's claims against FNL Media, you must consider whether (1) Ms. Bouveng was an employee of FNL Media; and (2) a high-level managerial employee of FNL Media – while acting within the scope of his employment with FNL Media – unlawfully retaliated against Ms. Bouveng. If you find that Ms. Bouveng was employed by FNL Media, and that a high-level managerial employee of FNL Media – while acting within the scope of his employment with FNL Media – unlawfully retaliated against Ms. Bouveng, you will find FNL Media liable for retaliation under the State Human Rights Law.

If you find that either New York Global Group or FNL Media – but not both – retaliated against Ms. Bouveng in violation of the State Human Rights Law, you must go on to determine whether New York Global Group and FNL Media constitute a "single employer." To determine whether New York Global Group and FNL Media constitute a "single employer" for purposes of Plaintiff's retaliation claim under the State Human Rights Law, you should use the same four-factor test that I explained above in connection with Ms. Bouveng's quid pro quo sexual harassment claims under the New York State and City Human Rights Laws.[27] If you find that Ms. Bouveng has established by a preponderance of the evidence that New York Global Group and FNL Media constitute a "single employer" under this test, FNL Media is liable under the New York State Human Rights Law for any retaliation attributable to New York Global Group, and New York Global Group is liable for any retaliation attributable to FNL Media.

---

[27] See Turley, 774 F.3d at 155-57.

### 7. New York State Human Rights Law Retaliation – Affirmative Defense[28]

If you find that Plaintiff has proven all elements of her retaliation claim as to a particular adverse action and as to a particular defendant, you must determine whether the defendant you are considering has established an affirmative defense. The Defendants claim that they would have taken the same actions against Ms. Bouveng regardless of any protected activity she engaged in. If you find that any defendant has proven by a preponderance of the evidence that that defendant would have taken the same action regardless of any protected activity Ms. Bouveng engaged in and regardless of any retaliatory motive, then that defendant has established its affirmative defense and you must return a verdict in favor of that defendant on this claim.

## E. New York City Human Rights Law Retaliation Claim[29]

### 1. Overview of Elements

Ms. Bouveng also asserts a retaliation claim under the New York City Human Rights Law. The elements of a retaliation claim under the City Human Rights Law are similar to those under the State Human Rights Law, but there are some important differences, which I will explain.

To prevail on her retaliation claim under the New York City Human Rights Law, Ms. Bouveng must prove each of the following four elements by a preponderance of the evidence:

(1) that she engaged in protected activity, such as making a complaint to her employer about unlawful sexual harassment or unlawful retaliation;

---

[28] Based on jury charge in <u>Mugavero v. Arms Acres, Inc., et al.</u>, No. 03 Civ. 5724 (PGG).

[29] Based on New York PJI § 9 I Intro. 1; jury charge in <u>Echevarria v. Insight Medical, P.C., et al.</u>, No. 13 Civ. 3710 (KPF); and jury charge in <u>Mugavero</u>.

30

(2) that the protected activity Ms. Bouveng engaged in was known to the defendant you are considering;

(3) that the defendant you are considering engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity; and

(4) that the defendant's conduct was motivated, at least in part, by Ms. Bouveng's protected activity.[30]

### 2. New York City Human Rights Law
#### Retaliation – First Element – Protected Activity

In deciding whether Ms. Bouveng engaged in protected activity under the City Human Rights Law, the instructions regarding protected activity set forth in connection with Ms. Bouveng's New York State Human Rights Law retaliation claim apply with equal force. In claiming that she engaged in protected activity for purposes of the New York City Human Rights Law, Ms. Bouveng again relies on (1) her lawyer's April 29, 2014 letter to Mr. Wey; (2) her lawyer's transmission of a draft complaint on May 7, 2014; and (3) the filing of the Complaint in this lawsuit.

### 3. New York City Human Rights Law Retaliation
#### – Second Element – Knowledge of Protected Activity

In deciding whether Ms. Bouveng has proved that the Defendants were aware that she had engaged in protected activity, the instructions on this issue given in connection with Ms. Bouveng's New York State Human Rights Law retaliation claim apply with equal force to her City Human Rights Law retaliation claim.

---

[30] Russo v. New York Presbyterian Hosp., 972 F. Supp. 2d 429, 456 (E.D.N.Y. 2013) (stating that, to prevail on a NYCHRL retaliation claim, "a plaintiff must . . . establish that there was a causal connection between her protected activity and the employer's subsequent action, and must show that a defendant's legitimate reason for her termination was pretextual or 'motivated at least in part by an impermissible motive'") (quoting Brightman v. Prison Health Serv., Inc., 970 N.Y.S.2d 789, 792 (2d Dep't 2013)).

### 4. New York City Human Rights Law Retaliation – Third Element – Conduct Reasonably Likely To Deter

The third element of a retaliation claim under the City Human Rights Law is that the defendant you are considering engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity. To find that this element has been proven, you need not find that the retaliation Ms. Bouveng complains of resulted in an ultimate action with respect to her employment, or in a materially adverse change in the terms and conditions of her employment.

Here, Ms. Bouveng contends that the following actions constitute conduct that was reasonably likely to deter a person from engaging in protected activity:

(1) Mr. Wey's communications to Ms. Bouveng, to her family, and to her friends and business associates after April 29, 2014; and

(2) The Blot articles received in evidence, to the extent that statements in these articles (a) accuse Ms. Bouveng of a serious crime; (b) tend to injure Ms. Bouveng in her trade, business, or profession; and (c) impute unchastity to Ms. Bouveng. As I stated in discussing Ms. Bouveng's State law retaliation claim, I will define a number of these terms in connection with Plaintiff's defamation claim. These definitions in the defamation section of these instructions apply with equal force to Ms. Bouveng's New York State Human Rights Law and New York City Human Rights Law retaliation claims.

To constitute retaliatory conduct under the City Human Rights Law, a defendant's conduct need not be "materially adverse" to a plaintiff. Instead, you need only find that the conduct at issue was reasonably likely to deter a person from engaging in protected activity. [31] Actions reasonably likely to deter a person from engaging in protected activity may include

---

[31] The New York City Human Rights Law "specifically rejects a materiality requirement." Williams v. New York City Hous. Auth., 61 A.D.3d 62, 81 (2009).

actions taken by an employer after the employer has terminated an employee's employment. This element may be satisfied by evidence that an employer "blacklisted" a former employee, wrongfully refused to write a recommendation to prospective employers, or sullied the former employee's reputation by making disparaging and false statements about the former employee, where the jury concludes that such conduct would be reasonably likely to deter a person from engaging in protected activity.[32]

In deciding whether the conduct at issue constitutes conduct that is reasonably likely to deter a person from engaging in protected activity, you must keep in mind that not every instance of negative conduct amounts to conduct that is reasonably likely to deter a person from engaging in protected activity. Petty slights and minor annoyances do not constitute conduct that is reasonably likely to deter a person from engaging in protected activity. You must also keep in mind that context matters, and that the significance of any given act will depend upon the particular circumstances.

## 5. New York City Human Rights Law
## Retaliation – Fourth Element – Retaliatory Motive[33]

The fourth element of retaliation under the City Human Rights Law that Ms. Bouveng must prove by a preponderance of the evidence is that the defendant's desire to retaliate against her for engaging in a protected activity was a motivating factor in the decision to engage in conduct that was reasonably likely to deter a person from engaging in protected activity. Ms. Bouveng contends that the Defendants took action against her because she protested sexual harassment and retaliation by Mr. Wey. Defendants claim that the actions at issue were taken

---

[32] See Hecht v. GAF Corp., No. 95 Civ. 10379 (RPP), 1999 WL 249711, at *3 (S.D.N.Y. 1999) (discussing Wanamaker, 108 F.3d at 466, in the context of a NYCHRL claim).

[33] Based on jury charges in Mugavero v. Arms Acres, Inc., et al., No. 03 Civ. 5724 (PGG); Echevarria v. Insight Medical, P.C., et al., No. 13 Civ. 3710 (KPF).

33

because of their legitimate concerns about Plaintiff's job performance, and in order to defend their reputation.

In order to carry her burden as to this element, Ms. Bouveng need not establish that her protected activity was the sole or principal reason for any action that a defendant took against her that constitutes conduct that would be reasonably likely to deter a person from engaging in protected activity. The City Human Rights Law is violated when retaliatory intent is a motivating factor for a defendant's action, whether or not that retaliatory motive was the sole cause for the action. If Ms. Bouveng proves that there was a retaliatory motive for any action Defendants took against her that would be reasonably likely to deter a person from engaging in protected activity, this element is satisfied. Ms. Bouveng may show either that the individual who made the decision to take such action was motivated in part by a desire to retaliate against her, or that an individual who was substantially motivated by retaliatory intent played a meaningful role in the decision.

The instructions I gave you in connection with Ms. Bouveng's retaliation claim under the State Human Rights Law regarding circumstantial evidence of retaliatory motive and non-retaliatory reasons apply with equal force to her retaliation claim under the City Human Rights Law.

### 6.    New York City Human Rights Law Retaliation – Liability of NYGG and FNL Media

The New York City Human Rights Law imposes liability on an employer where the offending employee exercised managerial or supervisory responsibility,[34] and where that

---

[34]    N.Y.C. Admin. Code § 8-107(13)(b) ("An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent . . . where . . . the employee or agent exercised managerial or supervisory responsibility. . . ."). An employer is also liable if the employer encouraged, condoned, or approved the employee's act. See Heskin v. Insite Advertising, Inc., No. 03 CIV.2508 GBD AJP, 2005 WL 407646, at *23 (S.D.N.Y. Feb. 22, 2005).

employee was acting within the scope of his employment when he unlawfully retaliated against the plaintiff.

In determining whether Mr. Wey acted within the scope of his employment under the City Human Rights Law, you should use the same six-factor test that I explained above in connection with Ms. Bouveng's retaliation claim under the New York State Human Rights Law.

In assessing Ms. Bouveng's claim against New York Global Group, you must consider whether (1) Ms. Bouveng was an employee of New York Global Group; and (2) any manager or supervisor of New York Global Group – while acting within the scope of his employment with New York Global Group – unlawfully retaliated against Ms. Bouveng. If you find that Ms. Bouveng was employed by New York Global Group, and that a manager or supervisor of New York Global Group – while acting within the scope of his employment with New York Global Group – unlawfully retaliated against Ms. Bouveng, you will find New York Global Group liable for retaliation under the City Human Rights Law.

Similarly, in assessing Ms. Bouveng's claims against FNL Media, you must consider whether (1) Ms. Bouveng was an employee of FNL Media; and (2) any manager or supervisor of FNL Media – while acting within the scope of his employment with FNL Media – unlawfully retaliated against Ms. Bouveng. If you find that Ms. Bouveng was employed by FNL Media, and that a manager or supervisor of FNL Media – while acting within the scope of his employment with FNL Media – unlawfully retaliated against Ms. Bouveng, you will find FNL Media liable for retaliation under the City Human Rights Law.

If you find that either New York Global Group or FNL Media – but not both – retaliated against Ms. Bouveng in violation of the City Human Rights Law, you must go on to determine whether New York Global Group and FNL Media constitute a "single employer." To determine whether New York Global Group and FNL Media constitute a "single employer"

under the City Human Rights Law, you will use the same four-factor test that I explained above in connection with Ms. Bouveng's quid pro quo sexual harassment claims under the New York State and City Human Rights Laws.[35] As I have stated, if you find that Ms. Bouveng has established by a preponderance of the evidence that New York Global Group and FNL Media constitute a "single employer" under this test, FNL Media is liable under the New York City Human Rights Law for any retaliation attributable to New York Global Group, and New York Global Group is liable for any retaliation attributable to FNL Media.

### 7. New York City Human Rights Law Retaliation – Affirmative Defense

If you find that Ms. Bouveng has proved all the elements of her retaliation claim under the City Human Rights Law, you must then decide whether the defendant you are considering has proved by a preponderance of the evidence that the action taken against Ms. Bouveng would have been taken on the basis of non-retaliatory reasons alone. The Defendants here claim that any action taken against Ms. Bouveng that was reasonably likely to deter a person from engaging in protected activity was taken for a non-retaliatory reason.

In deciding whether the defendant you are considering has satisfied his or its burden on this issue, follow these steps: Consider whether the defendant has proved that the decision to take an action against Ms. Bouveng that was reasonably likely to deter a person from engaging in protected activity was motivated by a non-retaliatory reason in addition to a retaliatory motive. If you find that the defendant you are considering was not motivated by any non-retaliatory reason, you must find for Ms. Bouveng. If, however, you find that the defendant

---

[35] With respect to the four-factor "single employer" test, courts have employed the Title VII standard to NYCHRL claims. See, e.g., Echevarria v. Insight Med., P.C., No. 13 Civ. 3710 (KPF), 2014 WL 7250956, at *12-13 (S.D.N.Y. Dec. 22, 2014); Fried v. LVI Servs., Inc., No. 10 Civ. 9308 (JSR), 2011 WL 2119748, at *1-7 (S.D.N.Y. May 23, 2011); Fowler v. Scores Holding Co., 677 F. Supp. 2d 673, 680-81 (S.D.N.Y. 2009); Dias v. Cmty. Action Project, Inc., No. 07 Civ. 5163 (NGG) (RER), 2009 WL 595601, at *1-3 (E.D.N.Y. Mar. 6, 2009).

had non-retaliatory reasons for his or its action, you must determine whether the defendant has proved that he or it would have taken this action against Ms. Bouveng based upon these non-retaliatory reasons alone. If you find that the defendant has not proved that non-retaliatory reasons would have provided an independent basis for taking the action against Ms. Bouveng, then you must find for Ms. Bouveng. Conversely, if you find that the defendant has proved that it would have taken the action against Ms. Bouveng based only on non-retaliatory reasons, then you must find for the defendant.

### F. Assault Claim[36]

Ms. Bouveng has brought a claim for assault against Mr. Wey. An assault is the intentional placing of another person in apprehension of imminent harmful or offensive contact. Ms. Bouveng must prove by a preponderance of the evidence that Mr. Wey intentionally took actions that put her in fear that he was about to engage in bodily conduct harmful or offensive to her. In order to commit an assault, Mr. Wey must have had the real or apparent ability to bring about that harmful or offensive bodily contact. Ordinarily, threatening words without some action are not enough to constitute an assault. There must be some menacing act or gesture that causes the plaintiff to believe that a harmful or offensive bodily contact is about to occur. It is not necessary that any contact actually occur.

I used the word "intentionally" in defining an assault. Intent involves the state of mind with which an act is done. If a person acts voluntarily with a desire to bring about a result, he is said to have intended that result.

---

[36] Based on New York PJI § 3:2.

37

## G.    Battery Claim[37]

Ms. Bouveng has also brought a claim for battery against Mr. Wey. A person who intentionally touches another person – without that person's consent – and thereby causes an offensive bodily contact, commits battery.

As I have explained several times, intent involves the state of mind with which an act is done. As to battery, a plaintiff must prove that the defendant had the intent to cause a bodily contact that a reasonable person would find offensive. An offensive bodily contact is one that is done for the purpose of harming another or one that offends a reasonable sense of personal dignity, or one that is otherwise wrongful.

## H.    Defamation Claim[38]

Ms. Bouveng has brought a claim for defamation against all Defendants. Defamation is a communication that tends to expose the plaintiff to public hatred, contempt, ridicule, or disgrace. Here, Ms. Bouveng claims that the Defendants are liable for defamation based on statements in The Blot Magazine that (1) allege she has committed serious crimes; (2) tend to injure Ms. Bouveng in her trade, business, or profession; and (3) impute unchastity to Ms. Bouveng.

To recover damages for defamation, Ms. Bouveng has the burden of proving, by a preponderance of the evidence, six elements as to each allegedly defamatory statement.

### 1.    First Element – Defamatory Statement

First, as to each statement, Ms. Bouveng must prove that the statement was defamatory. In this case, in order to prove that a statement is defamatory, you must find that the statement falls into one of the three following categories:

---

[37] Based on New York PJI § 3:3.

[38] Based on New York PJI § 3:23A.

### a.  Statement Charging a Serious Crime

First, a statement is defamatory if it accuses Ms. Bouveng of a "serious crime."[39]

The following crimes are considered serious crimes: extortion,[40] blackmail, visa fraud,[41] and

selling illegal drugs. Prostitution,[42] stalking,[43] and mere possession or use of illegal drugs are not

"serious crimes."[44] Statements that accuse Ms. Bouveng of extortion do not constitute

defamation, if it is clear from context that the statement refers to a lawsuit or threatened

lawsuit.[45]

### b.  Statement Injurious to Trade, Business, or Profession

A statement is also defamatory if it tends to injure Ms. Bouveng in her trade,

business, or profession.[46] For the purposes of this case, Ms. Bouveng's trade, business, or

profession is marketing. To find that a statement falls within this defamation category, you must

find that the statement communicates a general unfitness, incapacity, or inability on Ms.

Bouveng's part to perform her duties at work.[47] A general reflection upon Ms. Bouveng's

---

[39] See Liberman v. Gelstein, 80 N.Y.2d 429, 435 (1992).

[40] See 18 U.S.C. 875(d); N.Y. Penal Law 155.05(2).

[41] See 18 U.S.C. 1546(a).

[42] See Cavallaro v. Pozzi, 28 A.D.3d 1075 (4th Dep't 2006); N.Y. Penal Law 230.00.

[43] See Corsini v. Morgan, 123 A.D.3d 525, 527 (1st Dep't 2014).

[44] See Harris v. Hirsch, 228 A.D.2d 206, 209 (citing N.Y. Penal Law §§ 220.00 et seq.).

[45] See Trustco Bank of N.Y. v. Capital Newspaper Div. of Hearst Corp., 213 A.D.2d 940, 942 (3d Dep't 1995); Melius v. Glacken, 94 A.D.3d 959 (2d Dep't 2012); Marchuk v. Faruqi & Faruqi, LLP, No. 13 Civ. 1669 (AKH), 2015 WL 363625, at *7 (S.D.N.Y. Jan 28, 2015).

[46] See Liberman, 80 N.Y.2d at 435.

[47] Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011).

character or qualities is not sufficient. Rather, the statement must reflect on Ms. Bouveng's work performance and be incompatible with the proper conduct of her business.[48]

### c.   **Statement Imputing Unchastity**

A statement is also defamatory if it imputes unchastity to a woman. For example, statements that refer to a woman as a "prostitute" impute unchastity to that woman.[49]

If you find that the statement at issue (1) alleges that Ms. Bouveng committed a "serious crime," (2) tends to injure Ms. Bouveng in her trade, business, or profession, or (3) imputes unchastity to Ms. Bouveng, then you must consider the second element of the defamation claim. If you find that the statement at issue does not fall into any of these three categories, then you need not proceed further with respect to that statement, and you must find for Defendants with respect to that statement.

### 2.   **Second Element – Statement Concerning Plaintiff[50]**

The second element of Ms. Bouveng's defamation claim is that the statement be "of and concerning" Ms. Bouveng. That is, Ms. Bouveng must prove that the statement was communicated to third persons who reasonably would have understood the statement to refer to her.

If you find that the statement would be understood by a reasonable reader to refer to Ms. Bouveng, then you must consider the remaining elements of Ms. Bouveng's defamation claim. If you find that the statement would not be understood by reasonable readers to refer to

---

[48]  Thompson v. Bosswick, 855 F. Supp. 2d 67, 77 (S.D.N.Y. 2012); Stern v. Cosby, 645 F. Supp. 2d 258, 290 (S.D.N.Y. 2009).

[49]  See Torain v. Clear Channel Broad., Inc., 651 F. Supp. 2d 125, 152 (S.D.N.Y. 2009); Cassini v. Advance Publs., Inc., 125 A.D.3d 467, 469 (1st Dep't 2015).

[50]  Based on PJI §§ 3:23C, 3:25.

Ms. Bouveng, then you need not proceed further with respect to that statement, and you must find for Defendants with respect to that statement.

### 3. Third Element – Statement Published by One or More Defendant

The third element of Ms. Bouveng's defamation claim is that the defendant you are considering published the statement, meaning that that defendant communicated the statement to someone other than Ms. Bouveng.

In determining whether a defendant published the statement, you must determine whether Ms. Bouveng proved, by a preponderance of the evidence, that that defendant participated in the preparation, creation, editing, or publication of the statement at issue.[51] If you find that a defendant participated in the preparation, creation, editing, or publication of the statement, you will find that that defendant published the statement.

An individual's role as "editor" or "publisher" of a publication does not necessarily mean that that individual published a particular statement. For example, if you find that Mr. Wey was an editor or publisher of The Blot Magazine, but you do not find that he participated in the preparation, creation, editing, or publication of the statement at issue, you cannot find that Mr. Wey published that statement.[52] As I stated above, you must find that the defendant you are considering had an affirmative role in the preparation or editing of the statement at issue in order to find that that defendant published the statement.

---

[51] Treppel v. Biovail Corp., No. 03 Civ. 3002 (PKL), 2005 WL 2086339, at *3 (S.D.N.Y. Aug. 3, 2005) ("[A] defamation claim cannot survive without an allegation that defendants participated in the creation or the publication of the statements at issue."); Gaeta v. New York News, 95 A.D.2d 315, 328 (1st Dep't 1983) ("We agree with the determination of Special Term, dismissing the complaint as against defendants James and O'Neill, the former publisher and editor, respectively, since the record fails to show that either of them played any affirmative role in the preparation or editing of the article.") (citation omitted), rev'd on other grounds, 62 N.Y.2d 531, 540 (1980).

[52] Gaeta, 95 A.D.2d at 328.

41

If you find that FNL Media or New York Global Group did not publish the statement, but that an employee of FNL Media or New York Global Group published the statement, FNL Media or New York Global Group may be held responsible for that statement if one of their employees published the statement in the course of performing his or her employment duties. To determine whether an employee made the statement within the scope of his or her employment, you must consider the following factors:

(1) whether the employee's act of making the statement fell within the discretion and control of the employer;

(2) whether the employee made the statement under the express or implied authority of the employer;

(3) whether the employee's act of making the statement was in furtherance of the employer's interests;

(4) whether the employee was discharging his duty to the employer by making the statement;

(5) whether the act of making the statement was part of the work assigned by the employer; and

(6) whether the act of making the statement was so closely connected with what the employee was hired to do, that it may be regarded as a method – even though an improper one – of carrying out the objectives of the employment.[53]

If you find that an employee made the statement for wholly personal reasons, unrelated to his or her job, the employer is not responsible for that statement.[54] However, even if

---

[53] Cruz v. Marchetto, No. 11 Civ. 8378 (RWS), 2012 WL 4513484, at *7 (S.D.N.Y. Oct. 1, 2012) (quoting Perks, 251 F. Supp. 2d at 1166).

an employee makes a statement for a wrongful purpose or with partially personal motives, the employer is liable if the employee made that statement to further the interests of the employer or as part of the work assigned by that employer.[55]

If you find that Plaintiff has proven by a preponderance of the evidence that an employee of New York Global Group made a defamatory statement in the scope of his or her employment with New York Global Group, you will find that New York Global Group published that statement, and you will proceed to consider the other elements of Ms. Bouveng's defamation claim. Likewise, if you find that Plaintiff has proven by a preponderance of the evidence that an employee of FNL Media made a defamatory statement in the scope of his or her employment with FNL Media, you will find that FNL Media published that statement, and you will proceed to consider the other elements of Ms. Bouveng's defamation claim. However, if you find that the defendant you are considering did not publish the defamatory statement at issue, then you need not proceed further with respect to that statement, and you will find for that defendant as to that statement.

---

[54] Perez v. City of New York, 79 A.D.3d 835, 836 (2d Dep't 2010) ("'[W]here an employee's actions are taken for wholly personal reasons, which are not job related, his or her conduct cannot be said to fall within the scope of employment[.]'") (citation omitted).

[55] See Perez, 79 A.D.3d at 836 ("An act is within the scope of employment when it is 'performed while the employee is engaged generally in the business of his employer, or if his act may be reasonably said to be necessary or incidental to such employment', or where the act has the purpose '"to further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employer's business[.]"'") (citations omitted) (emphasis added); Griebsch v. Weaver, No. 7:05-CV-0958, 2005 WL 2260374, at *3-4 (N.D.N.Y. Sept. 16, 2005) (employee's allegedly defamatory statements about plaintiff were within the scope of her employment, even if she made those statements "intentionally," "for a wrongful purpose," or with "personal motives").

43

## 4. Fourth Element – Falsity[56]

The fourth element of Ms. Bouveng's defamation claim is that the statement at issue was false. A statement is false if it is not substantially true. Minor inaccuracies in the statement may be disregarded in determining whether a statement is false.

You will determine from the evidence presented what the truth was and then compare that with the statement at issue, considering that statement according to the ordinary meaning of the words. If you find that the statement is false, then you will proceed to consider the other elements of Ms. Bouveng's defamation claim with respect to that statement. If you find that the statement was true, then you will not proceed further with respect to that statement, and you will find for Defendants with respect to that statement.

## 5. Fifth Element – Negligent Publication[57]

The fifth element of Ms. Bouveng's defamation claim is that the defendant you are considering acted negligently in publishing the statement. To establish negligence, a plaintiff must prove that when the defendant published the statement, the defendant failed to use reasonable care under the circumstances to verify its accuracy.

If you find that Ms. Bouveng has proved that the defendant you are considering acted negligently in publishing a statement, then you must proceed to consider the other elements of Ms. Bouveng's defamation claim with respect to that statement. If you find that Ms. Bouveng has failed to prove that the defendant was negligent in publishing that statement, then you will

---

[56] Based on PJI § 3:27.

[57] Based on PJI §§ 3:23C, 3:28B. See Krauss v. Globe Intl., 251 A.D.2d 191, 194 (1st Dep't 1998) (finding that, in a case involving a private plaintiff and a matter of private concern, "in order to prevail, plaintiff need show only that defendants were negligent in publishing the story"); see also Albert v. Loksen, 239 F.3d 256, 270, 270 n.12 (2d Cir. 2001) (noting that the "New York Court of Appeals has not addressed the issue" of the applicable standard of fault in a case involving a private plaintiff and where the statements are matters of purely private concern; stating that the court is "somewhat reluctant to view Krauss as binding" on this issue; but "declin[ing] to decide whether . . . negligence or some other level of fault is applicable").

not proceed further with respect to that statement, and you will find for Defendants with respect to that statement.

### 6. Sixth Element – Actual Harm[58]

The sixth element of Ms. Bouveng's defamation claim is that the statement proximately caused actual harm to her, meaning that she suffered damages such as personal humiliation, mental anguish and suffering or damage to her reputation and standing in the community.

If you find that Ms. Bouveng suffered damages such as personal humiliation, mental anguish and suffering, or damage to her reputation or standing in the community as a result of the statement – and that she proved the five other elements of her defamation claim by a preponderance of the evidence – you will find for Ms. Bouveng on her defamation claim with respect to that statement. If you find that Ms. Bouveng has failed to prove all six elements of her defamation claim with respect to a statement, then you will find for Defendants with respect to that statement.

### I. Damages

#### 1. General Instructions[59]

If you find that Ms. Bouveng has proven one or more of her claims with respect to one or more of the defendants, then you will go on to determine the damages to which Ms. Bouveng is entitled. The mere fact that I am instructing you on how to go about awarding damages does not mean, of course, that I have any opinion on whether any defendant should be held liable in this case. I have no opinion, one way or the other. It is your responsibility to decide whether there is liability, and I am instructing you about damages only so that you will

---

[58] Based on New York PJI 3:23A.

[59] Based on instructions in Mugavero.

45

have guidance in the event that you decide that Ms. Bouveng has proven one or more of her claims as to one or more of the defendants.

If you find that Ms. Bouveng has proved liability according to the standards I have explained, there are two types of damages you may consider. These are called compensatory damages and punitive damages.

## 2. Compensatory Damages[60]

The first category of damages is compensatory damages. If you find for Plaintiff with respect to any of her claims, then you must award her the sum that you find from the preponderance of the evidence will fairly and justly compensate her for any damages you find she has sustained, and is reasonably certain to sustain in the future, as a direct result or as a reasonably foreseeable consequence of a defendant's conduct.

The damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages for speculative injuries, but only for those injuries that Plaintiff has actually suffered or can reasonably be expected to suffer. It is Plaintiff's burden to prove the amount of her damages and to prove that the damages were caused by a defendant's actions. Your determination of damages must not be based on speculation or guesswork.

You may not award compensatory damages more than once for the same injury. For example, where a plaintiff prevails on two claims and establishes that he or she is entitled to $100 in compensatory damages for that injury, that plaintiff is not entitled to $100 in compensatory damages on each claim. A plaintiff is only entitled to be made whole again, not to

---

[60] Based on instructions in Mugavero.

46

be made more than whole. Of course, where different injuries are attributed to the separate claims, a plaintiff is entitled to be compensated fully for all of the injuries. [61]

I will now explain the standards you must apply in determining the amount of compensatory damages to award to Ms. Bouveng on each of her claims, in the event that you determine that she has proven one or more of her claims.

### a. Compensatory Damages on Defamation Claim[62]

As I explained earlier, in order to recover damages on her defamation claim, Ms. Bouveng must prove that she suffered actual harm. Ms. Bouveng must prove injury to her reputation or standing in the community, or personal humiliation, mental anguish and suffering. If you find that Ms. Bouveng did suffer actual harm, you may award Ms. Bouveng an amount as, in the exercise of your good judgment and common sense, you decide is fair and just compensation for the injury she suffered as a result of a Defendant's publication of a defamatory statement. In fixing that amount, you should consider Plaintiff's standing in the community, the nature of the statement made about Plaintiff, the extent to which the statement was circulated, the tendency of the statement to injure a person such as Plaintiff, and all of the other facts and circumstances in the case. Damages of this sort cannot and need not be proven with mathematical accuracy.

### b. Compensatory Damages on Remaining Claims – Emotional Distress[63]

With respect to Ms. Bouveng's remaining claims – that is, her quid pro quo sexual harassment claims under the New York City and State Human Rights Laws; her retaliation claims under the City and State Human Rights Laws; and her assault and battery claims – Ms.

---

[61] Sand, et al., Modern Federal Jury Instructions – Civil, Instruction 77-2.

[62] Based on PJI § 3:29.

[63] Based on jury charge in Mugavero.

Bouveng seeks damages for emotional distress. Ms. Bouveng is entitled to damages for any emotional distress, pain or suffering that she has experienced or which she can reasonably be expected to experience in the future as a result of a Defendant's unlawful conduct, if you find that any such unlawful conduct occurred. You may not award Ms. Bouveng damages for emotional distress, pain or suffering caused by factors other than the wrongful conduct of a Defendant.

In order to recover damages for emotional distress, Ms. Bouveng must present credible evidence with respect to the nature, character, duration and severity of the claimed emotional distress. Psychiatric or other medical treatment is not a precondition to recovery, however. Nor is Ms. Bouveng required to prove her claim through expert medical testimony. You may, however, consider whether psychiatric or medical treatment was sought in determining whether a damage award for emotional distress is appropriate.

The purpose of a compensatory damage award is to compensate Ms. Bouveng for the actual mental or emotional injuries she suffered or will suffer as a direct result of a Defendant's actions. There is no exact standard to be applied. You must award an amount that is fair and just in light of the evidence. The purpose of a compensatory damage award for emotional distress, pain or suffering is not to punish defendant.

### c.  No Damages for Harm Caused to Others

Ms. Bouveng may only recover damages for harm she suffered. She may not recover damages for any harm suffered by her friends and family. Evidence concerning harm suffered by Ms. Bouveng's friends and family is relevant only to the extent that you conclude that Ms. Bouveng learned of this alleged harm and that she suffered emotional injury as a result.

#### d. No Economic Damages

Ms. Bouveng is not seeking damages for economic harm. In other words, she is not claiming that she lost wages or other income as a result of Defendants' alleged actions. Thus, even if you find that Ms. Bouveng has met her burden of proof on a particular claim, you may not award her any economic damages in connection with that claim.

### 3. Punitive Damages

In addition to compensatory damages, Ms. Bouveng is seeking an award of punitive damages from Mr. Wey, New York Global Group, and FNL Media for the following claims: (1) the New York City Human Rights Law quid pro quo sexual harassment claim; (2) the New York City Human Rights Law retaliation claim; and (3) the defamation claim. Ms. Bouveng also seeks an award of punitive damages against Mr. Wey on her assault and battery claims.

Punitive damages may be awarded for the purpose of punishing a defendant for that defendant's wrongful conduct and to deter others from engaging in similar wrongful conduct. Punitive damages are intended to protect the community, and to be an expression of the jury's indignation at a defendant's misconduct. [64] You must determine whether to award punitive damages against each defendant separately.[65]

In order to award Ms. Bouveng punitive damages, you must first find in her favor against one or more of the Defendants on one or more of the claims I just listed. Keep in mind that the fact that I am giving you instructions on punitive damages should not be considered as an indication of any view on my part as to what your verdict should be or on whether punitive

---

[64] Based on charge in Echevarria.

[65] Based on charge in Gomez v. City of New York, et al., No. 99 Civ. 9568 (LAK).

damages should be awarded. It is entirely up to you to decide whether or not punitive damages should be awarded in this case.[66]

I will now describe the standards you must apply in determining whether to award Ms. Bouveng punitive damages.

### a. Punitive Damages – New York City Human Rights Law Claims

If you find in Ms. Bouveng's favor on either her quid pro quo sexual harassment claim or her retaliation claim under the New York City Human Rights Law, you may, but are not required to, award punitive damages on either or both of those claims. To establish her entitlement to punitive damages under the City Human Rights Law, Ms. Bouveng must show, by a preponderance of the evidence, that the Defendant you are considering acted with malice or with reckless indifference to Ms. Bouveng's rights.[67] For purposes of a quid pro quo sexual harassment claim or retaliation claim under the City Human Rights Law, a defendant acts with malice or reckless indifference where the defendant knew that his or its conduct violated the law prohibiting gender discrimination or retaliation, or acted with reckless disregard of the law.[68] Direct evidence that a defendant acts with knowledge that the discrimination or retaliation violated the law is not required. Rather, the requisite state of mind may be inferred from the circumstances.[69] Additionally, even if Ms. Bouveng does not prove that a defendant knew he or

---

[66] Based on charge in Echevarria.

[67] Caravantes v. 53rd St. Partners, LLC, No. 09 CIV. 7821 (RPP), 2012 WL 3631276, at *25 (S.D.N.Y. Aug. 23, 2012).

[68] Based on charge in Echevarria; see also Caravantes, 2012 WL 3631276, at *25.

[69] MacMillan v. Millennium Broadway Hotel, 873 F. Supp. 2d 546, 564 (S.D.N.Y. 2012).

it was acting in violation of the law, you may infer that a defendant acted with malice if you find that he or it acted egregiously or outrageously.[70]

### b. Punitive Damages – Assault and Battery Claims

If you find in Ms. Bouveng's favor on either her assault or battery claim, you may, but are not required to, award punitive damages on either or both of those claims. To establish her entitlement to punitive damages on her assault and battery claims, Ms. Bouveng must prove by a preponderance of the evidence that Mr. Wey's actions were intentional and deliberate, and that they have the character of outrage frequently associated with crime.[71] You must find that Mr. Wey acted with spite or malice, or with an evil motive, or with a willful, wanton, or deliberate disregard of Ms. Bouveng's rights and interests.[72]

### c. Punitive Damages – Defamation Claim

Finally, if you find in Ms. Bouveng's favor on her defamation claim, you may, but are not required to, award punitive damages on that claim. To establish her entitlement to punitive damages on her defamation claim, Ms. Bouveng must prove by a preponderance of the evidence that the Defendant you are considering acted with malice in making a defamatory statement about Plaintiff. A statement is made maliciously if it is made with deliberate intent to injure or made out of hatred, ill will, or spite, or made with willful, wanton, or reckless disregard of Ms. Bouveng's rights.[73]

---

[70] Id. ("As an alternative to proving that the defendant knew it was acting in violation of [the] law, '[e]gregious or outrageous acts may serve as evidence supporting an inference of the requisite evil motive.'") (citations omitted).

[71] Prozeralik v. Capital Cities Comms., 82 N.Y.2d 466, 479 (1993) (quoting Prosser and Keeton, Torts § 2, at 9-10 (5th ed. 1984)).

[72] Prozeralik, 82 N.Y.2d at 479.

[73] Based on PJI § 3:30; see also Stern v. Cosby, 645 F. Supp. 2d 258, 286 (S.D.N.Y. 2009); Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 184 (2d Cir. 2000).

To determine whether a Defendant acted with malice in making a defamatory statement concerning Ms. Bouveng, you may consider all of the relevant circumstances surrounding the making of the statement, including prior or subsequent defamatory statements, other statements made by the Defendant and evidence of a Defendant's ill will or hostility towards Ms. Bouveng.[74] If the natural inference from the defamatory statement itself is that it was aimed directly at attacking Ms. Bouveng's reputation, you may find that the Defendant who made the statement acted with malice.[75]

If you decide that Ms. Bouveng has met her burden of proving an entitlement to punitive damages on any of her claims, you are not to specify what dollar amount you believe proper. That will be addressed by you later. Now, you must only decide whether Ms. Bouveng is entitled to an award of punitive damages.

## III. FINAL INSTRUCTIONS ON PROCEDURE

### A. Right to See Exhibits and Hear Testimony; Communications With Court

Ladies and gentlemen of the jury, that concludes my instructions to you concerning the specific claims in this case. You will soon retire to the jury room and begin your deliberations. All of the exhibits that were admitted into evidence during the trial will be sent into the jury room, other than the tape recordings. If you want any of the testimony read back to you, you may request that. If you want any of the audio or videotape played again, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

If you want any further explanation of the law as I have explained it to you, you may also request that. As I noted earlier, however, you will each be permitted to take your copy

[74] Celle, 209 F.3d at 184-85 (quoting Herbert v. Lando, 441 U.S. 153, 164 n.12 (1979)).

[75] Unker v. Joseph Markovits, Inc., 643 F. Supp. 1043, 1048 (S.D.N.Y. 1986).

52

of the instructions into the jury room.

Any communication to me should be made in writing, signed by your foreperson, include the date and time, and be given to one of the Marshals. Please make any notes as clear and precise as possible. Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

## B.    Duty to Deliberate/Unanimous Verdict

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either side, and adopt that conclusion which in your good conscience appears to be most in accordance with the truth.

Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

If you are divided, do not report how the vote stands, and if you have reached a verdict do not report what it is until you are asked in open court.

## C.    Verdict Form

Your verdict will be organized according to a verdict form. This form will assist you in reaching a verdict and lists the questions you must answer based on the instructions that I

have given.

### D.   Duties of Foreperson

Finally, I referred a moment ago to a foreperson. It is customary for Juror Number 1 to serve as the foreperson, and that is what we will do here. The foreperson doesn't have any more power or authority than any other juror, and his vote or opinion doesn't count for any more than any other juror's vote or opinion. The foreperson is merely your spokesperson to the court. He will send out any notes, and when the jury has reached a verdict, he will notify the Marshal that the jury has reached a verdict, and you will come into open court and deliver your verdict.

### E.   Return of Verdict

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

Each of you must be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

## IV.   CONCLUSION

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give.

* * * * *

The Marshal will now be sworn. Members of the jury, you may now begin your deliberations.

54