UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

HANNA BOUVENG,

                                **Plaintiff,**               Docket No.: 14 CIV. 5474 (PGG)

    -against-

NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP, NYG CAPITAL LLC d/b/a FNL MEDIA LLC, and BENJAMIN WEY,

                              **Defendants.**

PLAINTIFF COUNSEL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS

------------------------------------------------------------------X

Plaintiff Hanna Bouveng respectfully submits this Reply in Support of Plaintiff Counsel's Motion for Attorney's Fees and Costs.

### INTRODUCTION

First, Defendants acknowledge the Court may award Plaintiff's counsel attorney's fees as the prevailing party in Ms. Bouveng's NYCHRL *quid pro quo* sexual harassment claim, as well as attorney's fees for those claims intertwined with her sexual harassment cause of action.

Even though Defendants were found liable for retaliation in violation of NYCHRL, however, Defendants argue Ms. Bouveng did not prevail on her NYCHRL claim since she was awarded nominal damages. As set forth in Plaintiff's Motion, however, Defendants' contention is belied by legal precedent.

Defendants further maintain Ms. Bouveng's successful defamation claim is not intertwined with her sexual harassment case since TheBlot articles were first published three months after Ms. Bouveng's firing. However, the evidence at trial showed that after Ms. Bouveng commenced her

1

*quid pro quo* sexual harassment and retaliation case, Defendants published a series of ongoing, defamatory articles falsely labelling Ms. Bouveng as, amongst other things, a prostitute, and falsely declaring Ms. Bouveng's termination was for cause (e.g., her purported alcoholism and drug abuse during her employment, her purported involvement in criminal activity, etc.) The evidence further showed Wey fired Ms. Bouveng a few hours after discovering her boyfriend James Chauvet in her bed, and that the defamatory articles repeatedly focused upon Ms. Bouveng's relationship with James Chauvet. This without more demonstrates that the two causes of action were necessarily intertwined.

Second, Defendants acknowledge the Court has inherent power to award attorneys' fees "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd., 2011 WL 1002439 at 2 (SDNY 2011)(Gardephe, J.) While further acknowledging Plaintiff's counsel has moved for attorney's fees based upon the same, (Def. Br. at 5 fn.4), Defendants suggest Plaintiff's Motion did not show why the Court should exercise that power here. To the contrary, Plaintiff's Motion set forth in detail how Plaintiff's counsel was forced to perform an exorbitant amount of work due to Defendants' ongoing discovery violations, ongoing retaliation, and ongoing malicious misconduct. (Pl. Br. at 8-12.)

Third, Defendants acknowledge that if the Court awards attorney's fees to Morelli Alters Ratner ("MAR"), the fees should total $238,411, i.e., 48% of the $500,000 awarded Ms. Bouveng for her *quid pro quo* sexual harassment claim. Defendants reach this number by lowering MAR's billing rates so the fees total $953,465 rather than $1,973,637.25, and then reducing the same by 75%. (Def. Br. 27.) However, the evidence supports Plaintiff's application as submitted.

2

Finally, Defendants suggest it is improper for the Court to decide the instant Motion prior to deciding Defendants' pending Rule 50 and 59 Motions. Plaintiff is confident she will prevail on those Motions. Moreover, unless the Court plans to throw out both Ms. Bouveng's NYCHRL *quid pro quo* sexual harassment claim and her retaliation claim *in their entirety*, which the Court should not, there is no reason to delay decision on MAR's Motion for Attorney's Fees.

Defendants do not oppose Plaintiff's Motion for taxable costs in the amount of $23,052.87.

### I. THE COURT SHOULD AWARD PLAINTIFF'S COUNSEL ATTORNEY'S FEES UNDER NYCHRL SINCE HANNA BOUVENG IS THE PREVAILING PARTY

**A. Ms. Bouveng's Fee For Her *Quid Pro Quo* Sexual Harassment Claim:**

Defendants maintain that if Ms. Bouveng is entitled to attorney's fees, those fees should pertain solely to her *quid pro quo* sexual harassment claim against Defendants. Defendants further argue that by their calculations (based upon grossly lowered billing rates and a 75% across-the-board reduction), the total attorney's fees MAR should be awarded for obtaining a $500,000 sexual harassment verdict for Ms. Bouveng is $238,411, or a 48% fee.

At the same time, Defendants contend Plaintiff's counsel is only entitled to whichever is greater, MAR's one-third contingency fee or the Court-awarded fees. From there, Defendants extrapolate that if Plaintiff's $18 million verdict is affirmed, MAR will recover a $6 million fee pursuant to its contingency fee agreement, an amount that exceeds MAR's fee application. However, Defendants' argument is nonsensical because Defendants fail to base its analysis on the awards for which statutory fees are allowed, i.e., Ms. Bouveng's NYCHRL sexual harassment and retaliation claims. Defendants' reliance upon an inapposite case where the only causes of action

3

tried permitted a statutory award of attorney's fees is misplaced.   Albunio v. City of New York, 989 NYS2d 1, 2 (2014)(*action brought solely under NYCHRL.*)

If MAR only obtained attorney's fees for Ms. Bouveng's NYCHRL sexual harassment and retaliation case via their contingency fee agreement, MAR would receive $166,667, less than the $238,411 suggested by Defendants, and significantly less than the $1,973,637.25 billed by MAR. The remaining $5,833,333 fee derives from Ms. Bouveng's defamation claim, and is simply not part of the equation.

### B. Ms. Bouveng's *Quid Pro Quo* Sexual Harassment Claim Is Intertwined With Her Defamation Claim:

Defendants argue Ms. Bouveng's sexual harassment and defamation causes of action are not intertwined since three months lapsed between Plaintiff's termination and the commencement of TheBlot's defamatory articles.   However, temporal proximity is not determinative.   As shown at trial, Wey launched his series of retaliatory, defamatory articles to vindicate his "reputation" after Ms. Bouveng filed her NYCHRL sexual harassment and retaliation complaint.   (Wey 719:3-9; 681:5-10, 698:18-699:14.)   Those articles were written in order to persuade the public that Ms. Bouveng's termination was for cause rather than a consequence of Ms. Bouveng's refusing to submit to Wey's unwanted sexual advances and Wey's discovery of Ms. Bouveng's consensual sexual relationship with another man.   Defendants' defense strategy in this litigation was the same as that reflected in TheBlot articles, namely, to assassinate Ms. Bouveng's character and credibility and attempt to show Ms. Bouveng was fired for cause.   The same evidence required to prove Defendants' statements about Ms. Bouveng were false and therefore defamatory was also necessary to prove her *quid pro quo* sexual harassment case.

4

**C.  Ms. Bouveng Was The Prevailing Party In Her NYCHRL Retaliation Claim**:

Defendants insist Ms. Bouveng is not entitled to attorney's fees for her successful NYCHRL retaliation claim since she was only awarded nominal damages.  However, as set forth in Plaintiff's Motion, a plaintiff prevails when she "succeeds on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." Carroll v. Blinken, 42 F.3d 122, 129 (2d Cir. 1994.)   Thus plaintiff prevails "when actual relief on the merits of [her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Bridges v. Eastman Kodak Co., 102 F.3d 56, 58 (2d Cir. 1996)(*plaintiff was prevailing party entitled to attorney's fees where won liability but no damages under Title VII cause of action and $20,000 on related NYSHRL action.*)   Ms. Bouveng testified that she retained legal counsel to get Wey to stop his post-termination retaliation, i.e., his harassment of her and her family.   (*See* Pl. Rule 50/59 Opp. at 17; Bouveng 1154:13-15, 1155:3-4, 9-10; Ex. 7-1.)   This verdict should have achieved that.

In Milwe, a case similar to this one, the Second Circuit determined plaintiff was entitled to an award of attorney's fees under 42 USC §1983 even though the only substantial damages awarded were for plaintiff's state tort assault claim: plaintiff was awarded nominal damages for his federal civil rights claim.   Milwe v. Cavuoto, 653 F.2d 80, 84 (2d Cir. 1981)(*reversing denial of application for award of attorney's fees, and remanding for further proceedings in accordance with ruling.*)   See also Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994) (*$1 damage award against landlord in Title VIII housing discrimination action did not exempt landlord from attorney fees liability, where plaintiffs prevailed on significant legal issue.*)   So too at bar.

Moreover, even if Ms. Bouveng's retaliation claim was deemed unsuccessful, which it was

5

not, attorney's fees may be awarded for unsuccessful claims when they are interrelated with successful ones. Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)("*So long as the plaintiff's unsuccessful claims are not wholly unrelated to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount*"); Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1183 (2d Cir.1996)(*citation omitted*)(*fees may be awarded where "the successful and unsuccessful claims are 'inextricably intertwined' and 'involve a common core of facts or [are] based on related legal theories.'"*)  As set forth in Plaintiff's Motion, Ms. Bouveng's NYCHRL sexual harassment and retaliation claims are inextricably intertwined.

## II. THE COURT SHOULD EXERCISE ITS INHERENT POWER TO AWARD ATTORNEY'S FEES IN LIGHT OF DEFENDANTS' BAD FAITH DURING THE COURSE OF THIS LITIGATION

As Defendants acknowledge, the Court also has inherent equitable power to award attorney's fees "where a party willfully disobeys a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd., 2011 WL 1002439 at 2 (SDNY 2011) (Gardephe, J.) (*citations omitted*); Alyeska Pipeline Serv. Co., 421 U.S. 240, 258–59 (1975.)

In Merck, the Southern District concluded defendant's defense of a business model premised upon deceiving the public amounted to an attempted deception of the Court. Merck Eprova AG v. Brookstone Pharm., LLC, 2013 WL 3146768 at 5 (SDNY 2013.)  At trial, Defendants attempted to conceal its misconduct by advancing thin *post hoc* rationalizations and wordplay. As a consequence of defendants' bad faith, plaintiff was forced to retain experts to

6

establish the falsity of defendants' claims, the existence of consumer confusion, and the amount of damages. The Court concluded that requiring plaintiff to bear the cost of establishing defendants' venality would be improper. Id. (*defendants acted with such disdain for both the Court and plaintiff that defendants conduct rose to the level of "vexatious" and "wanton" sufficient to merit sanctions including the cost of plaintiff's expert witnesses.*) See also Stolberg v. Board of Trustees, 474 F.2d 485 (2d Cir. 1973)(*where plaintiff prevailed on claim that he was wrongfully terminated for exercising his First Amendment rights, award of attorney's fees was necessary to ensure that plaintiff's co-workers would not be deterred from similarly exercising their First Amendment rights.*) So too at bar.

"'[B]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." Republic of Cape Verde v. A & A Partners, 89 FRD 14, 25 (SDNY 1980)(*plaintiff entitled to attorney's fees where defendant's refusal to comply with entered judgment was to harass or delay or was otherwise based upon improper motives*), citing Hall v. Cole, 412 US 1, 15 (1973.) See also Class v. Norton, 505 F.2d 123 (2d Cir. 1974)(*awarding attorney's fees and costs where defendant's non-compliance with court order was done in bad faith*); Hirschfeld v. Bd. of Elections in City of New York, 984 F.2d 35, 40 (2d Cir. 1993) (*double costs and attorney's fees imposed due to defendant's bad-faith conduct during litigation.*)

As set forth in Plaintiff's Motion, and as the Court is well aware, Plaintiff's counsel was forced to file countless petitions and motions seeking injunctive relief due to Defendants' ongoing retaliation against and defamation of Ms. Bouveng, countless petitions and motions seeking injunctive relief due to Defendants' ongoing harassment of Ms. Bouveng, her family, her friends, and other potential witnesses in this case, countless motions due to Defendants' ongoing refusal to

7

produce discovery, and a motion due to Defendants' deliberate breach of the Protective Order and Confidentiality Agreement. Accordingly, an award of attorney's fees is warranted here.

### III. PLAINTIFF'S COUNSEL'S ATTORNEYS FEES ARE REASONABLE AND APPROPRIATE

Defendants maintain MAR's billing practices were inappropriate, and that the rates charged by Plaintiff's counsel were excessive.

First, Defendants rely upon an inapposite case to suggest MAR is not entitled to fees associated with their representation of certain non-party witnesses (i.e., Ms. Bouveng's former co-workers, friend, boyfriend and father) in Ms. Bouveng's case. *See* Short v. Manhattan Apartments, Inc., 2013 WL 2477266 (SDNY 2001)(*one defendant should not pay attorney's fees solely attributable to a co-defendant.*) This argument barely warrants discussion. Obviously, Plaintiff's counsel would have met with and appeared at the depositions and hearings involving said witnesses regardless of whether MAR represented them. As set forth in Plaintiff's Motion, MAR represented these witnesses because they were intimidated by Wey's ongoing retaliation against Ms. Bouveng and those connected with her in this litigation. While MAR also represented Yonatan Weiss in a related retaliation case and therefore represented him as a witness in Ms. Bouveng's case, MAR did their best to limit Weiss's testimony at the December hearing, his deposition and trial to matters that did not include the basis for his retaliation claim.

Second, Defendants argue MAR's billing rates are unreasonably high, and that MAR is not entitled to bill clients at the rate large firms such as Dentons US LLP charges its own clients. This begs the question as to what Mr. Colton and Mr. Meyerhoff billed during their relatively brief

8

representation of Defendants that culminated in an $18 million verdict against them.[1]  "Where the opposing party challenges the reasonableness of the rate or hours charged by the moving party's counsel, courts are more likely to find that evidence of the nonmoving party's counsel's fees are relevant and discoverable." Mendez v. Radec Corp., 818 F. Supp. 2d 667, 668-69 (WDNY 2011)(*because defendant put reasonableness of hours and rates charged by plaintiff's attorneys at issue, defense counsel's billing records were relevant and discoverable for purposes of motion for attorneys' fees*); Blowers v. Lawyers Coop. Publishing Co., 526 F.Supp. 1324, 1327 (WDNY 1981)(*allowing discovery by plaintiff regarding the "amount of time spent by defendant's attorneys in the case and the amount of costs and disbursements incurred by them," after finding that this information "may have significant bearing" on the reasonableness of amount of time spent and amount of costs and disbursements incurred by plaintiff's attorney.*)  So too at bar.

Further, as set forth in Plaintiff's Motion, "although the size of the firm may be considered… courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner." Sass v. MTA Bus Co., 6 F.Supp.3d 238, 259 (EDNY 2014)(*emphasis added.*)  Notwithstanding the foregoing, MAR billed at roughly *half* the going rate of New York's largest law firms.  (Pl. Br. at 17, *referencing* hourly fees ranging from $1120-$1800.)

Moreover, Plaintiff's Motion specifically referenced the billing rates of Outten & Gould – a plaintiff's firm specializing in employment law – that were approved by the Southern District *seven years ago*. Rozell v. Ross-Holt, 576 F.Supp.2d 527, 546 (SDNY 2008)(*concluding reasonable 2008 hourly billing rate for Outten & Golden was $600 for partners, $250 for junior*

---

[1] MAR assumes "Junior Partner" is a designation used at Dentons as Defendants unilaterally bestowed that title upon Ms. McBrayer.  (Def. Ex. A.)  Since Mr. Colton and Mr. Meyerhoff have less professional experience than Ms. McBrayer (one year and five years respectively), MAR assumes they bill as "Junior Partners" at Dentons.

*associates, and $125 for paralegals.*) Defendants propose MAR bill at a significantly lower rate now than that approved for a similar firm back in 2008, i.e. name partners at $450, Ms. McBrayer at $365, first-fifth year associates at $200, and paralegals at $100. For that matter, Defendants propose MAR bill its second-fifth year associates at a lesser rate than previously awarded first year and 18-month associates. Clark v. Gotham Lasik, PLLC, 2013 WL 4437220 at 7 (SDNY 2013)(*awarding $275 hourly rate for 18-month associate in NYCHRL disability discrimination case where defendant defaulted*); Parker v. New York City Dept. of Education, 2010 WL 5653397 at 3 (SDNY 2010)(*$250-$275 hourly rate for junior associates, $200-$225 for 1st-year junior associates at civil rights employment law firm.*)

Third, Defendants argue Plaintiff's counsel failed to do the minimum work necessary to obtain maximum results. For instance, Defendants argue the defamation log they insisted upon was a waste of time, including Plaintiff's identification of 1800+ defamatory statements published in TheBlot. Plaintiff's counsel identified these statements because they were defamatory – regardless of whether they constituted defamation *per se* – and because Defendants insisted upon it and the Court required it. The number of statements and the time it took to tabulate the same was the consequence of Defendants' repeated defamation, not to mention Defendants' failure to unilaterally produce *any* Blot articles aside from copies of those produced by Plaintiff.

Defendants also maintain the appearances at Defendants' depositions by Mr. Ratner and Ms. McBrayer, along with paralegal Zoe Bartholomay, was unnecessary.[2] (This, despite the fact Defendants were represented by one-two in-house lawyers and outside counsel at virtually every

---

[2] Associate Sara Strickland, who worked on various briefs filed in the case, also attended Michaela Wey's deposition in lieu of having to read the deposition transcript. MAR's billing records reflect that a full team was not otherwise utilized at depositions. Ms. McBrayer handled the depositions of Ms. Bouveng, Nils Sundqvist, Chemme Koluman, Alicia Lu, Yonatan Weiss and Madeleine Ericsson. Mr. Ratner and Ms. McBrayer covered the deposition of Defendants' expert Dr. Ziv and witness James Chauvet.

10

deposition.) This case was complicated: there were an extraordinary number of documents; there was prior testimony from a two-day hearing; there was a very limited time to complete discovery; and the appearance of Ms. McBrayer and Mr. Ratner, along with a paralegal, at Defendants' depositions was necessary to ensure the right questions were asked, proper answers were given, and the correct documents were available and discussed. Again, as set forth above, Plaintiff is entitled to discover defense counsel's billing records to compare the rates charged, coverage required and hours expended by defense counsel on the same matters.

Finally, Defendants suggest MAR's billing records contain vague and inaccurate submissions, and therefore should be subjected to across-the-board reductions of 75%. In support of this claim, Defendants point out that on 13 occasions Ms. McBrayer's billing was apparently erroneously rounded up by 6 minutes, totaling $975. While this certainly was not deliberate, MAR waives the $975. Defendants further point out that billings attributed to Mr. Ratner for May 2014 must necessarily have occurred in May 2015. Plaintiff agrees these are typos, but does not agree that this suggests MAR's billing practice constitutes some sort of fraud. In addition, Defendants argue MAR improperly billed for travel at full-rate. To the contrary, whether by subway or car service, MAR's team used that time to continue to strategize, review documents, motions, caselaw and transcripts, and prepare this case for trial.

The 75% reduction Defendants advocate is hardly warranted here. For instance, in Rozell, the Court instituted a 15% across-the board reduction of attorney's fees due to excessive time billed on certain tasks. Rozell, supra, 576 F.Supp.2d at 546. In cases cited by Defendants where billing was deemed too general and vague, 20% across-the-board reductions were rendered. Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2nd Cir. 1998); Trustees of the

Bricklayers & Allied Craftworkers Local 5 5 New York Ret., Welfare & Training Funds v. Helmer-Cronin Construction, Inc., 2005 WL 3789085 at 5 (SDNY 2005.)

The other cases cited by Defendants are inapposite. In Days Inn Worldwide, Inc., the Southern District reduced counsel's fees since no "reasonable paying client would be willing to pay $20,057.54 in attorney fees, for a simple case, such as this, involving a settled area of law and no complex issues, *in which the defendant failed to plead or otherwise defend.*" Days Inn Worldwide, Inc. v. Amar Hotels, Inc., 2008 WL 2485407 at 10 (SDNY 2008)(*emphasis added*)(*reduction also due to numerous billing deficiencies and excessive expenditure of time.*) In Castillo, plaintiff's success was minimal compared to the relief sought, since he was awarded *de minimus* damages on his one successful NYCHRL claim while his other eight claims were dismissed. Castillo v. Time Warner Cable of New York City, 2013 WL 1759558 at 4-5 (SDNY 2013)(*reducing requested fee since plaintiff's attorneys could not recover for hours expended prosecuting plaintiff's unsuccessful claims as they were not "inextricably intertwined" with his successful NYCHRL harassment claim.*) See also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC, 2013 WL 3322249 at 6-8 (SDNY 2013)(*reducing attorney's fees where hours were grossly excessive relative to the nature of the work performed, and billing entries were vague or block-billed and otherwise unreasonable.*)

Accordingly, Morelli Alters Ratner's request for $1,973,637.25 in attorney's fees and $23,052.87 in taxable costs should be granted.

## X. CONCLUSION

For the foregoing reasons, Morelli Alters Ratner respectfully requests a reasonable

12

Attorney's fee of $1,973,637.22 and taxable costs in the amount of $23,052.87.

                                      Respectfully submitted,

                                      /s/ Martha M. McBrayer
                                      David S. Ratner   (DR-7758)
                                      Martha M. McBrayer   (MM-7097)
                                      **MORELLI ALTERS RATNER PC**
                                      777 Third Avenue, 31st Floor
                                      New York, New York 10017
                                      Tel:   (212) 751-9800
                                      Fax: (212) 751-0046