UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/9/15

HANNA BOUVENG,

           Plaintiff,

    – against –

NYG CAPITAL LLC d/b/a NEW YORK
GLOBAL GROUP, NYG CAPITAL LLC
d/b/a FNL MEDIA LLC, and BENJAMIN
WEY,

           Defendants.

**ORDER**

14 Civ. 5474 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Hanna Bouveng has moved by order to show cause for contempt sanctions against Defendants NYG Capital LLC d/b/a New York Global Group ("NYGG"), FNL Media LLC ("FNL Media"), and Benjamin Wey. (Dkt. No. 116) Plaintiff alleges that Defendants violated a Court-ordered Confidentiality Agreement and Protective Order by (1) posting confidential material on Defendants' online digital publication, The Blot Magazine, and on Defendant Wey's Facebook page; and (2) attaching confidential material to a submission filed on the Court's public Electronic Case Filing ("ECF") system. Plaintiff seeks an order (1) holding Defendants in contempt for deliberately breaching the Protective Order; (2) imposing a financial sanction on Defendants; and (3) awarding Plaintiff attorneys' fees associated with this application. For the reasons stated below, Plaintiff's motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff is a twenty-five year old Swedish citizen who was employed as the Director of Corporate Communications at Defendant NYGG from October 1, 2013 until April 22, 2014. (Trial Tr. 489, 896, 916, 979) Defendant Wey is the Chief Executive Officer of NYGG, an international business consulting firm based in Manhattan. (Id. at 487, 759) Defendant FNL Media is a subsidiary of NYGG. (Id. at 267) FNL Media owns The Blot Magazine ("The Blot" or "Blot"), an online digital publication which appears on the website www.theblot.com. (Id.; Court Exhibit ("Ct. Ex.") 2) Wey is the publisher of The Blot. (Trial Tr. 488)

Plaintiff's claims arise from alleged events that took place during and after her employment at NYGG. See SAC (Dkt. No. 40). Plaintiff alleges, inter alia, that Defendant Wey subjected her to ongoing sexual harassment during her employment. Plaintiff also alleges that Defendants retaliated against her for refusing Wey's sexual advances and for bringing this lawsuit. According to Plaintiff, that retaliation includes Defendants' publication of embarrassing and defamatory articles and messages on The Blot and elsewhere attacking Plaintiff, her family, friends, colleagues, and attorneys. The SAC sets forth claims for sexual harassment, hostile work environment, gender discrimination, and retaliation under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") (id. ¶¶ 161-198), and state law claims for assault, battery, intentional infliction of emotional distress, defamation, and breach of contract. (Id. ¶¶ 199-227) Plaintiff seeks compensatory and punitive damages, and injunctive relief.[1]

---

[1] This case proceeded to trial on June 15, 2015. On June 29, 2015, the jury returned a verdict finding in favor of Plaintiff on her (1) NYSHRL and NYCHRL quid pro quo sexual harassment claims; (2) NYSHRL and NYCHRL retaliation claims; and (3) defamation claim. (Trial Tr.

2

In February 2015, the parties entered into a Stipulated Confidentiality Agreement and Protective Order. This Court "so ordered" the parties' stipulation on February 13, 2015. (Dkt. No. 81) The Protective Order provides, in pertinent part:

> IT IS HEREBY ORDERED that any person subject to this Order – including without limitation the Parties to this action (including their respective corporate parents, successors, and assigns), their representatives, agents, experts and consultants, all third parties providing discovery in this action, and all other interested persons with actual or constructive notice of this Order – will adhere to the following terms, upon pain of contempt:
>
> 1. With respect to "Discovery Material" (i.e., information of any kind produced or disclosed in the course of discovery in this action) that a person has designated as "Confidential" pursuant to this Order, no person subject to this Order may disclose such Confidential Discovery Material to anyone else except as this Order expressly permits[]. . . .
>
> 4. A Producing Party [i.e., a party or person producing or disclosing Discovery Material] or its counsel may designate deposition exhibits or portions of deposition transcripts as Confidential Discovery Material either by: (a) indicating on the record during the deposition that a question calls for Confidential information . . . [;] or (b) notifying the reporter and all counsel of record, in writing, within 30 days after a deposition has concluded, of the specific pages and lines of the transcript that are to be designated "Confidential[]" . . . . <u>During the 30-day period following a deposition, all Parties will treat the entire deposition transcript as if it had been designated Confidential</u>. . . .
>
> 19. This Court will retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for the contempt thereof.

(Dkt. No. 81 at 1-8 (emphasis added))

On March 17, 2015, Defendants took Plaintiff's deposition. (Pltf. Dep. Tr. (Dkt. No. 290); Pltf. Sanctions Br. (Dkt. No. 116), Ex. C ("Ratner Aff.") ¶ 5; Def. Opp. to Sanctions

---

1669-72) The jury returned a verdict finding in favor of Defendant Wey on Plaintiff's assault and battery claims. (Id. at 1672) The jury awarded Plaintiff compensatory damages in the amount of $2,000,001 on her sexual harassment, retaliation, and defamation claims, and punitive damages in the amount of $16,000,003 on her defamation and retaliation claims. (Id. at 1673-74, 1710-12)

3

Motion (Dkt. No. 126) at 2) During the deposition, defense counsel asked Plaintiff if she had used illegal drugs before, during, or after the time that she worked at NYGG. (Pltf. Dep. Tr. (Dkt. No. 140) at 22-25, 264-66) Plaintiff's counsel objected to a number of these questions as "[c]ompletely irrelevant." (Id. at 22-23, 25, 264) Plaintiff answered these questions, however. (See id. at 22-24, 264-65)

On the morning of March 18, 2015, an "Editor's Note" was posted to a Blot article that was originally posted on February 25, 2015. The headline reads: "Breaking News – Swedish woman Hanna Bouveng admitted to being a cocaine and methamphetamine user during a sworn deposition in New York on March 17, 2015." (Pltf. Mar. 18, 2015 Ltr. (Dkt. No. 291), Ex. A at 4 (emphasis in original)) The article states that "[o]n March 17, 2015, when questioned under oath, Hanna Bouveng admitted to using cocaine and methamphetamine in New York." (Id., Ex. A at 5) That same day, Defendant Wey included a hyperlink to this article in a public posting on his Facebook page, along with the following message:

> BREAKING NEWS: Swedish extortionist HANNA BOUVENG ADMITTED to using cocaine and illegal drug methamphetamine while in New York, before she was fired from a 6 month internship. The fact surfaced when the cocaine user #HANNABOUVENG was questioned under oath in New York on March 17, 2015 during a court proceeding.

(Id., Ex. A at 1 (emphasis in original))

That same day – March 18, 2015 – defense counsel – Justin Sher of Sher Tremonte LLP – filed a brief on the public portion of this District's Electronic Case Filing ("ECF") system in support of Defendants' then-pending motion to conduct expert discovery and to compel a psychiatric examination of Bouveng. (Dkt. No. 111) Attached as an exhibit to that brief are pages from Bouveng's March 17, 2015 deposition transcript. These excerpts "pertain[] to [Bouveng's] testimony concerning [the] psychological injuries [she allegedly suffered as a

4

result of Defendants' conduct]." (Ratner Aff. (Dkt. No. 116) ¶ 9; Def. Motion to Conduct Expert Discovery (Dkt. No. 111), Ex. D) Plaintiff's counsel immediately sent a letter to Sher complaining that The Blot article and ECF filing violate the Protective Order. (Ratner Aff. (Dkt. No. 116) ¶ 10) Plaintiff's counsel also submitted a letter to the Court alleging that Defendants violated the Protective Order by (1) "publish[ing] yet another retaliatory article in The[]Blot . . . that specifically references Ms. Bouveng's deposition testimony," and (2) "e-fil[ing] portions of Plaintiff's deposition transcript. . . ." (Pltf. Mar. 18, 2015 Ltr. (Dkt. No. 291) at 1)

At a March 19, 2015 conference, Sher stated that he "asked the ECF Clerk to remove the [deposition transcript pages attached to Defendants' March 18, 2015 filing] . . . as soon as [he] received [Plaintiff's] letter [notifying Defendants of the alleged breaches]. . . ." (Mar. 19, 2015 Conf. Tr. (Dkt. No. 133) at 2) Sher also stated that "[D]efendants are in [the] process . . . [of] revis[ing] the article . . . that [Plaintiff] [has] complained about," and that "further revisions [will be made] to make sure there is no confidential information in that article[,] or rather[,] no reference to Ms. Bouveng's deposition or her testimony in that article." (Id. at 2-3)

In a subsequent article, the New York Post reported that:

> Following a hearing before Manhattan federal Judge Paul Gardephe, Wey approached reporters to blab that Bouveng, in a deposition days earlier, allegedly admitted to "using cocaine["] and "ecstasy." . . . Even as his own lawyer tried to drag him away from reporters, Wey . . . told reporters he believes he has every right to openly address Bouveng's alleged testimony about "drug use" because it came out of a deposition. . . . Wey . . . said he believes her deposition is fair game for him to discuss because lawyers for both sides have yet to decide what portions of her testimony were confidential.

(Pltf. Sanctions Br. (Dkt. No. 116), Ex. B at 2) The New York Post article also references Sher's ECF filing, stating that "[o]nly a portion of Bouveng's deposition on [March 17, 2015] had been made public," and summarizing the portion of Bouveng's deposition testimony made public as a

5

result of the ECF filing. (Id.) The New York Daily News reported that "Benjamin Wey . . . told reporters that Hanna Bouveng . . . admitted during a deposition this week that she used cocaine and ecstasy while working at his company." (Id. at 3) The Daily News also quotes language from The Blot discussing Plaintiff's deposition testimony. (Id. at 3-4)

By March 20, 2015, the excerpts from Plaintiff's deposition had been removed from the public section of the ECF system. See Dkt. No. 111, Ex. 4 (indicating that it is a "SEALED Document"). Moreover, Wey's Facebook page was changed to a "private" setting; his messages were no longer available to the general public but could still be accessed by his online "friends." See Pltf. Sanctions Reply Br. (Dkt. No. 128) at 4. As of March 31, 2015, Defendants' article on The Blot no longer contained the "Editor's Note" concerning Plaintiff's deposition testimony, or the statement that Plaintiff admitted to using drugs "[o]n March 17, 2015, when questioned under oath. . . ." See Pltf. Sanctions Reply Br. (Dkt. No. 128), Ex. 2. The Blot article repeatedly described Plaintiff as a "cocaine and meth user" and a "cocaine and illegal drug Methamphetamine / Ecstasy user," however, and refers to Plaintiff's "verified history as a cocaine and illegal drug meth user." Id. at 3, 5. Another article on The Blot – which was originally published on July 30, 2014, but which was updated and remained on The Blot website as of March 31, 2015 – stated that "Hanna Bouveng confessed as a user of cocaine and illegal drug methamphetamine" and that "Hanna Bouveng is a confessed cocaine and illegal drug methamphetamine user." (Id., Ex. 3 at 10, 12)

On March 23, 2015, Plaintiff moved for an order (1) "holding Defendants in contempt for their deliberate posting of Confidential Material in [their] digital magazine The Blot as well as [their] placement of Confidential Material in the Court's public file in violation of the Stipulated Confidentiality Agreement and Protective Order governing discovery in this case";

6

(2) "sanctioning Defendants for this misconduct via a monetary fine in the amount of $10,000 per violation"; and (3) "awarding Plaintiff attorney's fees." (Pltf. Sanctions Br. (Dkt. No. 116) at 1)

## DISCUSSION

### I. CIVIL CONTEMPT

#### A. Applicable Law

"[C]ourts have the inherent power to maintain the integrity of protective orders by imposing sanctions on those who violate them." Schiller v. City of New York, No. 04 Civ. 7921 (KMK) (JFC), 2007 WL 1623108, at *3 (S.D.N.Y. June 5, 2007) (citing Greiner v. City of Champlin, 152 F.3d 787, 789-90 (8th Cir. 1998); Lewis v. Wal-Mart Stores, Inc., No. 02 Civ. 944 (CVE) (FHM), 2006 WL 1892583, at *3 (N.D. Okla. July 10, 2006); Static Control Components, Inc. v. Darkprint Imaging, 201 F.R.D. 431, 436 (M.D.N.C. 2001)); see also Hunt v. Enzo Biochem, Inc., 904 F. Supp. 2d 337, 344 (S.D.N.Y. 2012) ("Courts have inherent power to enforce their orders. [T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order.") (citations and quotation marks omitted) (alteration in Hunt); Lynch v. Southampton Animal Shelter Found., Inc., No. 10 Civ. 2917 (ADS) (ETB), 2013 WL 80178, at *4 (E.D.N.Y. Jan. 7, 2013), adhered to on reconsideration, No. 10 Civ. 2917 (ADS) (ETB), 2013 WL 1563468 (E.D.N.Y. Apr. 12, 2013); Dorsett v. Cnty. of Nassau, No. 10 Civ. 1258 (ADS), 2012 WL 2076911, at *6 (E.D.N.Y. June 7, 2012) (quoting Schiller, 2007 WL 1623108, at *3; In re Debs, 158 U.S. 564, 594 (1895)). "The Court's inherent power to hold a party in contempt is a necessary function for purposes of managing and maintaining order in the efficient and expeditious administration of justice." Flaherty v. Filardi, No. 03 Civ. 2167 (LTS)

7

(HBP), 2009 WL 3762305, at *4 (S.D.N.Y. Nov. 10, 2009) (citing Leadsinger, Inc. v. Cole, 2006 WL 2266312, at *8 (S.D.N.Y. Aug. 4, 2006) (citations omitted)).

"A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004) (quoting King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995)). "It need not be established that the violation was willful." Id. (citing Donovan v. Sovereign Sec. Ltd., 726 F.2d 55, 59 (2d Cir. 1984)).

### B. Analysis

Here, the Protective Order states that "[d]uring the 30-day period following a deposition, all Parties will treat the entire deposition transcript as if it had been designated Confidential." (Dkt. No. 81 at 3) This language is "clear and unambiguous" in its prohibition on the public disclosure of any information revealed during a deposition for the 30 days following the deposition. See Paramedics, 369 F.3d at 655.

Defendants concede that – in (1) disclosing portions of Plaintiff's deposition on The Blot website, and (2) filing excerpts from Plaintiff's deposition on the public ECF system – they violated the Protective Order. Indeed, Defendants state that they "removed both the online reference and the court filing" because they "acknowledg[ed] that the confidentiality order in this case calls for deposition transcripts to be automatically treated as confidential for thirty days regardless of content." (Def. Sanctions Opp. Br. (Dkt. No. 126) at 1) Although Defendants do not address the post on Wey's Facebook page, this post also clearly violated the Protective Order, because it revealed information that was disclosed during Plaintiff's deposition. See Pltf.

8

Mar. 18, 2015 Ltr. (Dkt. No. 291), Ex. A at 1 ("HANNA BOUVENG ADMITTED to using cocaine and illegal drug methamphetamine. . . . The fact surfaced when the cocaine user . . . was questioned under oath in New York on March 17, 2015 during a court proceeding.") (emphasis in original). Accordingly, the "proof of [Defendants'] noncompliance [with the Protective Order] is clear and convincing." See Paramedics, 369 F.3d at 655.

Defendants argue, however, that "a finding of contempt is inappropriate because any violation of the [Protective Order] was de minimis and because Defendants exercised diligence in promptly removing the materials in question from public view once they became aware that their confidentiality was at issue." (Def. Sanctions Opp. Br. (Dkt. No. 126) at 5) Defendants further contend that, "[g]iven the minor and promptly remedied disclosures at issue, it is apparent that the goal of [Plaintiff's] [m]otion is not to protect purportedly confidential information, but rather to coopt this Court's enforcement power to intimidate Defendants into not publicly speaking and expressing their opinions about this case at all." (Id. at 5-6)

### 1. **Defendants' ECF Filing**

Defendants' ECF submission improperly, inexplicably, and inexcusably included a portion of Plaintiff's deposition transcript and thus flagrantly violated the explicit terms of the Protective Order. Defense counsel states, however, that he "asked the ECF Clerk to remove the filing . . . as soon as [he] received [Plaintiff's counsel's] letter [regarding the alleged violations]" (Mar. 19, 2015 Conf. Tr. (Dkt. No. 133) at 2), and the transcript pages were removed from the ECF system that same day.[2] This Court concludes that defense counsel took appropriate steps to remove the ECF filing as soon as he was notified that it violated the Protective Order.

---

[2] Plaintiff states that "[a]s of 6:00 p.m. on March 18, 2015, Defendants' efiling still appeared on ECF. As a consequence, [Plaintiff's counsel] called the ECF Docket Clerk who promptly blocked it from public view." (Pltf. Sanctions Reply Br. (Dkt. No. 128) at 2 n.1) Although

9

Under all the circumstances, it would not be appropriate to impose contempt sanctions on Sher based on his ECF filing.³ "It is well established that 'imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged.'" Philip Morris USA Inc. v. Los Corazones Deli Grocery Inc., No. 09 Civ. 9608 (RJS), 2014 WL 4363836, at *2 (S.D.N.Y. Sept. 3, 2014) (quoting Paramedics, 369 F.3d at 657) (citing New York State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1352-53 (2d Cir. 1989)). Plaintiff does not contend that there is a "threat[] [of] continued contumacy" with respect to defense counsel's public filings on the ECF system, and there is no evidence that Sher – who was later replaced as defense counsel – is likely to violate the Protective Order again. See Philip Morris USA, 2014 WL 4363836, at *2; see also Indep. Living Aids, Inc. v. Maxi-Aids, Inc., 349 F. Supp. 2d 509, 518 (E.D.N.Y. 2004) ("However, because the underlying purpose of 'coercive sanctions' is to coerce the defendant into compliance with the court's order, . . . and the record indicates that since March 29, 2002, the Defendants have been in compliance with the Court's orders and there is no indication that the Defendants are likely to violate the Court's orders in the future, the Court finds that 'coercive sanctions' are not warranted.") (internal quotation marks and citation omitted). Nor does Plaintiff assert that the public filing of excerpts from her deposition – which pertain to her psychological injuries – has caused her any particular harm. See Pltf. Sanctions Reply Br. (Dkt. No. 128) at 4-5 (asserting that Plaintiff has suffered significant harm due to Defendants' "repeated branding of Ms. Bouveng as a 'cocaine user' and 'meth user,'" but not contending that

---

Plaintiff appears to suggest that Defendants did not ensure that the filing was promptly removed, Plaintiff acknowledges that "Sher Tremonte may have taken steps to remove its efiling." (Id. at 2)

³ Plaintiff implicitly acknowledges this. Her argument for sanctions focuses almost entirely on Defendant Wey's statements on The Blot. See Pltf. Sanctions Reply Br. (Dkt. No. 128) at 2-5.

Plaintiff has suffered any particular harm as a result of the ECF filing). Accordingly, sanctions are not necessary to "bring about [defense counsel's] compliance" with the Protective Order, see Philip Morris USA, 2014 WL 4363836, at *2, or to compensate Plaintiff for injuries suffered as a result of defense counsel's violation.

### 2. Disclosures on The Blot and on Facebook

While excerpts from Plaintiff's deposition were attached to the ECF submission in order to support "Defendants' argument that a psychiatric expert is appropriate in this case" (Def. Sanctions Opp. Br. (Dkt. No. 126) at 3), Wey's statements on The Blot and on Facebook appear to have been designed merely to disclose portions of Plaintiff's deposition testimony. See, e.g., Mar. 18, 2015 Pltf. Ltr. (Dkt. No. 291), Ex. A at 5 (The Blot) ("On March 17, 2015, when questioned under oath, Hanna Bouveng admitted to using cocaine and methamphetamine in New York."). Moreover, although Defendants have since deleted from The Blot the most explicit references to Plaintiff's deposition testimony, and Wey – as of April 2015 – set his Facebook profile to a "private" setting, at least two articles on The Blot – as of March 31, 2015 – still included statements that incorporate information from Plaintiff's deposition. See, e.g., Pltf. Sanctions Reply Br. (Dkt. No. 128), Exs. 2-3 (Blot articles stating that Plaintiff "confessed as a user of cocaine and illegal drug Methamphetamine," and describing Plaintiff as a "confessed cocaine and illegal drug methamphetamine user" and an "admitted cocaine and illegal drug user"). These violations of the Protective Order demonstrate that Defendants "[have] not diligently attempted to comply in a reasonable manner [with the Protective Order]." Paramedics, 369 F.3d at 655 (internal quotation marks and citation omitted). Accordingly, this Court finds Defendants in civil contempt for violating the Protective Order.

## II. AMOUNT OF SANCTIONS

Plaintiff "requests damages in the amount of $10,000 for each of Defendants' violations [of the Protective Order], as well as damages in the amount of $10,000 daily for each violation after the March 19 hearing." (Pltf. Sanctions Br. (Dkt. No. 116) at 5) Plaintiff's proposed award thus amounts to at least $70,000. See Ratner Aff. (Dkt. No. 116) ¶ 16. Plaintiff's counsel states that an award of compensatory damages in this amount is necessary because Defendants' "violations of the . . . Protective Order have caused Ms. Bouveng to suffer additional harm to her reputation, and furthered her emotional distress." (Id. ¶ 15) Plaintiff further asserts that

> Defendants' suggestion that their repeated branding of Ms. Bouveng as a 'cocaine user' and 'meth user' is a de minimis violation of the . . . Protective Order that caused Plaintiff no harm is, frankly, ludicrous. Ironically, the only argument that might support Defendants' contention is that prior to these violations, Defendants already caused so much damage to Ms. Bouveng's reputation through Wey's emails, Facebook posts, and text messages, and through Defendants' retaliatory and defamatory publications in The[]Blot, that she has little reputation left to ruin. That does not mean that Defendants' recent salvos lack their intended sting.

(Pltf. Sanctions Reply Br. (Dkt. No. 128) at 4-5 (emphasis in original))

### A. Applicable Law

As noted above, "'[a] sanction may . . . be both coercive and compensatory.'" Paramedics, 369 F.3d at 658 (quoting Terry, 886 F.2d at 1353). Where the purpose of a sanction is to coerce compliance, "[a] court enjoys broad discretion in setting the amount of . . . sanctions." F.T.C. v. BlueHippo Funding, LLC, 762 F.3d 238, 243 (2d Cir. 2014) (citing Paramedics, 369 F.3d at 657 (citation omitted)). In "'design[ing] a remedy that will bring about compliance,'" a court should "tak[e] into account 'the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in

bringing about [compliance], and the contemnor's ability to pay.'" Philip Morris USA, 2014 WL 4363836, at *2 (quoting Paramedics, 369 F.3d at 657-58) (third alteration in Philip Morris USA).

"However, '[i]f the fine is compensatory in purpose, the district court has less discretion.'" Id. (quoting Paramedics, 369 F.3d at 658) (alteration in Philip Morris USA). "Compensatory sanctions should reimburse the injured party for its actual damages." Terry, 886 F.2d at 1353 (citing United States v. United Mine Workers of America, 330 U.S. 258, 304 (1947)).

> As the Second Circuit has explained, compensatory fines in civil contempt proceedings are analogous to a tort judgment for damages caused by wrongful conduct: they are "employed not to vindicate the court's authority but to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed."

Merriweather v. Sherwood, 250 F. Supp. 2d 391, 394-95 (S.D.N.Y. 2003) (quoting Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979)). "[S]ome proof of loss must be present to justify [a sanction's] compensatory aspects." Terry, 886 F.2d at 1353 (citing General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379-80 (9th Cir. 1986); Shuffler v. Heritage Bank, 720 F.2d 1141, 1148 (9th Cir. 1983); Winner Corp. v. H.A. Caesar & Co., 511 F.2d 1010, 1015 (6th Cir. 1975)). Accordingly, compensatory damages are not appropriate where a plaintiff "fail[s] to prove actual monetary damages or loss as a result of [defendants'] contumacious conduct beyond costs and counsel fees.'" Perfect Fit Ind., Inc. v. ACME Quilting Co., Inc., No. 77 Civ. 2004 (CBM), 1985 WL 376, at *3 (S.D.N.Y. Mar. 7, 1985); see also Leadsinger, Inc. v. Cole, No. 05 Civ. 5606 (HBP), 2006 WL 2266312, at *17 (S.D.N.Y. Aug. 4, 2006).

Whether sanctions are imposed for coercive or compensatory purposes, "[t]he district court . . . may award appropriate attorney fees and costs to a victim of contempt." Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996). "[W]hether willful contempt is a prerequisite for an attorneys' fee award remains an open question in this Circuit." Shady Records, Inc. v. Source Enters., Inc., 351 F. Supp. 2d 64, 67 (S.D.N.Y. 2004)) (citations omitted); see also Mrs. U.S. Nat. Pageant, Inc. v. Crown Couture, LLC, No. 14 Civ. 6114L, 2015 WL 105265, at *1 n.1 (W.D.N.Y. Jan. 7, 2015) ("Whether a finding of willfulness is prerequisite to an award of attorney's fees for civil contempt remains an open question in this circuit.") (citing Jacobs v. Citibank, N.A., 318 F. App'x 3, 4 n.3 (2d Cir. 2008) (citations omitted)). Nonetheless, "[w]hen deciding whether to award fees, courts have focused on the willfulness of the contemnor's misconduct," and "a finding of willfulness strongly supports granting them." Weitzman, 98 F.3d at 719.

### B. Analysis

"Insofar as [Plaintiff] request[s] [$10,000] . . . for every past violation [of the Protective Order], the fines [she] request[s] [are] punitive. Defendants would be unable to purge by complying with the [Protective Order] and thereby reducing or avoiding the fine." Merriweather, 250 F. Supp. 2d at 394 (emphasis in original). Moreover, "[t]o the extent that the [requested] sanction is compensatory, the fine should be correlated with the loss incurred by [Plaintiff]." Paramedics, 369 F.3d at 658 (citing King, 65 F.3d at 1062). The case law is clear that compensatory damages are appropriate only where a plaintiff "prove[s] actual monetary damages or loss as a result of [a defendant's] contumacious conduct beyond costs and counsel fees." Perfect Fit Indus., Inc., 1985 WL 376; see also Paramedics, 369 F.3d at 658 ("[S]ome proof of loss must be present to justify [the] compensatory aspects [of contempt sanctions].")

14

(quotation marks and citation omitted); Perfect Fit Indus., Inc., 673 F.2d at 57 ("When the purpose is compensatory, the order should be fashioned so as to reimburse the injured party for his actual damages.") (citation omitted). Assuming arguendo that Plaintiff has suffered emotional and reputational harm as a result of Defendants' violations of the Protective Order, she has not cited any case suggesting that she is entitled to an award of $10,000 per violation. Given that there is no evidence that Plaintiff's requested sanctions relief is "tied to actual loss by the injured party," Philip Morris USA, 2014 WL 4363836, at *2, the sanction amount requested by Plaintiff is not appropriate.

With respect to the imposition of a coercive sanction aimed at deterring future violations of the Protective Order, Defendants have removed all references to Plaintiff in their online postings. See Ct. Ex. 2. Moreover, Plaintiff has obtained a jury verdict of $18 million against Defendants. See Trial Tr. 1673-74, 1710-12. Under these circumstances, Plaintiff has not demonstrated that a coercive sanction is necessary to deter future violations.

Plaintiff also requests an award of "the reasonable costs of prosecuting the [alleged] contempt, including attorney's fees." (Pltf. Sanctions Br. (Dkt. No. 116) at 5) As noted above, although it is an open question in this Circuit as to whether the imposition of attorneys' fees requires a finding of willful contempt, "a finding of willfulness strongly supports granting them." Weitzman, 98 F.3d at 719. Here, Defendants willfully violated the Protective Order. Blot articles disclosing portions of Plaintiff's deposition remained posted even after Defendants were notified that such references violated the Protective Order. Accordingly, this Court concludes that Defendants' contempt was willful and that Plaintiff is entitled to "the costs of enforcing the [Protective] [O]rder, including court costs and reasonable attorneys' fees incurred in bringing and prosecuting the contempt motion." Shady Records, Inc., 351 F. Supp.

2d at 74. This sanction is compensatory in nature because it will "compensate [Plaintiff] for . . . the expenses [she] incurred due to [Defendants'] contemptuous conduct." See Jacobs, 318 F. App'x at 4.

Plaintiff's counsel submitted an affidavit stating that his law firm – Morelli Alters Ratner LLP – incurred $9,725 in attorneys' fees and $200 in costs in connection with its motion for contempt sanctions.[4] (Ratner Aff. (Dkt. No. 116) ¶¶ 17-18, 20)  Plaintiff's counsel did not submit any billing records or expense reports that support these amounts, however.  Accordingly, Plaintiff will file an application in support of the costs and fees incurred in connection with its motion for contempt sanctions by **October 23, 2015**.  Defendants will file any objection to the expense claim by **October 30, 2015**.  Any reply must be filed by **November 7, 2015**.

## CONCLUSION

For the reasons stated above, Defendants are found to be in civil contempt as a result of their willful violation of the Court's Protective Order and Plaintiff is awarded reasonable attorneys' fees and costs associated with the motion.  Plaintiff's motion for contempt sanctions is otherwise denied.

Dated: New York, New York
       October 9, 2015

SO ORDERED.

*Paul Gardephe* (signature)
Paul G. Gardephe
United States District Judge

---

[4] Plaintiff's counsel also states that he "anticipate[s] expending approximately two hours more at the [order to show cause hearing]," and requests $2,800 in attorneys' fees for that time. (Ratner Aff. (Dkt. No. 116) ¶ 19)  Because this Court will not hold a hearing in connection with Plaintiff's motion, this request is denied.