UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

HANNA BOUVENG,

               Plaintiff,

– against –

NYG CAPITAL LLC d/b/a NEW YORK
GLOBAL GROUP, FNL MEDIA LLC, and
BENJAMIN WEY,

               Defendants.

</td></tr>
</table>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _Mar. 31, 2016_

**ORDER**

14 Civ. 5474 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On June 29, 2015, a jury awarded Plaintiff Hanna Bouveng $18 million in compensatory and punitive damages on her sexual harassment and defamation claims against Defendants NYG Capital LLC, d/b/a New York Global Group ("NYGG"), FNL Media LLC ("FNL Media"), and Benjamin Wey ("Wey"). The verdict followed eleven months of contentious litigation, including a two-day preliminary injunction hearing and a ten-day jury trial. Plaintiff now seeks $1,973,637.25 in attorneys' fees and $23,052.87 in costs pursuant to the fee-shifting provision in the New York City Human Rights Law, N.Y.C. Admin. Code § 8-502(f)).

**BACKGROUND[1]**

Plaintiff Hanna Bouveng brought this action on July 21, 2014 against Defendants, alleging claims of, inter alia, (1) quid pro quo sexual harassment under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL")

---

[1] The facts of this case are set forth in detail in this Court's March 31, 2016 Memorandum Opinion and Order (Dkt. No. 296) and will not be repeated at length here.

against all Defendants; (2) retaliation under the NYSHRL and NYCHRL against all Defendants; (3) defamation against all defendants; and (4) assault and battery against Wey.  Plaintiff alleged that she was sexually harassed by Wey, the CEO of NYGG and the publisher of FNL Media, while she was employed at NYGG from October 1, 2013 until April 22, 2014.  (See Cmplt. (Dkt. No. 1))  Plaintiff also claimed that Wey retaliated against her after she complained about the sexual harassment, publishing defamatory articles about her online.  She sought a preliminary injunction barring Defendants from publishing any more defamatory material about her.  (Dkt. No. 3)  On August 29, 2014, Plaintiff withdrew her application for a preliminary injunction pursuant to an agreement between the parties.  (Dkt. No. 27)  Plaintiff later amended the Complaint to include a breach of contract claim, however, alleging that Defendants had published additional defamatory material in violation of that agreement.  (Second Am. Cmplt. (Dkt. No. 40) at ¶¶ 153-56)

On June 29, 2015, following a ten-day trial, a jury returned a verdict in Plaintiff's favor on the NYSHRL and NYCHRL claims and the defamation claim, and in Wey's favor on the assault and battery claim.  The jury awarded Plaintiff

> (1) $500,000 in compensatory damages on her quid pro quo sexual harassment claims under the NYSHRL and NYCHRL;
> (2) $1.5 million in compensatory damages on her defamation claim;
> (3) $1 in compensatory damages on her retaliation claims under the NYSHRL and NYCHRL;
> (4) $10 million in punitive damages on her defamation claim against Wey;
> (5) $1 million in punitive damages on her defamation claim against NYGG;
> (6) $5 million in punitive damages on her defamation claim against FNL Media;
> (7) $1 in punitive damages on her retaliation claim under the NYCHRL against Wey;
> (8) $1 in punitive damages on her retaliation claim under the NYCHRL against NYGG;
> (9) $1 in punitive damages on her retaliation claim under the NYCHRL against FNL Media.

(Judgment (Dkt. No. 249))

Defendants filed post-trial motions seeking judgment as a matter of law, a new trial, and/or remittitur of the $18 million verdict.  (Dkt. No. 255)  On March 31, 2016, this Court issued a Memorandum Opinion and Order denying Defendants' motion for judgment as a matter of law, but granting Defendants' motion for a new trial on damages unless Plaintiff agrees to a remittitur (1) reducing the compensatory damages award in her NYSHRL and NYCHRL quid pro quo sexual harassment claims to $150,000; (2) reducing the punitive damages award against Wey on the defamation claim to $1.5 million; and (3) reducing the punitive damages award against FNL Media on the defamation claim to $1.5 million.  (Dkt. No. 296)

On July 29, 2015, Plaintiff filed the instant motion for an award of attorneys' fees and costs pursuant to the fee-shifting provision in the NYCHRL.  (Dkt. No. 252)  She seeks attorneys' fees in the amount of $1,972,662.25 and costs in the amount of $23,052.87.  (Pltf. Reply Br. (Dkt. No. 285) at 11-12)  Plaintiff was represented by the law firm Morelli Alters Ratner LLP on a contingency fee basis.  (See Ratner Decl. (Dkt. No. 253-3) ¶ 8)

Defendants oppose Plaintiff's motion, arguing that her application for attorneys' fees should be denied or substantially reduced because, inter alia, Plaintiff's counsel's proposed billing rates are too high; Plaintiff seeks to recover attorneys' fees for claims that fall outside the NYCHRL fee-shifting provision; Plaintiff seeks to recover attorneys' fees associated with her retaliation claim despite obtaining an award of only nominal damages from the jury; and Plaintiff's counsel billed for excessive and unnecessary work.  Accordingly, Defendants argue that Plaintiff should be awarded attorneys' fees amounting to no more than $238,411.00.  (See Def. Opp. (Dkt. No. 274) at 35[2])

---

[2] The page numbers in this Order refer to the designated page numbers in this District's Electronic Case Filing system.

## DISCUSSION

## I.     LEGAL STANDARD

The NYCHRL provides that, "[i]n any civil action commenced pursuant to this section, the court, in its discretion, may award the prevailing party costs and reasonable attorney's fees." N.Y.C. Admin. Code § 8-502(g). "Like the NYCHRL generally, the fees provision is to 'be construed liberally . . . in order to accomplish the statute's uniquely broad and remedial purpose.'" Siracuse v. Program for the Dev. of Human Potential, No. 07 CV 2205 CLP, 2012 WL 1624291, at *16 (E.D.N.Y. Apr. 30, 2012) (quoting Williams v. N.Y.C. Housing Auth., 872 N.Y.S.2d 27 (1st Dept. 2009) (quoting N.Y.C. Admin. Code § 8–130)).

"'[T]he evaluation of reasonable attorneys' fees and the cutting of fees . . . lie within the sound discretion of the court[.]'" Marchuk v. Faruqi & Faruqi LLP, 104 F. Supp. 3d 363, 366 (S.D.N.Y. 2015) (citing Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 298 (S.D.N.Y. 2001)). In exercising its discretion, the Court must "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant," including "the complexity and difficulty of the case, . . . the resources required to prosecute the case effectively. . . , the timing demands of the case, . . . and other returns (such as reputation, etc.) that an attorney might expect from the representation." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 184, 190 (2007) (emphasis in original) (citing the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)). Courts should also consider "[t]he reasonable hourly rate . . . a paying client would be willing to pay[,]" "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

"In exercising its discretion [to award attorneys' fees], 'the district court is not obligated to undertake a line-by-line review of [the prevailing party's] extensive fee application.' . . . Rather, it may 'use a percentage deduction as a practical means of trimming fat.'" Marchuk, 104 F. Supp. 3d at 367 (quoting Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 150 (2d Cir. 2014); McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006)); see also Kriesler v. Second Ave. Diner Corp., No. 10 Civ. 7592 RJS, 2013 WL 3965247, at *4 (S.D.N.Y. July 31, 2013) ("In calculating a reduction, a court need not take a strict proportionality approach." (citing Rivera v. Dyett, No. 88 Civ. 4707(PKL), 1993 WL 36159, at *4 (S.D.N.Y. Feb. 10, 1993))).

## II.   ANALYSIS

### A.   Whether Plaintiff May Recover Attorneys' Fees in Light of Her Contingency Fee Agreement with Plaintiff's Counsel

As a preliminary matter, Defendants argue that an award of attorneys' fees would be improper because Plaintiff's counsel will receive one-third of Plaintiff's recovery under their contingency fee agreement. (See Def. Opp. (Dkt. No. 274) at 9-11) Defendants argue that Plaintiff's counsel are "double dip[ping]" by seeking an attorneys' fee award in addition to their contingency fee, and that the New York Court of Appeals decision in Albunio v. City of New York, 23 N.Y.3d 65, 77 (2014) precludes such an award. (Id. at 10) However, Albunio merely states that – absent a contractual provision to the contrary – attorneys should credit any sum that they recover under a fee-shifting statute toward the amount they are owed under a contingency fee agreement, because "a 'successful plaintiff should not have his damage recovery unduly diminished by making an additional payment to an attorney compensated by the fee awarded by the court.'" Albunio, 23 N.Y.3d at 74 (quoting Lowe v. Pate Stevedoring Co., 595 F.2d 256, 258 (5th Cir. 1979)).   Nothing in Albunio supports Defendants' argument that Plaintiff is barred

from seeking an attorneys' fee award because of her contingency fee agreement with Plaintiff's counsel. The <u>Albunio</u> principle protects plaintiffs from over-compensating their attorneys; it does not permit defendants to evade the effect of fee-shifting provisions by foisting the expense of a litigation onto a wronged plaintiff who has entered into a contingency-fee arrangement with her lawyer. Accordingly, the contingency fee agreement here does not prevent this Court from awarding attorneys' fees and costs.

**B.    <u>Whether Plaintiff is a "Prevailing Party"</u>**

A "prevailing party" is any party to an action who "succeeds on <u>any</u> significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." <u>Bridges v. Eastman Kodak Co.</u>, 102 F.3d 56, 58 (2d Cir. 1996) (internal quotation marks omitted) (emphasis added); <u>see also</u> <u>Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 790-91 (1989) (holding that a "prevailing party" need not have succeeded on the primary issue in the case).

"The question of whether a plaintiff is a 'prevailing party' within the meaning of the fee-shifting statutes is a threshold question that is separate from the question of the degree to which the plaintiff prevailed." <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 757 (2d Cir. 1998). Even if a party "los[es] on the vast majority of her claims and recover[s] just a fraction of the damages she sought, her limited success does not affect her status as a 'prevailing party.'" <u>Marchuk</u>, 104 F. Supp. 3d at 367 (citing <u>Farrar v. Hobby</u>, 506 U.S.103, 114 (1992)).

Here, the compensatory damage award on the NYCHRL <u>quid</u> <u>pro</u> <u>quo</u> sexual harassment claim – even as remitted – "materially alters the legal relationship between the parties" and directly "modif[ies] the defendant[s'] behavior in a way that directly benefits the

plaintiff." Farrar, 506 U.S. at 111-12.  Accordingly, Plaintiff is a "prevailing party" on that

claim and she may seek an attorneys' fee award under N.Y.C. Administrative Code § 8-502(g).

### C.   Calculating The Presumptively Reasonable Fee

The starting point for determining the amount of the attorneys' fee award is the

"presumptively reasonable fee."[3] Arbor Hill, 522 F.3d at 183.  This "initial estimate" is

calculated by multiplying "the number of hours reasonably expended on the litigation . . . by a

reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

"Following the determination of the presumptively reasonable fee, the court must

then consider whether an upward or downward adjustment of the fee is warranted based on

factors such as the extent of plaintiff's success in the litigation."  Robinson v. City of New York,

No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009).  A court need not,

however, "become enmeshed in a meticulous analysis of every detailed facet of the professional

representation" to determine the proper award, Seigal v. Merrick, 619 F.2d 160, 164 n.8 (2d Cir.

1980), nor should "[a] request for attorney's fees . . . result in a second major litigation."

Hensley, 461 U.S. at 437.  The burden is ultimately on the applicant to demonstrate the

reasonableness of the hours spent and rates asserted.  See id.

---

[3] Because "'the attorney fee provision of the [NYCHRL] is similar to the fee provision in the
federal civil rights statutes,'" New York state and federal courts look to federal law in assessing
motions for attorneys' fee awards under the NYCHRL.  Albunio, 23 N.Y. 3d at 73 (quoting
McGrath v. Toys "R" Us, Inc., 3 N.Y.3d 421, 426 (2004)).  "[T]he New York Court of Appeals .
. . has drawn from federal law in addressing issues raised under the NYCHRL attorneys' fee[-
shifting] provision . . . ." Sass v. MTA Bus Co., 6 F. Supp. 3d 238 (E.D.N.Y. 2014) (citations
omitted); see also Clark v. Gotham Lasik, PLLC, No. 11 Civ. 01307(LGS), 2013 WL 4437220,
at *6 (S.D.N.Y. Aug. 20, 2013) ("In awarding fees under the NYCHRL, courts apply the same
analytical framework used in federal civil rights cases." (citing Hugee v. Kimso Apartments,
LLC, 852 F. Supp. 2d 281, 297 (E.D.N.Y. 2012))).  But see Fornuto v. Nisi, 84 A.D.3d 617, 617
(1st Dept. 2011) (federal case law regarding the issuance of attorneys' fees "is not binding in
light of the remedial purposes of the [C]ity statute").

While a court may adjust the presumptively reasonable fee amount, there remains throughout the fee determination process "[a] strong presumption that [this initial calculation] . . . represents a 'reasonable' fee." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); accord Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). See also Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 99 (2d. Cir. 1997) ("[I]f private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court[.]" (internal citation omitted)).

### 1.   **Appropriate Hourly Rate**

Determination of a reasonable hourly rate presents a fact issue committed to the court's discretion and is typically defined as the market rate a paying client would be willing to accept. Arbor Hill, 522 F.3d at 188. In determining what rate is reasonable, courts should rely on evidence submitted by the parties as to the rates they typically charge, Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005), and "its own knowledge of comparable rates charged by lawyers in the district." Morris v. Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004) (citing Ramirez v. N.Y. City Off-Track Betting Corp., No. 93 Civ. 0682(LAP), 1997 WL 160369, at *2 (S.D.N.Y. Apr. 3, 1997)). The party seeking an attorneys' fee award bears the burden of proving "'that the requested rates are in line with those prevailing in the community for similar services by lawyers of comparable skill, experience and reputation.'" Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).

Attorneys at Morelli Alters Ratner LLP "[o]rdinarily" do not bill clients on an hourly basis; instead, they enter into contingency fee arrangements with their clients. (See

Ratner Decl. (Dkt. No. 253-3) at ¶ 8)  Thus, rather than providing their normal hourly rates,

Plaintiff's counsel have assigned billing rates that they believe are appropriate, given their

expertise and skill.  Plaintiff's counsel's proposed billing rates are as follows:

- David Ratner and Benedict Morelli (partners): $925 per hour

- Martha McBrayer (partner): $750 per hour

- Perry Fallick, Sara Strickland, and David Sirotkin (associates): $375 per hour

- Katherine Buskariol, Zoe Bartholomay, and Yunni Li (paralegals): $250 per hour

- Arlene Morelli (office manager): $250 per hour

- Deborah Ogali (paralegal): $200 per hour

(See Pltf. Br., Ex. A (Dkt. No. 253-1); Pltf. Br. (Dkt. No. 253) at 15-16, 16 n.9)  Defendants

argue that these rates "significantly exceed the market rate."  (Def. Br. (Dkt. No. 274) at 21)

### a.    **Partner Rates**

To justify the proposed $975 and $750 hourly rates, Plaintiff explains that the

hourly rates of "top partners" at "New York City's white-shoe firms" range from "$1120 at

Paul[,] Weiss[, Rifkind, Wharton & Garrison] to $1800 at Gibson[,] Dunn[ & Crutcher]."  (Pltf.

Br. (Dkt. No. 253) at 17)  In support of this proposition, Plaintiff cites an online article entitled

"The Highest Partner Billing Rates."  (Id. at 17 n.10)  The top billing rates for the highest-billing

partners at the largest New York law firms are not appropriate comparators for Plaintiff's

attorneys, however.  As courts have noted, the size of a firm will frequently affect the

appropriate hourly rate, "primarily due to varying overhead costs."  Cioffi v. N.Y. Cmty. Bank,

465 F. Supp. 2d 202, 219 (E.D.N.Y. 2006).   Moreover, when determining the appropriate

billing rate for calculating a presumptively reasonable fee, "[t]he relevant standard . . . is what

attorneys of comparable experience in civil rights litigation charge as an hourly rate."  Tatum v.

City of New York, No. 06-cv-4290(PGG)(GWG), 2010 WL 334975, at *4 (S.D.N.Y. Jan. 28, 2010). Accordingly, the billing rates of partners who do not focus on civil rights work are of limited value in assessing the appropriate billing rates for setting the presumptively reasonable fee in a civil rights case.

"[C]onsistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, . . . with average awards increasing over time." Tatum, 2010 WL 334975, at *5 (internal citations omitted); see also Shabazz v. City of New York, No. 1:14-CV-6417-GHW, 2015 WL 7779267, at *3 (S.D.N.Y. Dec. 2, 2015) ("Courts in this district have generally determined that the range of appropriate fees for experienced civil rights litigators is between $350 and $450 per hour." (collecting cases)).

Plaintiff has not offered sufficient evidence to justify the proposed partner rates of $925 and $750 per hour. These rates are hundreds of dollars per hour higher than rates awarded to similarly-situated civil rights attorneys. Moreover, much of the work performed by McBrayer could have been performed by a junior lawyer, such as drafting discovery requests or conducting legal research. This Court finds that an hourly rate of half of the amounts sought ($462.50 per hour for Ratner and Morelli, $375 per hour for McBrayer) is appropriate and will adequately compensate Plaintiff's counsel for their work in this case. See Echevarria v. Insight Med., P.C., 102 F. Supp. 3d 511, 517-519 (S.D.N.Y. 2015) (setting an hourly rate of $375); Shabazz, 2015 WL 7779267, at *3 (billing rates of $350 to $450 are commonly awarded to "experienced civil rights litigators"); Tatum, 2010 WL 334975, at *5 (billing rates of $250 to $600 are appropriate for "experienced civil rights attorneys").

b.    **Associate Rates**

Perry Fallick and Sara Strickland are associates with two to three years'
experience. (See Fallick Decl. (Dkt. No. 253-5) at ¶ 1; Strickland Decl. (Dkt. No. 253-6) at ¶ 1)
David Sirotkin is a fifth-year associate "with experience in employment law," but the extent and
nature of that experience is not explained. (See Pltf. Br. (Dkt. No. 253) at 2 n.2)  The associates'
work was limited largely to legal research, the drafting of letters, and internal memoranda.  (Id.
at ¶ 5; Fallick Decl. (Dkt. No. 253-5) at ¶ 5)  Plaintiff has proposed a billing rate of $375 per
hour for Fallick, Strickland, and Sirotkin.

Plaintiff's requested rate is higher than the rate usually awarded for associate
attorney work in this district.  "[R]ates for associates have ranged from $200 to $350, with
average awards increasing over time."  Tatum, 2010 WL 334975, at *5 (internal citations
omitted); Castillo v. Time Warner Cable of New York City, 2013 WL 1759558, at *3 (reducing
proposed $250 hourly rate for associate to $200 per hour where associate began working on the
case only one year after graduating from law school).  Moreover, Fallick and Strickland are at
the outset of their legal careers, and neither has substantial experience in employment cases.
(Fallick Decl. (Dkt. No. 253-5) at ¶ 2; Strickland Decl. (Dkt. No. 253-6) at ¶ 2)  While Sirotkin
apparently has some background in employment law, (Pltf. Br. (Dkt. No. 253) at 2 n.2), the
nature of his experience is, as noted above, not explained.  In any event, the work performed by
the associates does not appear to have required significant legal experience.

The Court concludes that Plaintiff has not justified a $375 hourly rate for the
associates.  This Court will apply an hourly rate of $200 for Fallick, Strickland, and Sirotkin.

### c.    Paralegal Rates

Plaintiff proposes a rate of $250 per hour for more experienced paralegals and

$200 for Deborah Ogali, who began working as a paralegal in July 2014, when this case was

filed. (See Ogali Decl. (Dkt. No. 253-9) at ¶ 3)  Plaintiff's proposed rates are significantly

higher than the usual rate awarded for paralegal work.  See De Curtis v. Upward Bound Int'l,

Inc., No. 09-CV-5378 RJS, 2015 WL 5254767, at *3 (S.D.N.Y. Aug. 28, 2015) ("[C]ourts in this

district routinely permit law clerks and paralegals to be paid at $150 and $125 per hour,

respectively." (citing Rozell, 576 F. Supp. 2d at 546)); Tatum, 2010 WL 334975, at *5 (calling

$125 per hour "within the range of rates typically awarded for paralegal work" in the Southern

District of New York).   Accordingly, this Court will adopt a rate of $125 per hour for all of the

work performed by paralegals.

### d.    Office Manager Rate

Plaintiff also seeks an hourly rate of $250 for the firm's office manager, Arlene

Morelli. (See Pltf.'s Br. Ex. A (Dkt. No. 253-1) at 2 n.2, 16 n.9)  The work of an office manager

is part of a firm's overhead, and thus is not an appropriate element of an attorneys' fee award.

Barrella v. Village of Freeport, 43 F. Supp. 3d 136, 193 (E.D.N.Y. 2014) ("[C]lerical and

secretarial services are part of overhead and are not generally charged to clients." (quoting

Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 390 (S.D.N.Y. 2000))); G.B. ex re.

N.B. v. Tuxedo Union Free School Dist., 894 F. Supp. 2d 415, 439-440 (S.D.N.Y. 2012);

Williams v. New York City Hous. Auth., 975 F. Supp. 317, 324 (S.D.N.Y. 1997).

*      *      *      *

In sum, this Court adopts billing rates of $462.50 for Ratner and Morelli; $375 for

McBrayer; $200 for the associates; and $125 for the paralegals.  The hours billed by the office

manager are disallowed.  With no further reduction of Plaintiff's counsel's proposed hours, this would result in a fee of $995,477.50.[4]

### 2.   Reasonable Number of Hours

After determining appropriate hourly rates, courts must calculate the reasonable number of hours billed in order to determine the presumptively reasonable fee.  See Arbor Hill, 522 F.3d at 189-90.  Courts exclude any hours included in a fee application that were not "reasonably expended" or, if exclusion is not feasible, will reduce Plaintiff's proposed fee by an appropriate percentage.  Hensley, 461 U.S. at 434; Marchuk, 104 F. Supp. 3d at 367.  As with the determination of a reasonable rate, the Court must consider both the "contemporaneous time records . . . [that] specify, for each attorney, the date, hours expended, and nature of the work done," N.Y. State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), and "its own familiarity with the case . . . and its experience generally."  Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (citation omitted). The hours inquiry is based not on what appears necessary in hindsight, but on whether, "at the time the work was performed, a reasonable

---

[4] This fee is based on this Court's analysis of Plaintiff's billing records.

| Timekeeper | Hours Billed | New Billing Rate |
|---|---|---|
| David Ratner | 672 | $462.50 |
| Benedict Morelli | 9.6 | $462.50 |
| Martha McBrayer | 1181 | $375 |
| Perry Fallick | 169.5 | $200 |
| Sara Strickland | 26.1 | $200 |
| David Sirotkin | 16.9 | $200 |
| Zoe Bartholomay | 1242.9 | $125 |
| Katherine Buskariol | 174.5 | $125 |
| Deborah Ogali | 138.7 | $125 |
| Yunni Li | 2.8 | $125 |

attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).

### a.    Degree of Success and Unrelated Claims/Parties

"[A] prevailing plaintiff should be compensated even for work done in connection with an unsuccessful claim if that claim was intertwined with the claim on which she succeeded[.]" Gierlinger v. Gleason, 160 F.3d 858, 877 (2d Cir. 1998) (citing Hensley, 461 U.S. at 433-47; LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 762 (2d Cir. 1998)); see also Hensley, 461 U.S. at 440 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."). Claims are "intertwined" when they involve "a 'common core of facts' or 'related legal theories[.]'" Short v. Manhattan Apartments, Inc., No. 11-cv-5989(SC), 2013 WL 2477266, at *7 (S.D.N.Y. June 10, 2013) (citing Hensley, 461 U.S. at 435). Where a claim has failed, a reduction in hours is not necessary if the failed claim that shares facts or legal theories with a successful claim. In such circumstances, "'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'" Id. (citing Hensley, 461 U.S. at 435).

However, "[a] prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were 'based on different facts and different legal theories[.]'" Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Hensley, 461 U.S. at 434). Similarly, a prevailing party is not entitled to a fee award for an unrelated claim that is not eligible for fee-shifting, even if the party succeeds on that claim. Millea v. Metro-North R. Co., 658 F.3d 154, 168 (2d Cir. 2011) ("Hours spent solely on common law claims and statutory claims not subject to fee-shifting must be

excluded to reflect the default rule that 'each party must pay its own attorney's fees and expenses.'" (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 550 (2010))).

The Court "retains substantial discretion to take into account the specific procedural history and facts of each case[,]" however. Greene v. Torres, 361 F.3d 96, 99 (2d Cir. 2004) (citing Hensley, 461 U.S. at 435-37). Here, Plaintiff was awarded $18 million by the jury; if she agrees to the remittitur described in this Court's March 31, 2016 Memorandum Opinion and Order, she will obtain a judgment providing for $5,650,004 in damages, including $150,000 in compensatory damages for her quid pro quo sexual harassment claim. Considering Defendants' arguments for reducing the requested fee award, this Court cannot ignore Plaintiff's counsel's substantial success.

The Second Amended Complaint pleads thirteen claims: (1) quid pro quo sexual harassment under the NYSHRL; (2) quid pro quo sexual harassment under the NYCHRL; (3) sexually hostile work environment under NYSHRL; (4) sexually hostile work environment under the NYCHRL; (5) gender discrimination under the NYSHRL; (6) gender discrimination under the NYCHRL; (7) retaliation under the NYSHRL; (8) retaliation under the NYCHRL; (9) assault; (10) battery; (11) intentional infliction of emotional distress; (12) defamation/slander; and (13) breach of contract.[5] (Second Am. Cmplt. (Dkt. No. 40))

This Court dismissed the assault and battery claims against NYGG and FNL Media, the intentional infliction of emotional distress claim, and the breach of contract claim as to FNL Media. (Dkt. No. 186) The breach of contract claim as to NYGG and Wey was severed from Plaintiff's other claims before the trial began. (Dkt. No. 190) Prior to trial, Plaintiff

---

[5] Plaintiff's original complaint also contained a claim for harassment and stalking. (Cmplt. (Dkt. No. 1) at ¶¶ 166-175)

voluntarily withdrew her gender discrimination and sexually hostile work environment claims as to all defendants.  (Id.)

At trial, the jury found in favor of Defendant Wey on the assault and battery claims, but decided in Plaintiff's favor on all remaining claims.  (Judgment (Dkt. No. 249))

Defendants argue that this Court should award attorneys' fees only for time associated with Plaintiff's NYCHRL quid pro quo sexual harassment claim.  (See Def. Br. (Dkt. No. 274) at 13-17)  Defendants also complain that Plaintiff has sought attorneys' fees for work that her attorneys performed for their other clients who were witnesses in this case.  (Id. at 17-18)

### i.   Retaliation claim

The jury awarded Plaintiff only nominal damages on her retaliation claim. Although "'the degree of the plaintiff's success' does not affect 'eligibility of a fee award[,]'" it does affect "'the reasonableness' of a fee award[.]"  Farrar, 506 U.S. at 114  (quoting Garland, 489 U.S. at 790, 793 (emphasis in Garland)).  "When a plaintiff recovers only nominal damages because of [her] failure to prove an essential element of [her] claim for monetary relief, . . . the only reasonable fee is usually no fee at all."  Id. at 115 (internal citations omitted); see also McGrath v. Toys "R" Us, Inc., 3 N.Y.3d 421, 431-32 (2004) (applying the Farrar rule regarding nominal damages to attorneys' fee awards under the NYCHRL).

There is an exception to the Farrar/McGrath rule, however.  Where a plaintiff has established that she received some other benefit from the resolution of her claim – for example, "obtain[ing] important injunctive relief or establish[ing] the violation of an important civil right" – a court may find that an award of attorneys' fees is proper.  Short, 2013 WL 2477266, at *7 (citing Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 520  (S.D.N.Y. 2002)).

Plaintiff claims that – in effect – she obtained the equitable relief that she sought in this action, because her objective was to "get Wey to stop his post-termination retaliation, i.e., his harassment of her and her family . . . [and] [t]his verdict should have achieved that." (Pltf. Reply Br. (Dkt. No. 285) at 5)  The fact that Defendants have allegedly ceased their harassment of Plaintiff is not sufficient to demonstrate that Plaintiff is entitled to an attorneys' fee award for her retaliation claim, however.  Plaintiff never obtained the injunction she sought against Defendants' harassment:  she initially withdrew the request for injunctive relief, (Dkt. No. 27), and after she renewed her motion for injunctive relief, the motion was denied as moot.  (Dkt. No. 248)  Accordingly, an attorneys' fee award on the retaliation claim may not be premised on the notion that Plaintiff obtained injunctive relief as a "policy change" that is the practical equivalent.  N.Y.C. Admin. Code § 8-502(g).

The question that remains is whether Plaintiff's retaliation claim is sufficiently "intertwined" with her quid pro quo sexual harassment claim to permit Plaintiff to recover for the work spent on the retaliation claim in spite of the nominal damages award.  Courts have frequently found that harassment and retaliation claims are "intertwined" where the plaintiff prevailed on the retaliation claim but not on the underlying harassment claim.  See, e.g., Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1183 (2d Cir. 1996) (voluntarily dismissed sexual harassment claim was inextricably intertwined with successful retaliation claim); Echevarria v. Insight Med., P.C., 102 F. Supp. 3d 511, 514, 520 (S.D.N.Y. 2015) (successful retaliation claim was inextricably intertwined with failed harassment claim); Cioffi v. New York Community Bank, 465 F. Supp. 2d 202, 219-21 (E.D.N.Y. 2006) (failed hostile work environment claim was intertwined with plaintiff's successful retaliation claim).  In such cases, a finding of interrelatedness is appropriate, because a plaintiff who seeks to prove a retaliation claim

necessarily must establish that she engaged in "protected activity" related to alleged discrimination.

Here, although Plaintiff obtained substantial damages on her underlying harassment claim, but secured only nominal damages on the related retaliation claim, no different result is called for. Certainly, many of the background facts necessary to Plaintiff's quid pro quo sexual harassment claim – including her personal and professional history with Wey; the structure and functioning of NYGG, FNL Media, and The Blot Magazine; and the circumstances of Plaintiff's termination – are part of the background to her retaliation claim. Indeed, Plaintiff's allegations of retaliation would make no sense absent an underlying understanding of the alleged quid pro quo harassment that preceded it. Because (1) these two claims are intertwined, and (2) Plaintiff received a substantial award on one of the claims, she may obtain an attorneys' fee award for hours spent on both claims.

### ii.   Common law claims

A court may not award fees for legal work in furtherance of claims that fall outside a fee-shifting statute unless those claims are intertwined with a claim that falls within the statute. See Millea, 658 F.3d at 168, 168 n.4. The success or failure of the claims has no bearing on the right to an attorneys' fee award. Here, Plaintiff's common law claims – defamation, intentional infliction of emotional distress, assault, and battery – do not fall under any fee-shifting statute. Accordingly, Plaintiff can only recover attorneys' fees for work associated with those claims if they are intertwined with her quid pro quo sexual harassment claim.

Plaintiff's defamation claim was based entirely on conduct that occurred after Plaintiff's termination, when the sexual harassment had ceased. Plaintiff argues that her defamation claim is intertwined with her sexual harassment claim, however, because Defendants

argued that Plaintiff was fired for cause, and not because she rejected Wey's sexual advances. (Pltf. Reply Br. (Dkt. No. 285) at 4)  As a legal matter, however, Plaintiff's defamation claim has little to do with her quid pro quo sexual harassment claim.  The two claims are legally distinct and are in no way interdependent.  Accordingly, Plaintiff's fee request should be reduced to account for the time spent on her defamation claim.

Similarly, Plaintiff's intentional infliction of emotional distress claim was based on events that took place after Plaintiff was terminated.  (See Pltf. Motion to Dismiss Opp. Br. (Dkt. No. 52) at 22-23 ("Wey put [Plaintiff] in fear of imminent danger when he:  followed [her] to Sweden after the commencement of this lawsuit; showed up in her hometown; along with four other men, approached and questioned her friends, family members and acquaintances; and later personally confronted [her] in Stockholm[.]"))  She cannot now recover attorneys' fees associated with this claim.

Plaintiff's assault and battery claims are, however, inextricably intertwined with her quid pro quo sexual harassment claim.  Because these claims are based on Plaintiff's sexual encounters with Wey during her employment at NYGG, (id. at 16-20), they are integral to Plaintiff's quid pro quo sexual harassment claim.  Accordingly, Plaintiff's fee request need not be reduced to account for time spent on the assault and battery claims.

### iii.    Abandoned or dismissed claims

Plaintiff dropped an earlier stalking claim, and she voluntarily dismissed her gender discrimination and hostile work environment claims.  While "counsel may be denied compensation for work done . . . on claims that were abandoned . . ., a court should not disallow fees for every motion that a prevailing party did not win." Rozell, 576 F. Supp. 2d at 538 (internal citations omitted).  Whether fees may be awarded for voluntarily dismissed claims

depends on whether those claims were "intertwined" with Plaintiff's successful quid pro quo sexual harassment claim.

Plaintiff's gender discrimination and hostile work environment claim are indisputably "intertwined" with her quid pro quo sexual harassment claim: all three claims depend on the same underlying facts about Plaintiff's work environment and involve similar (albeit not identical) legal theories. Plaintiff's stalking claim is more difficult to parse, since it is not clear from the original complaint whether that claim is based on events that occurred while Plaintiff was still working at NYGG or after her termination. Defendants have not identified any billing entry that relates solely to the stalking claim, however. The Court concludes that no reduction is necessary to account for time spent on Plaintiff's gender discrimination, hostile work environment, or stalking claims.

### iv.    Breach of contract claim

Plaintiff's breach of contract claim – which is based on Defendants' alleged violation of a stipulation entered into during this litigation – was severed from her other claims. (Dkt. No. 190)  The factual and legal bases for this claim stem from events that occurred after the initiation of this lawsuit and are completely separate from Plaintiff's successful quid pro quo harassment claim.  Indeed, as this Court noted in severing this claim, severance was appropriate in part because the breach of contract claim involved witnesses and documents not identified in discovery in relation to any of the other claims.  (See June 5, 2015 Tr. (Dkt. No. 200) at 14-15) Accordingly, a reduction to account for time spent on Plaintiff's breach of contract claim is appropriate.

####### v.    **Clients other than Plaintiff**

Defendants also argue that Plaintiff may not be awarded attorneys' fees for work Plaintiff's counsel performed for other clients.  (Def. Br. (Dkt. No. 274) at 17-18)  To the extent that Plaintiff's counsel represented any of Plaintiff's witnesses in this litigation, however, that representation would be impossible to break out from counsel's representation of Plaintiff. Plaintiff's counsel billed for tasks that they would have been required to perform whether or not they were representing the witnesses, such as attending witness depositions.  This Court is not aware of any time entry associated with Plaintiff's witnesses that does not relate to the instant case.  Accordingly the attorneys' fee award will not be reduced to account for time Plaintiff's counsel spent in representing some of Plaintiff's witnesses.

#### b.    **Unnecessary and Excessive Billing**

Where a plaintiff submits deficient or incomplete billing records demonstrating the number of hours expended, courts may reduce the requested fee award.  See Kirsch, 148 F.3d at 173 ("Hours that are 'excessive, redundant, or otherwise unnecessary' are to be excluded[.]'" (internal citations omitted)); Hensley, 461 U.S. at 437 n. 12 (attorneys seeking fee awards must, at least, "identify the general subject matter of his [or her] time expenditures").

##### i.    **Excessive Time**

Defendants argue that the requested attorneys' fee award should be reduced to account for billing related to unnecessary and excessive work.[6]

Defendants identify several time entries by Zoe Bartholomay that they deem "duplicative and unnecessary."  On February 18, 2015, Bartholomay block-billed 8.0 hours for

---

[6] This Court need not address Defendants' complaints about Plaintiff's "defamation log," given that no fees associated with Plaintiff's defamation claim will be allowed.

"[o]ther discovery-privilege log, revised phone subpoenas because realized mistake, looked for local server in California for ASSE subpoena, researched how to domesticate." (Billing Records (Dkt. No. 253-1) at 31)  Defendants object to the time spent on "revis[ing] phone subpoenas" because of her "mistake."  Time spent as the result of a mistake should not be included in a fee request, and Bartholomay's hours will accordingly be reduced by 2.0 hours.

Defendants also object to the 10.8 hours Bartholomay billed on February 19, 2015, which includes time spent on a "privilege log."  On that day, Bartholomay performed the following tasks:

> Review/analyze – Defendants' First Document production.  Started travel document chart, consulted with Hanna about the dates/circumstances of various photographs produced, noted deficiencies, and sent list of deficiencies to Mr. Ratner and Martha so they could decide on how to proceed.  Continued to work on privilege log but did not get much done on that today.  Reached out to potential witness Fancy Alexandersson.  Fact Investigation/Development – make summary of outstanding production from defendants.

(Id.)  There is nothing objectionable in this record.

Defendants also object to time Bartholomay spent on "order[ing] better headphones."  (Id. at 25)  However, that task appears to have been work-related:  Bartholomay was transcribing a recording that she describes as "hard[] to hear" in connection with discovery.  (Id.)  Time Bartholomay spent on creating binders and checking them for accuracy is likewise appropriate.  (See Def. Opp. Br. (Dkt. No. 274) at 29)

Defendants object to time billed for "training."  (Def. Opp. Br. (Dkt. No. 274) at 30)  While training that is not specific to the subject matter of a given case is "customarily incorporated in a firm's overhead" and therefore not properly included in a fee calculation, Rozell, 576 F. Supp. 2d at 539, instruction related to the claims in a case – such as the "summary of law re: intern/employment" – is reimbursable.  To the extent that Plaintiff includes time spent

on tasks such as teaching Ratner how to conduct conference calls on his iPhone (Billing Records (Dkt. No. 253-1) at 34), that time will be disallowed.

Finally, Plaintiff's presumptively reasonable fee is subject to reduction because counsel billed at their full rate for travel time. Moreover, instead of billing travel time separately, Plaintiff's counsel included travel in block-billed time.[7] This was improper. In this district, it is well-established that "'[t]ravel time is appropriately compensated at half of counsel's normal billing rate.'" Castillo v. Time Warner Cable of New York City, No. 09 CIV. 7644 PAC, 2013 WL 1759558, at *4 (S.D.N.Y. Apr. 24, 2013) (quoting Rozell, 576 F. Supp. 2d at 540). Where a fee-seeking party does not discount attorneys' fees for travel time, courts will generally do so for them. See, e.g., id. at *4; Colbert v. Furumoto Realty, Inc., 144 F. Supp. 2d 251, 261 (S.D.N.Y. 2001).

Plaintiff's counsel claims that they should receive their full billing rate for travel time because, "whether by subway or car service, [the firm's] team used [travel] time to continue to strategize, review documents, motions, caselaw and transcripts, and prepare this case for trial." (Pltf. Reply Br. (Dkt. No. 285) at 11) Counsel's contemporaneous billing records reflect no such multitasking, however. Moreover, Plaintiff's counsel has not "identif[ied] or describe[d] the work performed, or clarify[ied] whether they already accounted for this work in the schedule submitted with their application. Absent more facts, the Court cannot credit counsel's vague assertion that their travel time was productive." Castillo, 2013 WL 1759558, at *4. Because it is

---

[7] For example, on April 15, 2015, McBrayer and Ratner each billed eleven hours, including travel from New York to Philadelphia and back in connection with the deposition of Barbara Ziv. (Billing Records, Ex. A (Dkt. No. 253-1) at 50) On May 31, 2015, McBrayer, Ratner, and Bartholomay billed 10.2, 10, and 10 hours, respectively, for tasks that included both preparing Wey's cross-examination and "travel." (Id. at 64)

unclear from Plaintiff's counsel's billing records what percentage of their block-billed time was spent on travel, this Court will consider the excess billing in imposing a percentage reduction. [8]

### ii.   Improper Litigation Tactics

Defendant also argues that Plaintiff's counsel's fee should be reduced because of their "borderline and dilatory conduct." (Def. Opp. Br. (Dkt. No. 274) at 32)  Having observed both sides' counsel throughout this case, this Court concludes that no reduction is appropriate on this basis.

### iii.   Vague Time Entries

A reduction in the presumptively reasonable fee is appropriate where Plaintiff's counsel has included vague entries in their billing records.  See Kirsch, 148 F.3d at 173 (approving a 20% reduction for "vagueness, inconsistencies, and other deficiencies in the billing records").

Defendants argue that many of Plaintiff's counsel's time entries are "so devoid of content that it is impossible to determine what task was performed and in connection with what matter." (Def. Opp. (Dkt. No. 274) at 33)  This Court agrees that a number of the billing entries are vague.  For example, Martha McBrayer billed a total of 48.9 hours for tasks labeled as "Analysis/Strategy," with no further explanation.  At McBrayer's reduced rate of $375 per hour, this amounts to $18,337.75.  No reasonable client would pay $18,000 for "[a]nalysis" or "[s]trategy" untethered to a particular issue.  Moreover, other courts in this district have

---

[8] Defendants also urge this Court to reduce the requested attorneys' fee award to account for excessive billing by partners and "overstaffing," including the presence of three or four staff at two depositions.  (Def. Opp. Br. (Dkt. No. 274) at 26-28)  This Court has already accounted for McBrayer's performance of associate-level work by reducing her hourly rate to $375. Accordingly, an additional percentage reduction on the basis of excessive partner billing is unnecessary.  To the extent that more than one lawyer attended certain depositions – such as Defendant Wey's deposition – Plaintiff's fee will not be reduced on that ground.

substantially reduced requested attorneys' fee awards because of "vague" billing entries that are far more detailed than Plaintiff's counsel's records.  See Becerril v. E. Bronx NAACP Child Dev. Ctr., No. 08 Civ.10283(PAC)(KNF), 2009 WL 2611950, at *9 (S.D.N.Y. Aug. 18, 2009), report and recommendation adopted, No. 08 CIV. 10283 PACKNF, 2009 WL 2972992 (S.D.N.Y. Sept. 17, 2009) (declining to award fees for work described as follows:  "'office conference re: demand letter,'" "'drafted demand letter,'" "'reviewed and revised demand letter,'" "'office conference with K. Thompson re: email from anonymous witness'"); Starkey v. Somers Central School Dist., No. 02 Civ. 2455(SCR), 2008 WL 5378123, at *5 (S.D.N.Y. Dec. 23, 2008) (reducing time for transcript review by one-third and total proposed billing by 10% "to account for the risk that [entries for]" "general topics such as 'legal research,' 'review of transcripts,' client conferences, 'work on discovery documents'" "mask[ed] unreasonable expenditures of time").  Accordingly, a percentage reduction that reflects the vagueness in Plaintiff's counsel's billing records is appropriate.

*　　　*　　　*　　　*

"[T]he Second Circuit has recognized the authority of district courts 'to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application.'"  Balu v. City of New York, No. 12 Civ. 1071(KPF), 2016 WL 884666, at *5 (S.D.N.Y. Mar. 8, 2016) (internal citations and quotation marks omitted)) (quoting In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987).  To account for time that was spent exclusively on Plaintiff's unsuccessful and non-compensable claims, and to address Plaintiff's vague records and excessive billing, this Court will reduce Plaintiff's proposed award by 40%.  See, e.g., Guo v. Tommy's Sushi, Inc., 2016 WL 452319, at *6-7 (S.D.N.Y. Feb. 5, 2016) (reducing plaintiff's counsel's claimed attorneys' fees by 40% because billing records included

duplicative work and a partner performed work better suited for an associate or paralegal);

Marchuk, 104 F. Supp. 3d at 370 (after severing time for non-compensable tasks, reducing fees

by 40% because plaintiff's counsel billed an unreasonably high number of hours and, due to

block-billing, identifying the areas of excess was difficult).  Accordingly, Plaintiff's fee is

granted in the amount of $597,286.50.

### D.    Costs

Under the NYCHRL, a court has the discretion to award a prevailing party

reasonable costs.  N.Y. City Admin Code § 8–502(f); see also, e.g., Clark, 2013 WL 4437220, at

*9 (awarding "documented costs" including "FedEx fees, filing fees, computer-assisted research

costs, mediation fees, messenger service fees, and postage"); Short, 2013 WL 2477266, at *5

(awarding costs in accordance with attorney's itemized declaration including "filing fee, process

service fees, witness fees, travel costs, and expenses for computerized legal research, messenger

service, deposition and trial transcripts, and postage").  Plaintiff seeks $23,052.87 in taxable

costs for, inter alia, court fees, fees associated with the service of summons and subpoenas,

interpreter fees, deposition and trial transcript costs, and printing costs.  (See Pltf. Br. Ex. J. (Dkt.

No. 253-10) at 1; Ratner Decl. (Dkt. No. 253-3) at ¶ 3)  These are "reasonable" costs in the

context of this litigation.  Moreover, Defendants do not object to Plaintiff's request.

Accordingly, Plaintiff's request for $23,052.87 in costs will be granted.

## CONCLUSION

To the extent and for the reasons stated above, Plaintiff's motion for attorneys'
fees and costs (Docket No. 252) is granted in the amount of $597,286.50 in attorneys' fees and
$23,052.87 in costs.

Dated: New York, New York
       March 31, 2016

                              SO ORDERED.

                              _____
                              Paul G. Gardephe
                              United States District Judge